ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS R. BRITTON (188769)
JEREMY W. DANIELS (351347)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dougb@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re XPONENTIAL FITNESS SECURITIES LITIGATION | Case No. 8:24-cv-00285-JWH (KESx) |
| | CLASS ACTION |
| | LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS H&W ENTITIES' AND SNAPDRAGON'S MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT |
| | DATE: November 14, 2025 |
| | TIME: 9:00 a.m. |
| | CTRM: 9D |
| | JUDGE: Hon. John W. Holcomb |

4936-5489-2376.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 6

II.     STATEMENT OF FACTS ................................................................................. 7

III.    LEGAL STANDARD ........................................................................................ 8

IV.     ARGUMENT .................................................................................................... 10

        A.      Lead Plaintiffs Sufficiently Plead Underlying Violations of §10(b) of the Exchange Act by Xponential ........................................ 10

        B.      The Complaint Sufficiently Alleges that the Grabowski Entities Exercised Control over Xponential .................................................. 11

V.      CONCLUSION ................................................................................................. 15

- 2 -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arthur Child.'s Tr. v. Keim*,
994 F.2d 1390 (9th Cir. 1993) ........................................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 8

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) .......................................................... 14

*Baron v. Hyrecar Inc.*,
2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) ................................................ 9

*Ferreira v. Funko Inc.*,
2021 WL 8820650 (C.D. Cal. Oct. 22, 2021) ................................... 9, 10, 11, 14

*Fouad v. Isilon Sys., Inc.*,
2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ........................................... 13

*Hefler v. Wells Fargo & Co.*,
2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ................................................. 8

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ....................................................................... 10

*In re Allstate Life Ins. Co. Litig.*,
2013 WL 789106 (D. Ariz. Mar. 1, 2013) ..................................................... 13

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ............................................ 8, 14

*In re BofI Holding, Inc. Sec. Litig.*,
2017 WL 2257980 (S.D. Cal. May 23, 2017) ................................................. 9

*In re CytRx Corp. Sec. Litig*,
2015 WL 5031232 (C.D. Cal. July 13, 2015) ................................................ 12

*In re DDi Corp. Sec. Litig.*,
2005 WL 3090882 (C.D. Cal. July 21, 2005) ................................................ 13

- 3 -

4936-5489-2376.v1

**Page**

*In re Downey Sec. Litig.*,
    2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ......................................................12

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Or. 2015).................................................................12

*In re Hansen Nat. Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007)..............................................................12

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..........................................................10

*In re ZZZZ Best Sec. Litig.*,
    864 F. Supp. 960 (C.D. Cal. 1994)..................................................................10

*LLDVF, L.P. v. Dinicola*,
    2010 WL 3210613 (D.N.J. Aug. 12, 2010)........................................................13

*Loritz v. Exide Techs.*,
    2014 WL 4058752 (C.D. Cal. Aug. 7, 2014) .......................................................9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008).................................................................9, 14

*No. 84 Emp.-Teamster Joint Council Pension Tr.*
    *Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003)................................................................9, 10, 11

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996)........................................................................10

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    432 F. Supp. 3d 1095 (N.D. Cal. 2020) ..........................................................12

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
    742 F. Supp. 3d 1003 (N.D. Cal. 2024) ...........................................................9

*Shankar v. Zymergen Inc.*,
    2022 WL 17259057 (N.D. Cal. Nov. 29, 2022)...................................................13

4936-5489-2376.v1

**Page**

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
    690 F. Supp. 2d 959 (D. Ariz. 2010) ......................................................................8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................................8

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ............................................................14

*Yanek v. Staar Surgical Co.*,
    388 F. Supp. 2d 1110 (C.D. Cal. 2005).......................................................10, 15

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 8..........................................................................................................9
    Rule 8(a) ............................................................................................8, 9, 14
    Rule 15(a)(2)..................................................................................................15

17 C.F.R.
    §230.405 ...........................................................................................*passim*
    §240.10b-5 .......................................................................................................8

4936-5489-2376.v1

Lead Plaintiffs Fort Lauderdale Police & Firefighters' Retirement System and City of West Palm Beach Police Pension Fund (collectively, "Plaintiffs") submit this memorandum of law in opposition to Defendants H&W Entities' and Snapdragon's Motion to Dismiss the Amended Consolidated Complaint (ECF 113) ("Mot.").[1]

## I.    INTRODUCTION

Under §20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), a defendant is liable for a primary violation of the federal securities laws if they exercised actual power or control over a primary violator.  In the Ninth Circuit, a plaintiff alleges control liability by alleging a primary violation and that a defendant possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of the primary violator.  Plaintiffs here allege a primary violation (*see generally* Opp.) and that the Grabowski Entities controlled primary violator Xponential because each entity: (i) was the alter ego of founder and Chairman of Xponential's Board of Directors (the "Board"), Grabowski, one of the two architects of the alleged scheme; (ii) owned and controlled up to 31% of Xponential's voting shares, more than all reporting directors and executives combined; and (iii) caused Xponential to conduct multiple secondary offerings to sell nearly $220 million of their Xponential shares to investors, entirely for their benefit while Xponential received nothing.  Have Plaintiffs sufficiently put the Grabowski Entities on notice of their §20(a) liability under the liberal and flexible standards adopted by the Ninth Circuit?  Courts have upheld §20(a) claims under far less compelling facts.

---

[1]    References to the "H&W Entities" are to defendants H&W Investco, LP and H&W Investco II, LP, references to the "Grabowski Entities" are to the H&W Entities collectively with defendant Snapdragon Capital Partners ("Snapdragon"), and references to "Opp." are to Lead Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Amended Complaint, filed by Xponential Fitness, Inc. ("Xponential" or the "Company"), John Meloun, Mark Grabowski ("Grabowski"), Chelsea Grayson, and Brenda Morris, filed concurrently herewith.

4936-5489-2376.v1

## II.  STATEMENT OF FACTS

Defendant Grabowski is a co-founder and de facto controlling shareholder of Xponential.  ¶¶33-36.[2]  Grabowski has been Chairman of the Board since 2017 and owns and controls his shares in Xponential through various entities, including Snapdragon and the H&W Entities.  *Id.*  He founded private equity firm Snapdragon in 2018, where he serves as managing partner.  ¶36.  And together with the H&W Entities, Grabowski used Snapdragon to own and control Xponential.  *Id.*  The H&W Entities were both advised by Snapdragon.  *Id.*  Xponential, itself, described the H&W Entities as "affiliates of Snapdragon" and described Snapdragon as an early owner of the Company.  *Id.*

Grabowski controlled Xponential through the H&W Entities.  They were, by far, the largest holders of Xponential common stock during the period July 23, 2021 to May 10, 2024 (the "Class Period").  H&W Investco, LP held between 7,453,744 and 12,623,677 shares of Xponential Class B common stock, and H&W Investco II, LP held between 6,855,613 and 11,610,680 shares of Xponential Class A common stock.  ¶¶34-35.  Combined, the H&W Entities – over which Grabowski has "sole investment and dispositive power" – owned 21%-31% of Xponential's Class A common stock, exceeding the holdings of all other reporting directors and executive officers of Xponential combined during the Class Period.  ¶36.

The Grabowski Entities actually exercised control over Xponential in this case.  With Grabowski installed as the Chairman of Xponential's Board, the Grabowski Entities were involved in taking Xponential public through the July 2021 initial public offering ("IPO") (¶¶2, 36, 299) and then caused Xponential to engage in two secondary offerings, raising proceeds for Grabowski of $219.8 million.  ¶¶268, 270.  The H&W Entities were listed as the "selling stockholders" for the Company's April

---

[2]  All "¶_" or "¶¶_" references are to the Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 104) (the "Complaint").

- 7 -

4936-5489-2376.v1

6, 2022 secondary offering (the "SPO") (ECF 112-3 at 70-71) where they made representations and warranties concerning information used in documents designed to solicit investors to purchase shares in the SPO.  *See* Declaration of Jeremy W. Daniels in Support of Lead Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants H&W Entities' and Snapdragon's Motion to Dismiss the Amended Consolidated Complaint ("Daniels Decl."), Ex. 1 at 18, filed concurrently herewith.[3] In fact, the H&W Entities were signatories to the SPO's Underwriting Agreement, and caused Xponential to agree to pay "the costs and expenses of the Company relating to investor presentations on any 'road show' undertaken in connection with the marketing" of the SPO.  *See* Daniels Decl., Ex. 1 at 25, 36.

All proceeds for Xponential's April 2022 SPO went to the H&W Entities and, through them, Grabowski. Xponential received nothing. ECF 112-3 at 42.  Similarly, all proceeds for Xponential's February 2023 SPO went to the selling stockholders, Geisler, and the H&W Entities.  Xponential received nothing, again.  ¶138.

## III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint need only contain sufficient facts to "'state a claim'" that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]  "[D]istrict courts in the Ninth Circuit have concluded that because fraud is not a necessary element of a control person claim, the pleading of such a claim need only meet the requirements of Rule 8(a)." *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *33 n.249 (C.D. Cal. Aug. 8, 2013) (collecting cases); *see also Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 969 (D. Ariz. 2010) ("Indeed, adopting a heightened pleading standard for section 20(a) claims would run afoul of the PSLRA."); *Hefler v. Wells Fargo & Co.*,

---

[3]   Documents incorporated into the complaint by reference also must be considered in ruling on a motion to dismiss. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[4]   Unless otherwise noted, citations are omitted and emphasis is added.

- 8 -

4936-5489-2376.v1

2018 WL 1070116, at *14 (N.D. Cal. Feb. 27, 2018) ("[T]he Court finds that the Plaintiffs have adequately pleaded control under Rule 8's lower pleading standards."); *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 742 F. Supp. 3d 1003, 1024 (N.D. Cal. 2024) (finding that "the heightened pleading standard does not apply to allegations of control or power"). The Federal Rule of Civil Procedure 8(a) standard requires "more than 'a formulaic recitation of the elements of a cause of action'" but not "detailed factual allegations." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To state a claim under §20(a), a plaintiff must allege: "'(1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator.'" *Baron v. Hyrecar Inc.*, 2022 WL 17413562, at *17 (C.D. Cal. Dec. 5, 2022) (quoting *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003)). The control requirement "'should be construed liberally and flexibly'" because the concept of control under the securities laws is an "'elusive notion for which no clear-cut rule or standard can be devised.'" *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *21 (S.D. Cal. May 23, 2017). For the same reason, courts caution that "'the determination of who is a controlling person . . . is an intensely factual question'" that is not typically subject to resolution on a motion to dismiss. *Ferreira v. Funko Inc.*, 2021 WL 8820650, at *37 (C.D. Cal. Oct. 22, 2021) (quoting *Arthur Child.'s Tr. v. Keim*, 994 F.2d 1390, 1396 (9th Cir. 1993)); *Loritz v. Exide Techs.*, 2014 WL 4058752, at *15 (C.D. Cal. Aug. 7, 2014) (concluding that "control person liability claims can generally only be dismissed at the pleading stage 'if a plaintiff fails to adequately plead a primary violation'").

"'Control' is defined in the regulations as 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ***ownership of voting securities***, by contract, or otherwise.'" *Am. W.*, 320 F.3d at 945 (emphasis in original) (quoting 17 C.F.R. §230.405).

- 9 -

4936-5489-2376.v1

"'[T]raditional indicia of control' are 'having a prior lending relationship, owning stock in the target company, or having a seat on the board.'" *Funko*, 2021 WL 8820650, at *37 (quoting *Am. W.*, 320 F.3d at 945).[5]

Finally, for §20(a), "Plaintiff need not show that the defendant was a culpable participant in the violation." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). "[A]ctual participation or the exercise of actual power" in the violation is "not necessary." *Id.*

## IV.    ARGUMENT

### A.    Lead Plaintiffs Sufficiently Plead Underlying Violations of §10(b) of the Exchange Act by Xponential

The Grabowski Entities argue summarily that "Plaintiffs fail to plead that Xponential violated Section 10(b) of the Exchange Act or Rule 10b-5," doing nothing more than incorporating by reference Xponential's motion to dismiss. Mot. at 8. Since Plaintiffs have adequately alleged a primary violation (*see generally* Opp.), they have satisfied the first prong of their §20(a) claim. For this reason, the Grabowski Entities' authority is inapposite. Mot. at 8 (citing cases).

---

[5]    The Grabowski Entities cite *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1133 (C.D. Cal. 2005), for the proposition that control allegations must establish "the defendants had the ability to exercise 'a significant degree of day-to-day operational control' over the primary violator." Mot. at 9, 13. *Yanek* quotes *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000), for the "significant degree" language. *Yanek*, 388 F. Supp. 2d at 1133. *McKesson* in turn quotes it from *In re ZZZZ Best Sec. Litig.*, 864 F. Supp. 960, 970 (C.D. Cal. 1994). *McKesson*, 126 F. Supp. 2d at 1277. But the "significant degree" language is not in *ZZZZ Best*. The order in that case does not even discuss §20(a) liability. The nine other district court decisions that have used the "significant degree" language all trace back to *McKesson*. In short, there does not appear to be legitimate authority or a reasoned basis for that proposition, and it is at odds with Ninth Circuit precedent and §230.405 which does not define control in those terms. *Am. W.*, 320 F.3d at 945. In fact, the Ninth Circuit in *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151 (9th Cir. 1996), which the Grabowski Entities cite (Mot. at 8), analyzed control liability using "the traditional indicia of control" referenced in the cases Plaintiffs cite. *Paracor*, 96 F.3d at 1162. It too does not contain the "significant degree" language the Grabowski Entities discuss. *Id.*

- 10 -

4936-5489-2376.v1

## B.    The Complaint Sufficiently Alleges that the Grabowski Entities Exercised Control over Xponential

This is a classic case of control.  The Grabowski Entities appeared specifically set up to control Xponential.  Snapdragon and the H&W Entities were "affiliates" of each other and were arranged to control Grabowski's 21%-31% ownership in the Company, which gave them de facto control.  Snapdragon was the "advisor."  The H&W Entities were the owners of more shares than all reporting directors and executive officers combined.  And, at the top of each entity sat the same managing partner, Grabowski, chairman of Xponential's Board.  Under any reasonable standard, the Grabowski Entities possessed directly or indirectly "the power to direct or cause the direction of" Xponential's "management and policies," "whether through the ownership of voting securities, by contract, or otherwise."  17 C.F.R. §230.405; *see also Funko*, 2021 WL 8820650, at *37 ("The 'traditional indicia of control' are 'having a prior lending relationship, owning stock in the target company, or having a seat on the board.'"); *Am. W.*, 320 F.3d at 946 (control established partly because defendants "had some of their own officers seated on [the controlled company's] Board of Directors").

In fact, the H&W Entities exercised actual control over the Company in this case.  They each signed the Underwriting Agreement that governed the April 2022 SPO – committing Xponential to paying "the costs and expenses of the Company relating to investor presentations on any [SPO] 'road show'" – while their managing partner, Grabowski, signed the defective registration statement for the SPO.  Daniels Decl., Ex. 1 at 25, 36.  The result was the sale of $90 million worth of Xponential shares at artificially inflated prices.  ¶¶138-140.  And combined with Xponential's other secondary offering, the Grabowski Entities used their control to cause the Company to undertake two secondary offerings for which it received nothing while the entities and Grabowski sold nearly $220 million to investors at inflated prices.  *Id.*; ECF 112-3 at 42.  This exercise of control amply alleges the Grabowski Entities had

- 11 -

the power to (and did) dictate Xponential's management and policies and belies the suggestion that the Complaint alleges Grabowski controlled the entities but "do[es] not allege [the entities] controlled Xponential."  Mot. at 13.

The Grabowski Entities argue that Plaintiffs' allegations are "entirely conclusory."  *Id.* at 10.  They are not.  Plaintiffs allege specifics, including that the Grabowski Entities were early owners of the Company, held dominant voting shares throughout the Class Period, had the same managing partner who also was the Chairman of Xponential's Board, and collectively orchestrated the Company's SPO to enrich their managing partner.  *In re CytRx Corp. Sec. Litig*, 2015 WL 5031232, at *17 (C.D. Cal. July 13, 2015) (control sufficiently pled where the complaint alleges a defendant's "high level position[] and the fact that the false statements alleged could be found in company press releases or financial statements").[6]

The Grabowski Entities argue that "Plaintiffs improperly lump together H&W Investco, LP, H&W Investco II, LP and Snapdragon, both with one another and also with Mr. Grabowski," insisting that Plaintiffs have not shown that they "'acted in concert.'"  Mot. at 10.  The Grabowski Entities are mistaken.  The Complaint alleges that the Grabowski Entities functioned jointly as a vehicle through which Grabowski

---

[6]    The Complaint's detail about the role of each Grabowski entity and influence they exerted over Xponential in executing the Company's SPO distinguishes this case from the Grabowski Entities' authority regarding insufficient boilerplate allegations with no supporting specifics.  Mot. at 9; *In re Downey Sec. Litig.*, 2009 WL 736802, at *15 (C.D. Cal. Mar. 18, 2009) ("[T]he FACC merely alleges that the Individual Defendants, by reason of their position in Downey and their ownership of Downey stock, had the power to cause Downey to engage[] in the alleged conduct."); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) ("Plaintiff has alleged that '[b]y virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements . . ., the Individual Defendants had the power to influence and control . . . the decision making of the Company . . . .'"); *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) ("The amended complaint has barebones allegations that '[b]y virtue of their positions and their power to control public statements about Wells Fargo, the Individual Defendants had the power and ability to control the actions of Wells Fargo and its employees. Wells Fargo controlled the Individual Defendants and its other officers and employees.'"); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1201 (D. Or. 2015) ("Plaintiffs only allege that he was Galena's Chief Operating Officer and Executive Vice President and sold some of his shares.").

4936-5489-2376.v1

controlled Xponential. The Grabowski Entities' claim that "Plaintiffs do not identify a single instance in which the [Grabowski Entities] acted in unison" (*id.* at 11) overlooks that Plaintiffs explicitly allege how the H&W Entities acted in unison as the "selling stockholders" in Xponential's SPOs.[7]

Grabowski's place atop all three Grabowski Entities (and Xponential's Board) is also why this is not like *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008), or *LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010). *See* Mot. at 10-11. The §20(a) defendants in *Fouad* were each shareholders in Isilon and each appointed a member of Isilon's board, but – unlike the three Grabowski Entities, which all had the same puppeteer pulling the strings – nothing in the *Fouad* complaint indicated that those defendants "controlled Isilon by acting in concert." 2008 WL 5412397, at *13. *LLDVF* unremarkably says allegations of control "must be evaluated separately unless there is some basis on which to consider their collective action." 2010 WL 3210613, at *12. Grabowski's control of and decision-making for all the Grabowski Entities is exactly the reason to consider those entities collectively.

The Grabowski Entities argue that "[i]t is black-letter law that minority stock ownership, even with the right of board representation, does not establish control for purposes of Section 20(a)." Mot. at 11. No such hard line exists. In fact, the opposite is true: in suitable circumstances, courts routinely have rejected dismissal or summary judgment arguments on control grounds despite shareholders owning less than 50% of the company's outstanding stock, and even less than the 23%-31% alleged in this case. *See, e.g.*, *In re Allstate Life Ins. Co. Litig.*, 2013 WL 789106, at *4 (D. Ariz. Mar. 1, 2013) (9%); *In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *20 (C.D. Cal.

---

[7] The Grabowski Entities' reliance in *Shankar v. Zymergen Inc.*, 2022 WL 17259057 (N.D. Cal. Nov. 29, 2022), is misplaced. Mot. at 10. There, the court offered no reasoning for its control person conclusion. *Shankar*, 2022 WL 17259057, at *3. And unlike in *Shankar*, Plaintiffs here have alleged facts specifying how the Grabowski Entities did in fact act in concert. *See* Mot. at 10.

4936-5489-2376.v1

July 21, 2005) (14.2%); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 946-47 (S.D. Cal. 2019) (22.6% to 42.8% is a "factor[] that traditionally indicate[s] control"); *see also Funko*, 2021 WL 8820650, at *37 ("own[ing] less than 50% of Funko stock at the time statement no. 2 was made . . . is not fatal to Plaintiffs' ability to state a Section 20(a) claim against the ACON Defendants").

Indeed, even some cases that the Grabowski Entities rely on reject that minority ownership always defeats a control claim. *See, e.g.*, Mot. at 11-12 (citing *Am. Apparel*, 2013 WL 10914316, at *37 (rejecting one dismissal argument partly because the defendant "owned a large block of American Apparel stock, constituting 18% of the outstanding shares"); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048-49 (N.D. Cal. 2016) (denying dismissal even though the defendant "sold enough of its stock to lose its status as majority shareholder shortly after the beginning of the class period")).

At any rate, the motion's page-long string cite – besides inaccurately suggesting that minority owners cannot be liable under §20(a) – misses the point. Mot. at 12. The Complaint does not allege the Grabowski Entities controlled Xponential simply because they were minority shareholders. Instead, it alleges that, as a practical matter, they were the Company's controlling shareholder despite their minority status, ***and*** in reality they were a vehicle by which Xponential's Chairman and the co-architect of the fraud scheme controlled Xponential, ***and*** they demonstrated their power and control over Xponential by causing it to undertake secondary offerings that earned it nothing while reaping massive gains for Grabowski and his entities. These are factual allegations, not just a bare recitation of the control element for a §20(a) cause of action, so they satisfy Rule 8(a). *Mendiondo*, 521 F.3d at 1104. They also easily make it facially plausible to say the Grabowski Entities could and did "direct or cause the direction of" Xponential's management and policies. 17 C.F.R. §230.405.[8]

---

[8]   The Grabowski Entities argue that the Complaint is devoid of allegations that they had "'a significant degree of day-to-day- operational control.'" Mot. at 13 (quoting

- 14 -

4936-5489-2376.v1

## V.    CONCLUSION

Plaintiffs sufficiently allege that the Grabowski Entities controlled Xponential through their explicitly acknowledged ownership of Xponential, substantial holdings of Xponential's voting shares, and demonstrated ability to cause Xponential to engage in the wrongful conduct detailed in the Complaint.  The Grabowski Entities' motion to dismiss should be denied.  Should the Court grant the motion, Plaintiffs respectfully request leave to amend.  *See* Fed. R. Civ. P. 15(a)(2).

DATED:  August 29, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS R. BRITTON
JEREMY W. DANIELS

s/ Douglas R. Britton
DOUGLAS R. BRITTON

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dougb@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON
ROBERT D. KLAUSNER
BONNI S. JENSEN
7080 NW 4th Street
Plantation, FL  33317
Telephone:  954/916-1202
954/916-1232 (fax)
bob@robertdklausner.com
bonni@robertdklausner.com

Additional Counsel

*Yanek*, 388 F. Supp. 2d at 1133).  But as noted above, there does not appear to be legitimate authority or a reasoned basis for this legal standard and it is at odds with Ninth Circuit precedent and 17 C.F.R. §230.405's definition of control.  *See* §III, n.5.  Nevertheless, these entities exercised actual control over Xponential and its offerings, as discussed herein.

- 15 -

4936-5489-2376.v1

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 10 pages, exclusive of caption, table of contents, table of authorities, and signature block, which complies with the page limit set by the Court's Standing Order, dated February 13, 2024.

Dated: August 29, 2025

s/ Douglas R. Britton

DOUGLAS R. BRITTON

4936-5489-2376.v1