SIMPSON THACHER & BARTLETT LLP
JONATHAN YOUNGWOOD, SBN 350373
jyoungwood@stblaw.com|
SIMONA G. STRAUSS, SBN 203062
2475 Hanover Street
Palo Alto, CA  94304
Telephone: 650-251-5000
Facsimile: 650-251-5002

*Attorneys for Defendants H&W Investco, LP,*
*H&W Investco II, LP, and*
*Snapdragon Capital Partners*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| IN RE XPONENTIAL FITNESS SECURITIES LITIGATION | CASE NO. 8:24-cv-00285-JWH-KES |
| | CLASS ACTION |
| | Hon. John W. Holcomb<br>Courtroom 9D, Santa Ana |
| | **DEFENDANTS H&W ENTITIES' AND SNAPDRAGON'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT** |
| | Date:     November 14, 2025<br>Time:     10:00 a.m. |
| | Action Filed:  February 9, 2024 |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 5

II.   UNPLEADED FACTS TO BE DISREGARDED ................................................. 5

III.  ARGUMENT ....................................................................................................... 8

    A.  THE AMENDED COMPLAINT DOES NOT MEET APPLICABLE PLEADING STANDARDS TO ALLEGE CONTROL BY EITHER OF THE H&W ENTITIES OR SNAPDRAGON ................................................................................................. 8

    B.  THE AMENDED COMPLAINT FAILS TO ALLEGE A PRIMARY EXCHANGE ACT VIOLATION ............................................................................................. 9

    C.  PLAINTIFFS' ALLEGATIONS OF MINORITY STOCK OWNERSHIP DO NOT SUFFICE TO PLEAD CONTROL ..................................................................... 9

    D.  PLAINTIFFS DO NOT ALLEGE CONTROL BASED ON THE SPO UNDERWRITING AGREEMENT .................................................................... 12

    E.  PLAINTIFFS DO NOT ALLEGE CONTROL BASED ON THE FACT OF THE SPOS ......................................................................................................... 13

IV.   CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. SeaWorld Ent.t, Inc.*,
  423 F. Supp. 3d 878 (S.D. Cal. 2019)......................................................................12

*Brady v. Delta Energy & Commc'ns Inc.*,
  598 F. Supp. 3d 865 (C.D. Cal. 2022) .......................................................................6

*Cervantes v. City of San Diego*,
  5 F.3d 1273 (9th Cir. 1993) .......................................................................................6

*Ferreira v. Funko Inc.*,
  2:20-cv-02319, 2021 WL 8820650 (C.D. Cal. Oct. 22, 2021) .............................8, 12

*Howard v. Everex Sys. Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ...................................................................................9

*In re Allstate Ins. Co. Litig.*,
  No. CV-09-08162, 2013 WL 789106 (D. Ariz. Mar. 1, 2013)..................................11

*In re Am. Apparel, Inc. Shareholder Litig.*,
  2013 WL 10914316 ...................................................................................................11

*In re DDI Corp. Sec. Litig.*,
  No. CV 03-7063, 2005 WL 3090882 (C.D. Cal. July 21, 2005)...............................11

*In re Downey Sec. Litig.*,
  No. CV 08-3261, 2009 WL 736802 (C.D. Cal. Mar. 18, 2009)..................................6

*In re Peregrine Sys., Inc. Sec. Litig.*,
  Case No. 02CV870, 2005 WL 8158825 (S.D. Cal. Mar. 30, 2005)............................9

*Jacobson v. Schwarzenegger*,
  357 F. Supp. 2d 1198 (C.D. Cal. 2004) ......................................................................6

*Loritz v. Exide Techs.*,
  No. 2:13-cv-2607, 2014 WL 4058752 (C.D. Cal. Aug 7, 2014)................................8

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F. 3d 920 (9th Cir. 2003) ...................................................................................12

*Paracor Finance, Inc. v. General Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ......................................................................................8

*Purple Mountain Tr. v. Wells Fargo & Co.*,
  432 F. Supp. 3d 1095 (N.D. Cal. 2020)......................................................................6

*Rasheed v. United States Dep't of Transp.*,
  Case No. CV-14-7586, 2015 WL 13917284 (C.D. Cal. Nov. 2, 2015) .....................6

*Schneider v. Cal. Dep't of Corrections*,
  151 F.3d 1194 (9th Cir. 1998) ....................................................................................6

THE H&W ENTITIES' AND SNAPDRAGON'S REPLY ISO MOTION TO DISMISS THE AMENDED
CONSOLIDATED COMPLAINT
CASE NO. 8:24-cv-00285-JWH-KES

*Sgarlata v. PayPay Holdings, Inc.*,
   Case No. 17-cv-06956, 2018 WL 6592771 (N.D. Cal. Dec. 13, 2018) ...................... 6

*Thomas v. Magnachip Semiconductor Corp.*,
   167 F. Supp. 3d 1029 (C.D. Cal. 2016) ...................................................................... 11

**Rules**

17 C.F.R. § 230.405 ...................................................................................................... 9

THE H&W ENTITIES' AND SNAPDRAGON'S REPLY ISO MOTION TO DISMISS THE AMENDED
CONSOLIDATED COMPLAINT
CASE NO. 8:24-cv-00285-JWH-KES

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    INTRODUCTION**

Plaintiffs' Opposition to the motion to dismiss filed by Defendants H&W Investco, LP, H&W Investco II, LP and Snapdragon Capital Partners confirms that the Amended Complaint, ECF No. 104 ("AC"), fails to plead facts demonstrating that any of these three defendants (whether viewed separately, as they should be, or even collectively) controlled Xponential during the Class Period.  Recognizing this fact, Plaintiffs introduce in their Opposition brief new purported facts and theories that are not alleged in or supported by the Amended Complaint.  Such tactics cannot save an inadequately pleaded claim from dismissal.  Moreover, even if the new facts had been alleged, the Amended Complaint should be dismissed with respect to H&W Investco, LP, H&W Investco II, LP and Snapdragon Capital Partners because those new facts, along with the facts that had been alleged, would not have supported control.

What Plaintiffs have alleged is that two entities each owned a minority stake in one of Xponential's classes of securities and sold shares in Xponential's SPO.  A third entity acted as a fund advisor to those two entities.  All three entities were affiliated with Mark Grabowski.  Significantly for purposes of the Section 20(a) claim asserted against the three entities, neither the Amended Complaint nor the Opposition brief contains allegations reflecting the ability by any of these defendants to exert any operational control over Xponential.

### **II.    UNPLEADED FACTS TO BE DISREGARDED[1]**

Many of the statements in the "Statement of Facts" section of Plaintiffs' Opposition brief, ECF No. 123 ("Opp."), are not found in the Amended Complaint, whether or not they include a citation to the Amended Complaint.  Because facts cannot be alleged through an opposition to a motion to dismiss, the statements should be disregarded.  *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th

---

[1] Even if Plaintiffs had pleaded these purported facts in the Amended Complaint, Plaintiffs would have failed to allege control, as discussed below.

Cir. 1998) (stating that courts "*may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss"); *Brady v. Delta Energy & Commc'ns Inc.*, 598 F. Supp. 3d 865, 872 n.30 (C.D. Cal. 2022) (disregarding "new allegations" made in opposition to motion to dismiss "because '[r]eview is limited to the complaint'") (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)); *Rasheed v. United States Dep't of Transp.*, Case No. CV-14-7586, 2015 WL 13917284, at *4 (C.D. Cal. Nov. 2, 2015) (stating that "a plaintiff cannot oppose a motion to dismiss with facts not in the operative pleading"); *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004) ("[I]n determining the sufficiency of the complaint, the court may not consider the new allegations and exhibits contained in the plaintiff's opposition [to the motion to dismiss].").

Among the unalleged facts are the following:

- Grabowski used the H&W Entities and Snapdragon "to own and control Xponential." Opp. at 7.
- "Grabowski controlled Xponential through the H&W Entities." *Id*.[2]
- Each of the H&W Entities and Snapdragon "actually exercised control over Xponential in this case." *Id*.[3]

---

[2] To the extent Plaintiffs adequately pleaded that Grabowski controlled Xponential, *he* (and not the H&W Entities) would be a control person. Significantly, Plaintiffs do nothing to explain how Grabowski used the H&W Entities and Snapdragon to control Xponential.

[3] Such a statement would be conclusory at best and insufficient for purposes of pleading control even if it had been included in the Amended Complaint. *See In re Downey Sec. Litig.*, No. CV 08-3261, 2009 WL 736802, at *15 (C.D. Cal. Mar. 18, 2009) ("boilerplate allegation[s] [are] insufficient to state a claim for control person liability"); *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (granting motion to dismiss Section 20(a) claim because "conclusory efforts to allege controlling person liability are not sufficient"); *Sgarlata v. PayPay Holdings, Inc.*, Case No. 17-cv-06956, 2018 WL 6592771, at *8 (N.D. Cal. Dec. 13, 2018) (granting motion to dismiss Section 20(a) claim because plaintiffs pled only

6

- Each of the H&W Entities and Snapdragon "were involved in taking Xponential public." *Id*.
- Each of the H&W Entities and Snapdragon "caused Xponential to engage in two secondary offerings." *Id*.[4]
- The H&W Entities "made representations and warranties concerning information used in documents designed to solicit investors to purchase shares in the SPO." *Id.* at 8.

Some of these unalleged facts (*e.g.*, "Grabowski controlled Xponential through the H&W Entities.") are set forth without any cited support. Others cite the Amended Complaint, but the cited paragraphs do not support the statement. By way of example, the Opposition cites paragraphs 2, 36, and 299 in support of the statement that the H&W Entities and Snapdragon were involved in taking Xponential public in July 2021. Paragraph 2 does not even mention any of these three defendants, and paragraphs 36 and 299 make no allegation about the IPO. AC ¶¶ 2, 36, 299. Similarly, the Opposition cites paragraphs 268 and 270 in support of the statement that the H&W Entities and Snapdragon "caused Xponential to engage in two secondary offerings." Neither paragraph mentions any of the three defendants, let alone how any of them "caused" Xponential to do anything. *See* AC ¶¶ 268, 270.

The Opposition also introduces new theories not found in the Amended Complaint. *First*, Plaintiffs contend that each of the H&W Entities and Snapdragon "was the alter ego" of Mark Grabowski. Opp. at 6. This new theory is unsupported by the Amended Complaint's factual allegations. *Second*, Plaintiffs argue that the H&W Entities and Snapdragon "appeared specifically set up to control Xponential." Opp. at 11. Unsurprisingly, the Opposition does not cite any support from the Amended Complaint for this new theory.

---

"conclusory allegations of control over day-to-day activities," which were "insufficient to establish control person liability").

[4] *See infra* p. 12.

THE H&W ENTITIES' AND SNAPDRAGON'S REPLY ISO MOTION TO DISMISS THE AMENDED
CONSOLIDATED COMPLAINT
CASE NO. 8:24-cv-00285-JWH-KES

## III.   ARGUMENT

### A.  The Amended Complaint Does Not Meet Applicable Pleading Standards to Allege Control by Either of the H&W Entities or Snapdragon

The parties appear to largely agree on the applicable legal standards for purposes of assessing whether Plaintiffs adequately alleged that H&W Investco, LP, H&W Investco II, LP, and Snapdragon Capital Partners exercised control over Xponential during the Class Period.  The H&W Entities and Snapdragon do not agree with Plaintiffs' assertion, however, that control person claims are "not typically subject to resolution on a motion to dismiss."  Opp. at 9.  *Ferreira v. Funko Inc.*, 2:20-cv-02319, 2021 WL 8820650 (C.D. Cal. Oct. 22, 2021), which Plaintiffs cite for this proposition, denied the motion to dismiss the control person claim as to defendants who raised no arguments for dismissal based on allegations of control, denied it as to defendants who were adequately alleged to have had control, and granted it to another defendant.  *Id*. at *36-37.  In the other case, *Loritz v. Exide Techs.*, No. 2:13-cv-2607, 2014 WL 4058752, at *15 (C.D. Cal. Aug 7, 2014), the control person claim was dismissed as to one defendant, and the other defendants made only a "limited attack" on the claim.  Further, Defendants' motion to dismiss contains many cases in which control person claims were dismissed as inadequately pleaded.  *See, e.g.*, ECF No. 113 ("Mot.") at 9.  Because the Amended Complaint does not allege that the H&W Entities or Snapdragon exercised control over Xponential, this also is such a case.

Plaintiffs take issue with the recitation of control found in at least nine district court cases in this Circuit stating that plaintiffs must allege a "significant degree of day-to-day operational control" for purposes of control person claims.  Opp. at 10 n.5.  Plaintiffs challenge the "significant degree" portion of the standard but do not challenge that the standard requires participation in "day-to-day" corporate affairs, which is substantively no different from requiring "significant" involvement in day-to-day operational control.  *See Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1162-63 (9th Cir. 1996) (considering control based on whether defendant exerted

8

influence over primary violator "on a day-to-day-basis" and explaining that control must be considered based on overall management and policies of primary violator rather than discrete transactions); *Howard v. Everex Sys. Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (noting that whether defendant is "controlling person" requires "scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions"); *In re Peregrine Sys., Inc. Sec. Litig.*, Case No. 02CV870, 2005 WL 8158825, at *74-75 (S.D. Cal. Mar. 30, 2005) (same) (dismissing 20(a) control person claims because "there are no particularized allegations that [defendants] were active in day-to-day affairs of [company]"). In any event, to the extent there is a meaningful difference between a "significant degree of day-to-day operational control" and influence and participation on a "day-to-day basis," the Amended Complaint pleads neither.

## B. The Amended Complaint Fails to Allege a Primary Exchange Act Violation

As explained in Section II(A)-(D) of the Xponential Defendants' reply brief, which H&W Investco, LP, H&W Investco II, LP, and Snapdragon Capital Partners incorporate by reference, the Amended Complaint does not state a claim for a violation of Section 10(b) of the Exchange Act or of Rule 10b-5. The control person claim therefore fails. *See* Mot. at 8.

## C. Plaintiffs' Allegations of Minority Stock Ownership Do Not Suffice to Plead Control

Invoking the definition of "control" found in 17 C.F.R. § 230.405, Plaintiffs argue that the H&W Entities and Snapdragon had the power to direct Xponential's management and policies, "whether through the ownership of voting securities, by contract or otherwise." Opp. at 11. Plaintiffs offer no contractual basis or "otherwise" basis for this control. As discussed below, control through the ownership of Xponential securities also fails.

### 1.    Snapdragon

As a preliminary matter, the Amended Complaint does not allege that Snapdragon owned *any* Xponential stock during the Class Period.  Mot. at 7.[5]  Despite this omission, the Opposition states that each of the H&W Entities and Snapdragon "owned and controlled up to 31% of Xponential's voting shares."  Opp. at 6.[6]  Unless "up to 31%" can be read as "0%," that statement is unsupported by the Amended Complaint as to Snapdragon.

### 2.    H&W Investco, LP and H&W Investco II, LP

As for H&W Investco, LP and H&W Investco II, LP, the statement that each of these defendants "owned and controlled up to 31% of Xponential's voting shares," Opp. at 6, is misleading based on the Amended Complaint itself.  The Amended Complaint alleges that during the Class Period, H&W Investco, LP held various amounts of Class B stock, H&W Investco II, LP held various amounts of Class A stock, and the H&W Entities and Mr. Grabowski *collectively* held between 21% and 31% of Xponential's Class A stock.  *See* AC ¶¶ 34-36.  As explained in the motion to dismiss, owning a *minority* of the shares of one of two classes does not constitute support.  *See* Mot. at 11-13.

The Opposition references the Motion's "page-long string cite" (presumably on pages 11-12) in support of Defendants' argument that minority stock ownership is insufficient to plead control but addresses only two of the ten cases in that string cite.  Both cases support dismissal here.  *First*, the court in *In re Am. Apparel, Inc. Shareholder Litig.*, Case No. CV 10-06352, 2013 WL 10914316 (C.D. Cal. Aug. 8,

---

[5] The Amended Complaint alleges that Snapdragon owned some Xponential shares in October 2018, almost three years before the start of the Class Period.  AC ¶ 36.  It does not allege that Snapdragon owned any Xponential shares at any time after July 23, 2021, the start of the Class Period.

[6] Plaintiffs group H&W Investco, LP, H&W Investco II, LP, and Snapdragon Capital Partners together as "the Grabowski Entities," Opp. at 6 n.1, and thereafter largely fail to differentiate between the three separate defendants.

2013), did not hold that plaintiffs adequately alleged control based on an 18% stock ownership. *Cf.* Opp. at 14. Rather, it reaffirmed the principle that holding "a minority stock interest [is] insufficient to establish control person liability." *In re Am. Apparel, Inc. Shareholder Litig.*, 2013 WL 10914316, at \*33. The claim in that case survived dismissal because, in addition to the stock ownership, the defendant "had a significant lending relationship" with the primary violator and had designated two members of the primary violator's board. *Id.* at \*37. The Amended Complaint here does not have any such comparable allegations and is silent as to the contractual rights, if any, that the H&W Entities (or Snapdragon) have with respect to Xponential.

*Second*, Plaintiff inexplicably suggest that *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048-49 (C.D. Cal. 2016), supports control claims based on minority stock ownership. Opp. at 14. It does not. Rather, the court in that case distinguished "Defendants' cited case law . . . because none of it involves a party who began the class period as a majority shareholder only to lose that status shortly thereafter. Rather, Defendants' cases stand merely for the proposition, which no one here disputes, that a party that has always held only a minority share of the company does not, by virtue of that fact alone, possess 'control' over that company." *Magnachip*, 167 F. Supp. 3d at 1049. Here, the Amended Complaint does not allege that either of the H&W Entities or Snapdragon, or even all three collectively, ever owned a majority of Xponential stock.

Plaintiffs' case law in support of control based on minority share ownership is unpersuasive here. In each case, the court allowed the control person claim to move forward for reasons unrelated to stock ownership. *See In re Allstate Ins. Co. Litig.*, No. CV-09-08162, 2013 WL 789106, at \*4 (D. Ariz. Mar. 1, 2013) (denying summary judgment because defendant was both a shareholder ***and chairman*** of primary violator, and "the position of chairman came with significant supervisory responsibilities"); *In re DDI Corp. Sec. Litig.*, No. CV 03-7063, 2005 WL 3090882, at \*20 (C.D. Cal. July 21, 2005) (denying motion to dismiss control person claim because defendant was listed as "principal stockholder" in prospectus, which stated that defendant had "significant

influence over our business"); *Baker v. SeaWorld Ent.t, Inc.*, 423 F. Supp. 3d 878, 946 (S.D. Cal. 2019) (denying summary judgment because, in addition to stock ownership, defendant held three seats on board of primary violator); *Ferreira*, 2021 WL 8820650, at *37 (denying motion to dismiss because defendants, in addition to owning 45.7% of primary violator stock, had the ability to appoint three of seven board members). Here, in contrast, Plaintiffs do not allege any ability by either of the H&W Entities (or Snapdragon) to appoint an Xponential director or any statement by Xponential or anyone else suggesting that these defendants had any influence or supervision over Xponential.

Plaintiffs' reliance on *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F. 3d 920 (9th Cir. 2003), is similarly misplaced. The control person claim in that case survived dismissal because the defendants "were the largest stockholders of [the primary violator], controlling approximately 57.4% of the total voting power," "had the power to elect the majority of the members of [the primary violator]'s Board of Directors and committees established by the Board," and "had some of their own officers seated on [the primary violator]'s Board of Directors." *Id*. at 946. Here, Plaintiffs do not allege that either of the H&W Entities (or Snapdragon) had the power to elect any Xponential board members.[7]

**D. Plaintiffs Do Not Allege Control Based on the SPO Underwriting Agreement**

Plaintiffs' Opposition invokes the Underwriting Agreement that the H&W Entities signed in connection with the April 2022 SPO. Opp. at 8, 11; ECF No. 124-1. The H&W Entities were party to the agreement because they sold their shares to the underwriters of the offering.[8] Nothing in the Underwriting Agreement, however,

---

[7] The Opposition glosses over this deficiency by stating that Grabowski was "installed as the Chairman of Xponential's Board." Opp. at 7. Plaintiffs do not (and cannot) allege, however, that his "installation" was the result of any contractual right possessed by any of the H&W Entities or Snapdragon.

[8] Plaintiffs argue that it is appropriate to view the two H&W Entities and Snapdragon collectively because the H&W Entities acted in unison by selling shares in the SPO. Opp. at 13. Not so. *First*, that explanation says nothing about Snapdragon. *Second*, by selling shares, neither of the two H&W Entities did anything (let alone in unison) to

12

supports control by the H&W Entities over Xponential. Nor does the Underwriting Agreement, which Plaintiffs submitted with their Opposition brief, support Plaintiffs' contention that the H&W Entities "caused" Xponential to pay certain expenses in connection with the SPO. Opp. at 8. Plaintiffs unsurprisingly do not cite any case law supporting the proposition that being a party to an agreement with the underwriters of a public offering indicates control over the company whose shares are being offered to the public.

### E. Plaintiffs Do Not Allege Control Based on the Fact of the SPOs

Plaintiffs argue that the H&W Entities and Snapdragon "used their control to cause the Company to undertake two secondary offerings." Opp. at 11. Paragraphs 138 through 140 of the three Amended Complaint paragraphs, which are cited in support of this proposition, do not mention any of these three defendants. Further, the Amended Complaint (and even the Opposition) is silent as to what control these defendants had and how they used it or even could have used it to cause Xponential to do anything with respect to public offerings of its stock. Despite this deficiency, Plaintiffs latch on to their own conclusion that the H&W Entities and Snapdragon exercised control to cause Xponential to conduct SPOs to argue that "[t]his exercise of control amply alleges" that these defendants "had the power to (and did) dictate Xponential's management and policies." *Id.* at 11-12. Plaintiffs' allegations and reasoning with respect to control is circular at best.[9]

In short, Plaintiffs did not plead that the H&W Entities and Snapdragon caused Xponential to conduct any SPOs (or that they were involved in the IPO). But even if

control any Xponential action. They did not, for example, exercise whatever voting power their collective ownership may have carried in order to cause Xponential to take any action. *See* Mot. at 10-11 (explaining that Plaintiffs improperly lump defendants together).

[9] Plaintiffs also refer to the Amended Complaint's supposed "detail about the role of each [of the H&W Entities and Snapdragon] and influence they exerted over Xponential in executing the Company's SPO." Opp. at 12 n.6. The Amended Complaint contains no such detail.

THE H&W ENTITIES' AND SNAPDRAGON'S REPLY ISO MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT
CASE NO. 8:24-cv-00285-JWH-KES

they had made this allegation, it would have been insufficient for purposes of control, which requires the ability to exert day-to-day operational control.  Here, Plaintiffs offer no basis for any such ability, whether by virtue of contract rights, stock ownership or otherwise.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs failed to allege that any of Defendants H&W Investco, LP, H&W Investco II, LP, or Snapdragon Capital Partners had the ability to control Xponential, and the Motion should be granted with prejudice.

DATED:  October 14, 2025

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: *Jonathan K. Youngwood*
       Jonathan K. Youngwood

Attorneys for Defendants H&W Investco, LP, H&W Investco II, LP, and Snapdragon Capital Partners