**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

**HONORABLE JOHN W. HOLCOMB, JUDGE PRESIDING**

**CERTIFIED TRANSCRIPT**

|  |  |
|---|---|
| In re:  Xponential Fitness Securities Litigation | )<br>)Case No. 8:24-cv-00285-JWH<br>)<br>) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

WEDNESDAY, DECEMBER 3, 2025

10:09 A.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(657) 229-4305**
**transcripts@ddparker.com**

*Deborah D. Parker, U.S. Court Reporter*

**APPEARANCES OF COUNSEL:**

FOR THE MOVANT, FORT LAUDERDALE POLICE & FIREFIGHTERS' RETIREMENT SYSTEM:

PETER KO
JEREMY W. DANIELS
DOUGLAS R. BRITTON
ROBBINS GELLER RUDMAN & DOWD LLP
655 WEST BROADWAY
SUITE 1900
SAN DIEGO, CALIFORNIA 92101
(619) 231-1058
pko@rgrdlaw.com
jdaniels@rgrdlaw.com
dougb@rgrdlaw.com

FOR THE PLAINTIFF, XPONENTIAL FITNESS, JOHN MELOUN, MARK GRABOWSKI, CHELSEA GRAYSON and BRENDA MORRIS:

MICHAEL D. CELIO
JEFFREY D. LOMBARD
GIBSON DUNN & CRUTCHER, LLP
310 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301
(650) 849-5300
mcelio@gibsondunn.com
jlombard@gibsondunn.com

**APPEARANCES OF COUNSEL:**

FOR THE DEFENDANT, ANTHONY GEISLER:

        THOMAS A. ZACCARO
        HUESTON HENNIGAN LLP
        523 WEST SIXTH STREET
        SUITE 400
        LOS ANGELES, CALIFORNIA 90014
        (213) 788-4340
        tzaccaro@hueston.com


FOR THE DEFENDANTS, H&W INVESTCO, LP;
H&W INVESTCO II, LP and SNAPDRAGON CAPITAL
PARTNERS:

        JONATHAN K. YOUNGWOOD
        SIMONA STRAUSS
        SIMPSON THACHER & BARTLETT, LLP
        425 LEXINGTON AVENUE
        NEW YORK, NY 10017
        (212) 455-339
        jyoungwood@stblaw.com


FOR THE DEFENDANT, B OF A SECURITIES, INC.:

        PATRICK H. HEIN
        ALLEN OVERY SHEARMAN STERLING US,
        LLP
        140 NEW MONTGOMERY
        10th FLOOR
        SAN FRANCISCO, CALIFORNIA 94105
        (415) 796-4160
        patrick.hein@aoshearman.com

4

**SANTA ANA, CALIFORNIA; WEDNESDAY, DECEMBER 3, 2025;**

**10:09 A.M.**

**-o0o-**

THE CLERK:  Calling Calendar Item No. 1, Case No. 8:24-cv-00285, In re:  Xponential Fitness Securities Litigation.

Counsel, please state your appearances for the record, beginning with plaintiff.

MR. KO:  Good morning, sir.

Peter Ko, Jeremy Daniels and Douglas Britton from Robbins Geller Rudman & Dowd for the lead plaintiffs.

THE COURT:  Okay.  Good morning to all of you, Counsel.

MR. CELIO:  Good morning, Your Honor.

Michael Celio and Jeff Lombard of Gibson Dunn for Xponential Fitness, John Meloun, Mark Grabowski, Chelsea Grayson and Brandon Morris.

THE COURT:  All right.  Good morning, Counsel.

MR. ZACCARO:  Good morning, Your Honor.

THE COURT:  Get next to a microphone, please.

MR. ZACCARO:  Good morning, Your Honor.

Thomas Zaccaro for defendant Anthony Geisler.

THE COURT:  Mr. Zaccaro, good morning.

MR. YOUNGWOOD:  Good morning, Your Honor.

///

*Deborah D. Parker, U.S. Court Reporter*

*(Court Reporter requests clarification for the record.)*

THE COURT:  Hold on.

MR. YOUNGWOOD:  I can walk up there.

THE COURT:  Or pull it close to you.

MR. YOUNGWOOD:  Good morning.  That sounds much louder.

Good morning, Your Honor.

Jonathan Youngwood, Simpson Thacher, with Simona Strauss, Simpson Thacher for H&W Investco, LP; H&W Investco II, LP and Snapdragon Capital Partners.

THE COURT:  And that was Mr. Youngwood?

MR. YOUNGWOOD:  Youngwood.

THE COURT:  Mr. Youngwood, good morning to you.

MR. HEIN:  Good morning, Your Honor.

Patrick Hein, of A&O Sherman on behalf of the underwriter defendants.

THE COURT:  Mr. Hein, good morning.

MR. HEIN:  Good morning, Your Honor.

THE COURT:  Okay.  Did we get all counsel?

Good.  We are here, of course, on these two motions that various groups of defendants have filed to dismiss the -- I'm going to refer to it as the amended complaint.  It might be the fourth iteration.  It's the amended consolidated complaint, ECF 104.

So a lot of material here.  I've read it and done my best to assimilate all of it.  But if I ask a stupid question, please humor me and explain -- you can bring it down to a more basic level and help me understand your respective positions.  Let's do it this way.

I have some specific questions for each side.  Let me go through specific questions.  Please keep your answers short.  Just focus on the question.  And I'll do that with both sides.  And then I'll let you argue whatever you wish to argue, because I want to hear whatever it is you wish to tell me.  I've got until a little bit before noon, so maybe we can wrap it up quicker than that, but I do want to hear everything that you wish to tell me.

So let me start probably with you, either Mr. Lombard or Mr. --

MR. CELIO:  -- Celio.

THE COURT:  Help me with the pronunciation.

MR. CELIO:  Celio.

THE COURT:  All right.  Mr. Celio, of course, you represent the moving party on -- ECF 112, I think, is your motion.  And I'll note -- I know that the underwriter defendants joined and Mr. Geisler joined.  I do want to hear everybody, but I think, Mr. Celio, you'll probably have most of the answers.

MR. CELIO:  I hope so, Your Honor.

THE COURT:  Okay.  Let me start with this question about your argument that the amended complaint can't state a claim -- a securities fraud claim because the alleged deception involved representations to only franchisees and not to the securities market, more generally.  I want to make sure I understand that argument.

Why does -- why does that matter?  Tell me the very basic level.

MR. CELIO:  At a very basic level, the first element of any securities claim is that the misstatement must be made in connection with the purchase or sale of a security.  So private statements that the market does not hear to a franchisee cannot by itself be the basis of a securities claim because it misses that in connection requirement.

THE COURT:  So these alleged statements to franchisees, they were made public perhaps in other places through the franchisees' lawsuits, were they not?

MR. CELIO:  I think that's correct that they were made public, although the Court has to assess the seriousness and the reliability of statements like that, because you've got hearsay piled on hearsay, piled on hearsay.  So when we're looking at the standard under the Reform Act particularized facts giving rise to a strong --

(Court Reporter requests clarification for the

*Deborah D. Parker, U.S. Court Reporter*

8

*record.)*

THE COURT:  Slow down just a bit, please.

MR. CELIO:  My apologies.  My apologies.

-- particularized facts giving rise to a strong inference of scienter.

So under the Reform Act -- and I apologize if this is too basic.  Please push me back -- push back, if I'm going too slowly, but because this standard is higher than Iqbal -- you know, the *Iqbal/Twombly* standards, we're in an unusual scenario for a motion to dismiss, the other ones you hear.  The plaintiffs are required to plead an incredibly high level of detail.  And so I think your point is fair.  These statements, for whatever they're worth, later become public, although the "whatever they're worth" is where we're putting a lot of our emphasis.  We don't think those statements are worth very much.

I'll stop there, because you told me to keep it short.

THE COURT:  Yes.  And that's -- that is a good stopping point, because my next questions are on reliability.

MR. CELIO:  Okay.

THE COURT:  So plaintiffs seek to rely on statements made by the franchisees in the context of the franchisees' various lawsuits, including what the

*Deborah D. Parker, U.S. Court Reporter*

franchisees say that defendants said -- various defendants. That's a very high level; is that not correct?

MR. CELIO:  Well --

THE COURT:  And if so -- well, putting aside the specific statement, why isn't it okay for plaintiffs to rely on allegations that were made by the franchisees in their lawsuits?  I mean, those are made under -- they're not made under penalty of perjury, but they are subject to Rule 11, or -- I forgot if they're in state court, but the analog.

MR. CELIO:  They are in state court and these are non-verified complaints, to the best of my knowledge, which is an important distinction to those of us who practice law in California.

THE COURT:  Slow down.

MR. CELIO:  So here's a couple of clarifications on that.  Remember that there's no such thing as an Xponential franchise.  Xponential has 10 different franchises -- 10 different studios.  You know, some is boxing; some is, you know, barre.  None of that matters except for this fact.  Again, going to the particularity point, what we're talking about is three or four, maybe five -- I think you can count them on one hand, maybe two -- franchisees out of the thousands that you have.  And all we have, based on those statements, is somebody said something at some point to someone.

That's below what the Reform Act requires. Because what we don't have is, we don't have the who, you know, which defendant. You know, it's certainly not, for instance, Mr. Grabowski, right?

We know it's not Mr. Meloun, presumably. A CFO wouldn't normally say that. And in any event, it's not pleaded, right? We don't know when these statements were made with any broad range. And we know it is a tiny percentage of the people.

So if the question is: Can you rely on them at all? Sure. You can take them for what it's worth. I'm not taking the extreme position that you need to, you know, throw all of them out just as a rule. What I'm saying is you take them for what they're worth, and they're not worth much.

THE COURT: Now, on the issue of reliability, we've got the consent order, the order from the -- I think it's the California Department of Financial Protection and Innovation?

MR. CELIO: Yes.

THE COURT: Why is that -- why is that order not reliable?

MR. CELIO: So it's reliable in that it exists. We don't contest that it exists. Again, you should take it for what it's worth which is a very modest settlement and

going back to the first question you asked me about franchisees.  So the documents that they're talking about in that particular proceeding are a set of very --

THE COURT:  Forgive me.  That proceeding in connection with the consent order?

MR. CELIO:  Yes, sir.  Yes, sir.

That proceeding is about the technical requirements of what you have to say to these 10 different sets of franchisees.  And remember that we've got one on the barre franchisee.  We've got one on another.  We don't have any on our most successful franchises.  Club Pilates is what that's called.  We don't have any of those people, because they're not complaining, because they're doing great.

But what we have is -- again, it's very technical.  I don't practice in this area of law so I don't want to go further -- I don't want get out over my skis, but you have to say X, Y and Z in a particular way.  And there was a dispute about whether X, Y and Z was said in that particular way.  It's not an admit-or-deny --

*(Court Reporter requests clarification for the record.)*

MR. CELIO:  It's not an admit-or-deny settlement.  It's allegations were made and the matter was settled.  So it's not -- it doesn't establish anything.  But it's very different than what we're talking about in this case.

Again, the Securities and Exchange Commission who has the authority to regulate the statements made to the market -- also, it's publicly known -- looked very carefully at this and declined to take any action.  And I actually think that when you put those two things side by side, did the franchise regulator -- whatever it's called -- says, you know, maybe there's something you need to fix here, but the SEC says, you know, we're not --

THE COURT:  Nothing to see here.

MR. CELIO:  Yeah, nothing to see here, or, at least, not anything worth our time, I think tells a very important story which is that these are different kinds of disclosures to different people for different purposes.

And so we certainly -- my client, Xponential, certainly has a very different view of the quality to its disclosures to its franchisees.  But for the purposes of this proceeding, the pleading standard is:  We take their complaint, as it's given -- you know, we have to take well-pleaded allegations as true, so we will for this purpose -- even if everything they're saying about our statements to our franchisees is true, it doesn't state a securities claim.  They're not without a remedy.  There are many consumer protection laws.  These lawsuits are filed, but it's a different set of people who are protected.

Investors have a right to rely on what we say to

the market.

THE COURT:  You're getting a little far afield.  I want to hear this argument, but let me hear it later.

MR. CELIO:  Okay.

THE COURT:  So what's the best authority, if there is any, that supports your position that the consent order is not reliable for the purposes that we care about here in this case?

MR. CELIO:  I don't think there's any particular authority.  I'll get you my best case in a second, but I want to say I want to be very clear about what my position is.  I think you can consider it.  So I'm not saying that you have to, again, as a matter of law, just disregard it completely.  My point is you take it for what it's worth when you are evaluating the complaint versus the Reform Act's very high standard.  And a set of unproven allegations made by whoever, you can consider them, but they weren't adjudicated.  They weren't contested and so they're worth the paper they're written on.

THE COURT:  That kind of takes me to my next question.  You attack each of the individual statements, set of facts, whatever that plaintiffs seek to rely on, on this reliability issue.  But taken together, why don't these sources corroborate each other to make them collectively reliable?

You may have good arguments to knock out any one individual of these.  What do we got:  The franchisees' lawsuits -- those statements -- the consent order, the Bloomberg article, Bank of America analyst report.

You know what the sources are.

MR. CELIO:  Agreed, Your Honor.

So, first of all, you've stated the law correctly. The Ninth Circuit requires you look at it holistically.  My argument is -- and this is in the briefs -- is that these aren't independent statements that corroborate each other. These are echos of the same statement over and over again.

Our point is all that those news articles are is the same allegation by the same set of people in a cave, echoing off the walls, being repeated again and again. Repetition and corroboration are different ideas.  Think of it like a journalist.  You have to have two independent sources to publish an article -- at least, you used to. That's what we're saying here is that the news articles, essentially, repeat the complaints.  The short seller report, essentially, repeats the news articles and the complaint with motivated reasoning and with a disclaimer that says, *By the way, nothing here is new.  Nothing is public.  Nothing is material, nonpublic inside information. And, by the way, we have a short position in the stock.*

So I actually think that whether you take them

individually or collectively, the answer is the same, because it's one allegation which is that Xponential, when it went to subset of franchisees, was aggressive or optimistic.

THE COURT: Okay. I understand your argument. That's helpful.

That kind of takes me to my next question about scienter. It has sort of the same question. Plaintiff was advocate. Why is it not good enough that plaintiff's allegations taken as a whole give rise to a strong inference of scienter?

MR. CELIO: So, again, I think it's a pretty similar answer, but let me take the piece that I think, you know, has the most weight and gets the most attention from them which is the stock sales, right?

There were only three -- only three named defendants, who have any stock sales, that are alleged that spoke, right? You have Mr. Geisler, Mr. Meloun and Mr. Grabowski.

Mr. Meloun didn't sell any shares at all. Full stop, right? So that's not a strong inference of scienter. In fact, if you're thinking about a scheme claim, it's kind of an odd scheme where the CFO who would have to be -- right? If you take this seriously -- would have to be in on it. Didn't sell any shares, okay. So that's Mr. Meloun.

Mr. Grabowski retained the vast majority of his shares.  All of his sales were through a secondary public offering, an SPO.  An SPO contains massive sets of disclosures in it, right?  You know, you clear the market is what we call it, right?  There's no MNPI -- material nonpublic inside information -- at that point.  He runs a private equity fund.  That is a very standard way to sell shares, and it's considered sort of a gold standard, right?  Instead of doing it on the open market when there might be other information, you do it -- you tell everyone you're doing it.  So that's Mr. Grabowski.  And by the way, Mr. Grabowski made open market purchases during the period, again, undermining any inference of scienter.

Most of the --

(Court Reporter requests clarification for the record.)

MR. CELIO:  Most of the fire in the briefing is trained on Mr. Geisler, but even Mr. Geisler sold less than 25 percent of his holdings and his sales were either through an IPO/SPO, right?  So, you know, again, these gold standard disclosures events or through a 10b5-1 plan which gives him a safe harbor.  And they've got some allegations that maybe he had inside information when he entered the plan.  I acknowledge that that's their argument.  I don't think there's any basis for that claim that's pleaded that's

meaningful.

So I think you take the stock sales together. And, actually, I think that -- remember that the inference of scienter must be cogent and compelling. I don't think it's either. I don't think it's cogent when you have someone not -- when you have two of the three either not selling or selling through a SPO event. I don't think that's compelling. I think what you have is normal sales which are part of the compensations of officers.

THE COURT: So jump -- this jumps me ahead to a later question, but it would be theoretically possible for plaintiffs to establish scienter or to properly plead scienter with respect to some but not all defendants?

MR. CELIO: So, obviously, I believe it's not pleaded as to all.

THE COURT: I understand that.

MR. CELIO: But, yes, that is a correct statement of the law, Your Honor. It is an individual by individual analysis.

THE COURT: And you would have me conclude, if I was going to rank the quality of the scienter pleading, it is at least good with respect to Mr. Meloun, would you say?

MR. CELIO: Well, I love all my children equally, Your Honor.

(Laughter.)

MR. CELIO:  So it's a very hard position, but I would say that the allegations are very weak as to -- I would see they are the weakest as to Mr. Meloun for sure and they are then, I think, next most weak as to Mr. Grabowski with his open market purchases and his sales in the IPO.

I think Mr. Geisler's sales are perfectly defensible as well, but -- you know, I suppose he didn't buy on the open market, for example.

THE COURT:  I have a question about a very specific argument that you make.  You say, in essence, that it is more likely that -- I think I'm quoting -- in the midst and wake of the global pandemic, some franchisees experienced financial hardships and had to close their operations, and you say that fact makes the inference of scienter less likely.

MR. CELIO:  Yes.

THE COURT:  Am I understanding your argument?

MR. CELIO:  That's one of our arguments, yes, Your Honor.

THE COURT:  So scienter -- as I evaluate the quality of the pleading, I have to find that it's more likely than not that the inferences support a finding of scienter?  Is that -- help me with the precise test.

MR. CELIO:  Cogent and compelling particularized facts giving rise to cogent and compelling inference of the

required state of mind.  You know, scienter being here either intent or gross recklessness.  You know, either I meant to crash my car, you know, into the other car, or I blindfolded myself, you know, pressed on the accelerator and didn't care what happened, right?  Recklessness to the point that it's essentially intent, that's the Ninth Circuit test.  But it's got to be a cogent --

It's not more likely than not.  It is cogent and compelling.  It's, I believe, one of the highest standards anywhere in the law.  You know, it's -- you know, you have to weigh the two, and it's got to be -- "cogent" means clear, thoughtful.  It makes a lot of sense.  And compelling, I think, sort of a moral force, you know, that this seems like what you think happened.

And so the quote that you read from your papers, what we're driving at there is -- remember, these are scheme claims which is a little different, right?  And so what's alleged is a very complex set of actions by our clients that we got together and we said that we were going to apparently --

THE COURT:  Forgive me for interrupting you.

MR. CELIO:  No, no.  Please go ahead.

THE COURT:  When you say "scheme claims," I just want to make sure that I'm understanding what you mean.  You're talking about 10b-5, (a) and (c)?

MR. CELIO:  Yes.  Exactly that, Your Honor.  Exactly that.

And I guess my point is that scheme claims require more than a misstatement, right?  It requires conduct in excess.  And so they're taking on a very high burden by pleading a scheme claim.  This is one of the most difficult claims to plead.  And I think strong claims require strong evidence.  You know, again, this cogent and compelling argument.  And what this case is utterly lacking -- and this is going a little broader than your question, but I think it's relevant here.  This case is lacking those inside sources, you know, conversations, e-mails.  Given all the SEC, you know, action and litigation, if those existed, they have ways -- they're very good lawyers on the other side.  Excellent law firm.  They have ways of getting at that stuff.  There's a dog that didn't bark.

There's no evidence from inside the company that is contemporaneous with the alleged scheme that suggests that this is what they were doing.  I think the closest they come -- and I want to acknowledge it and take it on directly -- is that there are a couple of memos that a couple of franchisees write, prior to the class period.  But, again, we don't know very much about those.  We don't have the memos.  We don't know what it says.  We don't know how many people signed them.  We don't know really very much

about it.  Most importantly, we don't really know that any individual defendant saw this, right?

I mean, normally in these cases what you see is you have these, you know, CWs, these confidential witnesses who say, *I worked in the company.  And, you know, I talked to Mr. Geisler.*  Given what a bad guy they try to make him out to be -- I, personally, don't have reason to believe that, but, you know, that's what they've pleaded -- you would think that there would be somebody who'd, you know, to say this about him that he said, *Ha, ha, ha.  Rub my hands together.  We're going to get these franchisees.*  There's nothing like that here.  It's almost -- the record is almost totally silent with the exceptions I mentioned.

THE COURT:  I got a question here that I wrote. Let me just ask:  Does Mr. Geisler's receipt of the memo or memos have any bearing on the other defendants' scienter?

MR. CELIO:  First of all, I'm not sure that it's well pleaded that he did, but let's assume that he did.  No, it wouldn't, because there's no such thing as collective scienter, right?  That's not how that's evaluated.

So even if you were to believe that he did -- and, again, given that we don't know very much about what's in that memo and how many people were saying it and its timing which is, you know, before these -- I think it's a year before.  But, no, it would have nothing to do with

Mr. Meloun, with Mr. Grabowski, with anybody else -- with Ms. Grayson, or anybody else.

THE COURT:  I've noted kind of a rambling question.  Let me try to -- this is on loss causation.

You argue that the Fuzzy Panda report cannot serve in and of itself as a corrective disclosure.  But if I conclude that that report provided new information to the market but comes with a grain of salt -- I think that's from the *Nektar Therapeutics* case -- why wouldn't the other alleged corrective disclosures that seem to confirm the veracity of the Fuzzy Panda report plausibly plead loss causation?

MR. CELIO:  You are right at the heart of the argument.  It's an excellent question.  And the answer is for that this purpose, for loss causation, what we're talking about is whether there's a match, right?  You need to look at what the statement is that's in our pleadings -- in our SEC statements and then what the proposed corrective order is -- I'm sorry, the proposed corrective disclosure is, right?  And there needs to be a match between those two things.

Now, if this case proceeds and we go to class certification, there's a bunch of Supreme Court law on this under *Goldman* that we'll talk about, but I hope it doesn't.  And I think at this stage, what we're talking about is a

requirement that if what is in Fuzzy Panda had been said at the time that the original statements were made, would it have mattered, right?  In other words, the two have to be somewhat the same to be a corrected disclosure.

And our argument is there's actually nothing in Fuzzy Panda that wasn't already out there.  Remember that we're operating in a legal context.  We -- sort of because of the way the law is structured on reliance that there's this presumption of economic efficiency.  There's this presumption that all information is immediately incorporated into the price of the stock, so -- it's called the efficient market theory.  It's -- as someone who went to the London School of Economics, I actually --

*(Court Reporter requests clarification for the record.)*

MR. CELIO:  -- London School of Economics, I don't buy it as an economic matter, but it's the law, okay.  And they're relying on it.  The plaintiffs are relying on it to meet their burden.

THE COURT:  What does Harvard Business School teach on that?

MR. CELIO:  You know, I didn't get to go across the river very much.  They left the law students, you know, on the other side, so I don't know.  But I will tell you that the point here is that nothing that's in that report is

actually new.  Filings are public.  Filings in the Orange County Report are public, right?  You know, these arguments -- these newspaper articles that Fuzzy Panda relies on, right, that it all puts it together aren't new. So there's really nothing in Fuzzy Panda that is new.  And had you said -- had you put the facts of Fuzzy Panda -- it's called the rhetoric -- It's funny.  Fuzzy Panda sounds like such a friendly creature, right?  But they say things in very mean ways.

Hold aside their rhetoric and just focus on what they say, if you had disclosed what they said in our normal SEC filings, it would have had no impact on the market, because it would have been a couple of -- a couple of our franchisees, right?  Four or five of our franchisees didn't do very well and are mad at the company.

THE COURT:  What's your evidence for that?  That may not be the right -- well, that may be the point.  How do you know that if the Fuzzy Panda disclosures had been in the various SEC filings or other company disclosures, how do you know it would have had no effect on the market?

MR. CELIO:  This is why I brought up the efficient market theory.  Because the fact that those lawsuits were out there is as a matter of law incorporated into the price of the stock.  So what Fuzzy Panda did -- give credit where credit is due.  They sort of put together a bunch of stuff

and sort of cast it in a very sinister tone, right?  And let's be clear.  There was a market reaction to that.  That's just what they've pleaded.  We accept that.

THE COURT:  But isn't that in and of itself proof that your proposition that if the Fuzzy Panda allegations -- disclosures, whatever you wish to call them, had been in SEC disclosures then they would have had no effect?

MR. CELIO:  No.  Because it's facts versus presentation, right?  And I can show -- and I think the record establishes -- that the facts were already out there; that there was nothing new.  So what they did, to their credit, is they made it sound really terrible.  But all of that information as a matter of law is in the market.  And it can't be a corrective disclosure, unless it says something new.  And I think *Nektar* stands for this proposition.

I think Your Honor stated the law correctly.  We aren't saying you can never ever look at a, you know, short seller report, because that's too extreme a position.  And this is going to sound like something I said before:  You have to take it for what it's worth.

Let me just back up and just sort of try to make a macro point about the complaint, because it think it goes directly to this.  I realize it's a little broader.  But if you go to the complaint -- and I would urge the Court and

the law clerks to do that -- it's about 60 or 70 pages of -- yeah, you got it right there.  It's huge.  But you go 60 or 70 pages before you get to anything my clients said, right?  It's all about the franchisees for about 60 pages and then it transitions.  And it block quotes at great length, things that we said to the market.  And then at the conclusion of each block quote, it says, *And that was false because of the 70 pages we already pleaded.*

There's two problems with that:  One is that that's truffle hunting or puzzle pleading.  Truffle hunting being, you know, judges are not meant to be pigs rooting through the forest, figuring out what the claim is.  You can dismiss this case just on that basis, because it's not well pled for that.  But more fundamentally, it goes to this point that there's this mismatch between these ideas that the franchisees had these, you know, small disputes that in many cases were public -- not made to the market but, you know, sort of reported on.  And they don't contradict anything that we said.  And, fundamentally, that's what this case is about which is, you know, did anything we say to the market, was it misleading?  Was it part of the scheme to defraud?

THE COURT:  Statement or material omission, right?

MR. CELIO:  It can be a material omission, although material omission under the *Brody* case has to

*Deborah D. Parker, U.S. Court Reporter*

make -- it's not just something someone would have wanted to know.  It has to make something that you said misleading.  So it's not omissions by itself.

THE COURT:  Okay.  I think this is on the -- I think this is the 20A claim, Count Two.  It appears that the Ninth Circuit has not decided whether signing an SBO -- SPO registration statement qualifies Mr. Grabowski as a statutory seller; is that correct?

MR. CELIO:  I think that's correct.  I think I would want the funds counsel to make sure either they're here as well that they should confirm that, but I believe that is correct.

THE COURT:  So why should I conclude that it -- since the Ninth Circuit hasn't ruled on that issue, why should I rule one way or the other?  Conclude one way or the other?

MR. CELIO:  Well, unfortunately, sometimes District Courts are put in the unfortunate position of having to stake out a position.  I mean, look, I don't think you need to reach that claim, because I think 20A claims fail because the underlying claims fail.  And so I think there's an easier way to avoid it which is to grant the motion on the other grounds; but if you don't, then I think it is something we would have to deal with.  And I think the answer is, no, he's not a statutory seller.

THE COURT:  Why don't plaintiff's allegations that Mr. Grabowski funded road shows push, I think, the 20A claim into the realm of plausible?

MR. CELIO:  Well, again, plausibility isn't the standard here.

THE COURT:  Isn't sufficient?

MR. CELIO:  It isn't sufficient.  I mean, again, cogent and compelling is what we're talking about here, at least as to some of these claims.  Certainly, *Iqbal* and *Twombley* require a lot more than plausible.  I, too, went to law school at the time when the plausibility was the standard, but we're in this different world now.  But it's not enough.  I mean, he has to be a control person, you know, to sort of be involved in that.  There is no --

Let me state it this way:  Under the Supreme Court's case in *Central Bank*, there's no aiding and abetting liability under the private securities law.  The SEC can bring those claims but private plaintiffs like these cannot.  What that would be is, essentially, an aiding and abetting claim, right?  He has to be personally and primarily liable.  It would be very unusual, in my experience -- and I've been doing this -- I think my anniversary of being sworn in was yesterday, so it's 27 years now.  I've never seen a nonspeaking defendant like Mr. Grabowski in a case like this.  In fact, it's quite unusual to have people who really

*Deborah D. Parker, U.S. Court Reporter*

had almost nothing to do with these claims be brought in like this. So I just think that's secondary liability for someone like him. He's certainly not a control person under Section 15, the way we think of it, someone who's actually running the company. There's really no allegation of the complaint of that.

THE COURT: Okay. Thank you.

You probably have more you want to tell me, but let me turn to your colleagues on your side of the V.

MR. CELIO: I will gladly --

*(Overtalking: Unable to report.)*

THE COURT: Those were the questions that I had for defendants. Do any of you want to weigh in on any of those questions?

MR. YOUNGWOOD: Your Honor, I don't need to weigh in on any of those questions. We do have, as you know, separate briefing related to H&W --

THE COURT: Yes.

MR. YOUNGWOOD: H&W II and Snapdragon that I think are very well briefed. If you have questions, I'm happy to answer them, but those are the three defendants I represent.

Those three defendants have adopted the company and the other individuals' defendants on the primary nature, so if they're right, you don't need to worry about whether we're control people.

THE COURT:  Understood.

MR. YOUNGWOOD:  If they're not right, we should still be out of the case, because there's no allegations of control here with respect to the three entities, but I'm happy to address that later.

THE COURT:  Thank you.

Anybody else want to be heard on the questions that I asked Mr. Celio?

MR. HEIN:  No, Your Honor.

THE COURT:  And Mr. Zaccaro?

MR. ZACCARO:  Nothing to add, Your Honor.

THE COURT:  Let me turn to plaintiff's counsel.

Who's going to argue this piece?

MR. KO:  That would be me, sir.

THE COURT:  Mr. Ko?

MR. KO:  Yes, sir.

THE COURT:  All right.  We've got this issue of whether the Securities Act claims should be subject to Rule 9 pleading standards in the PSLRA.

Defendants say they should, because what we have here is the single course of alleged fraudulent conduct.  Do you contest either defendant's representations about the stated law on this point or your allegations?

Do you assert that there are different courses of conduct that apply to the securities claims such that only a

Rule 8 pleading standard would apply?

Do you understand my question?

MR. KO:  I do.

And we do believe that there are different pleading standards that apply.  We have disclaimed fraud, fraudulent intent for the Securities Act claims.  On that basis, we are alleging two separate conceptually different courses of conduct.  One involves intent to defraud.  One involves negligence or strict liability.

THE COURT:  But as I understand defendants' representations of the stated law, I should look at what the factual allegations are.  And it's the same factual allegations.  It's not like you're saying defendants did these bad things that result in 10b5-type liability.  Then they did these completely other bad things that result in securities act liability.  That's what I understand defendants to be saying the law is.

If you had done that, then it would be easy that Rule 8 pleading standards would apply to the securities act claims.  Are they wrong on the law, or --

Back to my same question.

MR. KO:  I think it's a correct statement of law; however, with a clarification.  What the Ninth Circuit said in *Cloudera* -- and *Cloudera* cites a case called -- I think it's *Rubke*, R-U-B-K-E.  I don't know if I'm saying that

right -- is it if it's the same exact conduct that you've alleged, then, yes, you're under a unified course of fraudulent conduct and that should be Rule 9 pleading standards.

We're not alleging the exact same conduct.  We took out a critical element between those two.  It's not exactly the same factual allegations.  There's no requirement for the Securities Act, as we've pled it, that we prove intent to deceive, intent to manipulate, which is a huge issue in these cases as everyone is aware.

THE COURT:  So is it your position that -- so for Claims 1 and 2, you're alleging -- I'm making this up -- four elements, including the fraudulent piece.

MR. KO:  Right.

THE COURT:  And for Claims 3, 4 and 5, you're alleging the first three elements and not the fraudulent piece and, therefore, it's a different course of conduct?

MR. KO:  Not just the elements, the facts supporting them as well.  So, obviously, to prove scienter for the Counts 1 and 2, the Exchange Act counts, we have to prove various facts that add up to scienter for these individual defendants.

We're not required to prove that as plead for Counts 3, 4 and 5 --

*(Court Reporter requests clarification for the*

*record.)*

MR. KO:  We're not required to plead or prove those facts establishing scienter for Counts 3, 4 and 5.  So it's not just the element, but it's also the facts supporting that element that would, we say, constitute a different course of conduct.  And I point the Court to -- there's a Third Circuit case.  It's cited in the briefs.  It's in one of our footnotes:  In *re Suprema*, or something like that, in which they -- they made exactly this recognition where they said, *Hey, you've specifically disclaimed intent to defraud scienter for those security acts claims, so we're treating those as conceptually different and those are subject to the lesser pleading standard.*

THE COURT:  I don't see *Suprema*.  Is this in your opposition?

MR. KO:  Yes, sir.  It's footnote --

*(Pause.)*

THE COURT:  You can tell me when you find it.

But, again, other than backing out those allegations that you say properly plead scienter, is there any -- are there any other differences between the courses of conduct for Counts 1 and 2 and 3, 4 and 5?

MR. KO:  No, I would say that's it.  And *Suprema* is cited in Footnote 5 on page 20 of our opposition.  The

cite is 438 F.3d 256, specifically, at page 273, and it's a Third Circuit case.

THE COURT:  Got it.  That's helpful.

*(Pause.)*

THE COURT:  Same question about -- on the issue of scienter if -- I can logically conclude that you adequately plead scienter with respect to some defendants but not others?

MR. KO:  Yes.

THE COURT:  And Mr. Geisler's receipt or alleged receipt of the memo or memos, what bearing does that have on the other defendants' scienter, if any?

MR. KO:  I don't think it really does bear on the other defendants.  I think it bears most specifically to Mr. Geisler.

I think there are other reasons that Mr. Meloun, for example, had -- we've pled intent to deceive. Mr. Meloun, for example, he is the CFO.  He's obviously aware of the financial condition of the company.  He's the CFO on the financial disclosure documents that they had to pause, because they were misleading or inaccurate.  He got those numbers from somewhere.  I'm not sure where he got them from, but either he made them up or he just stated incorrect ones.  So that is an inference there that -- there's some type of recklessness at the very least.

Probably, the two strongest factors for Mr. Meloun:  He is the CFO involved for the company at the time that they decided to restructure and the timing of this, the sequence of this is critical.  They start getting questions from the Capital Forum in November of 2022, I believe.  And very shortly after, without telling anybody, they restructured the company in a way that allows them to remove the brand-specific financial disclosure documents. So now they're just under one financial disclosure, basically, for the entire Xponential company.

THE COURT:  Tell me that again.  I'm not sure I'm following, please.

MR. KO:  So November 2022, Capital Forum starts sending questions to Xponential about some of the claims that they have made -- some of their practices.  Shortly after that, Xponential restructures the company.  And prior to that they had issued financial disclosure documents for each of the brands individually.  So Club Pilates would receive one.  YogaSix would receive one.  Right after they start getting those questions, they restructure the company, and they stop issuing financial disclosure documents specific to those brands.  Now it's instead one document, and it's for the entire company as Xponential.  And as we've pled in the complaint, nobody can understand why they did this, other than it's to obscure the individual brand

performance.

So I think there's a basis there to infer, *Look, we're trying to conceal things.* So that's another strong thing for Mr. Meloun. But perhaps the strongest one for Mr. Meloun, he is one of the individuals who made the claim about zero closed studios. He did it in January of 2023 and then in March of 2023. June 27, 2023, Fuzzy Panda comes out with their short seller report saying, *Not accurate. You've closed a number of studios.*

The very same day, he is in an investors' conference, Mr. Meloun, and he is asked about that. And his response is not, *No, that's incorrect.* It's not, *I need to look into that.* His response instead is, like, a hedge. *I'm not aware of any closed studios. We did have some, you know, re-franchise studios that weren't doing that great and we may be changing our strategy to close these studios in the future.* In other words, he knew the true state of what they were doing the entire time when he was making these statements back in January and March and saying, *We've had zero closed studios and that's the sign of the health of our franchise base.*

So I think, on that basis, you can infer the intent to deceive on Mr. Meloun's part.

THE COURT: Okay. On this issue of control, other than stock ownership, what allegations of control does the

amended complaint plead?  Can you point me to a specific paragraph or paragraphs?

MR. KO:  Sure.  So I would look, first, to paragraph 344.  And I think this is the clearest demonstration of Mr. Grabowski's control over Xponential.

THE COURT:  Hold on one second.  Let me get there.

*(Pause.)*

THE COURT:  344?

MR. KO:  Yes, sir.

THE COURT:  Okay.  I'm there.

MR. KO:  He had Xponential hold a secondary public offering for entirely his benefit.  Xponential got nothing.

THE COURT:  There's nothing wrong with that.

MR. KO:  No.  There's nothing wrong with it on its own, but it's a sign of his control over the company.  Xponential got nothing for this.  This was entirely for his benefit.  He collected all the proceeds.  And the fact that he collected all the proceeds is also in that paragraph 344.

THE COURT:  So I am to make an inference that, assuming the truth of what you've alleged here, that demonstrates control sufficient for -- I think we're talking about Count 2, right?

MR. KO:  Yes.

THE COURT:  Do you have case law to support that?

MR. KO:  The --I think -- I don't think we have

cases that are squarely on point.  I think there are a couple of District Court cases that are somewhat analogous, but I don't think they're great.  One is *Funko* out of this, F-U-N-K-O, and another one is *HyreCar*, H-Y-R-E-C-A-R, also out of this District.  And those aren't necessarily because of a sale, or because he had the company conduct a secondary public offering.  There's additional factors here.  I mean, he co-founded the company.  He was the chairman of the board throughout the class period.  He installed Mr. Geisler as the CEO in the company.  He was the largest shareholder in the company.  He was involved in ground level management of the company.  I mean, we've pled in the complaint that he was involved specifically in the disputes involving Anna Kaiser to the point he was editing her proposed foreclosure statement for her studio.

He defended Mr. Geisler in the Press Release immediately after Fuzzy Panda published their report.  He was who came out and said, *I have no questions about Mr. Geisler's professionalism.  He's been the ultimate professional ever since I've known him.*

He claimed to have witnessed Mr. Geisler on phone calls every week during the pandemic with the various franchisees.  He also made one of the misleading statements in that he made that statement in the press release, touting Mr. Geisler's professionalism.  And that is one of the

statements that we allege was misleading, because it did not disclose Mr. Geisler's history of fraud litigation. And he also signed a defective registration statement.

So the totality of that is what is we allege establishes control -- his ability to control Xponential. It's not merely any one thing. And I think the strongest thing is definitely the sign that he somehow managed to get the company to hold a public offering that benefited him and no one else.

THE COURT: Sort of on that point, defendants on Claim 2 include the HW entities and Snapdragon. Your theory seems to be that Mr. Grabowski exercised control over Xponential through those entities. If that's true, are the HW entities and Snapdragon, are they proper defendants or should it only be Mr. Grabowski?

I guess stated alternately, did the HW entities and Snapdragon allegedly exercise control sufficient to cause them to be liable under Count 2, assuming all the other -- you alleged adequately all the other elements?

Again, I think you understand my question. Shouldn't it be just Mr. Grabowski?

MR. KO: No, because I think those are entities that are, in the eyes of the law, individuals as well.

Now, our contention is, they're basically his alter ego. I mean, they are Grabowski.

THE COURT:  Do you allege that?  Do you allege that?  Do you allege the alter ego theory in your complaint?  Do you need to?

MR. KO:  I'm not -- I would have to check if we said the words "alter ego."  I believe -- in the description of the parties towards the beginning of the complaint, I believe we outlined very clearly that he is the, you know, controlling person for those.  He has the sole -- I forget what exactly the phrase was that they used, but the sole, you know, dispositive power, or something along those lines.  And I can find that.

THE COURT:  I remember seeing that.  I can't lay my hands on it this instant.  We can come back to that.

Before I forget, do we have an answer on that previous question?

We got it.

MR. KO:  *Suprema*.

THE COURT:  Yes.

If I do conclude that Rule 9(b) -- the Rule 9 pleading standards apply to the Securities Act claims, Counts 3, 4 and 5, what impact does that have on these motions?  I guess, the first -- Xponential's motion?

I mean, do you necessarily lose?

MR. KO:  No, I don't think we necessarily lose because that would wipe out all defendants.  I think there

are certain defendants who are also pled in the Exchange Act Count 1 and 2, even if I think you apply the Rule 9(b) standard to the Securities Act counts, I think they would still be covered by that.

THE COURT:  I guess it's the other way around.  If I don't conclude that Rule 9 applies to the whole -- to all five claims, then it's possible you could lose on Claims 1 and 2 because of the heightened pleading standard, but Claims 3, 4 and 5 would survive.

MR. KO:  Yes.

THE COURT:  Is that your position?

MR. KO:  Yes.

THE COURT:  Okay.  Okay.  Those were my questions. I'm sure you have more to say, but let me turn back to defendants for just a general argument.

And then, of course, I'll hear from you, too, Mr. Ko.

MR. CELIO:  Thank you, Your Honor.

Michael Celio, again, for the defendants. Fortunately, your questions drew out an awful lot of what I was going to say, so I can cut it pretty far down.  So I'm going to try to keep this short.

THE COURT:  I was hoping that it would.

MR. CELIO:  Yeah.  Where you started is exactly where I would have started which is:  You know, this just

isn't a securities fraud case at all and it's surprising that we're still there four complaints in that flows through every element of this case and every claim.  Because there's simply nothing pleaded showing a scheme to defraud investors.  There aren't misstatements at all.

And let me take on this, because you were talking to Mr. Ko about it.  Let me take me on this idea of the studio closure allegations.  Because one thing a plaintiff may not do, even under this pleading standard, is change what was said.  It was never Xponential's statement.  That's simply not the case that Xponential said, *Nobody ever closed a studio, period.*  That wasn't the point they were making. That would frankly be a silly thing to say, because you can drive down the street and see it.  The SEC sure as heck would have done something if that's what we were saying. The point is different.

The point is a belief in the system that Xponential was putting out there.  And while an individual franchisee may fail because they didn't have the capital, because they didn't have the business sense, that we believed in our system such that we would buy the franchise back and either run it ourselves for a while or sell it to someone who could succeed.

And they go out of their way -- my clients go out of their way -- every time that comes up to make that clear.

There's all this disclosure about company-owned studios.  So this idea that someone was out there saying *we never closed anything,* that's a statement that no one could make -- that no one ever would make.  And, frankly, that's not really where the corrective disclosures, you know, focused their fire.  I mean, they try to, right?  I mean, Fuzzy Panda sort of says, *Oh, look.  You can go on Yelp and see that this is closed.*  Right.  Yelp is a very public website.  So we never said that.

And we're responsible for what we said.  We have to stand behind that.  That's how the securities markets work, but they don't get to sue us for things we didn't say.  They don't get to say, *We misunderstood this,* or someone could have misunderstood this and, therefore, you're liable for it.

The company went out of its way to talk about its company-owned studios and it was making just an entirely different point.  I honestly believe -- sorry.

I honestly believe this is a bit of a red herring, because it's just not what was said.  And I think that it is only fair to take all of the statements in total.  I want to give the Court sort of some specific citations, including some of the times that Mr. Ko was talking about Mr. Meloun.  If you look at our Exhibit 1, which is the July 22nd, 2021 Form S1 --

44

THE COURT:  Hold on one second.  Let me get there.
Okay.

MR. CELIO:  This is ECF 112-2.  And I think 58 is
the internal pagination, but the quote is:

"From time to time, we take ownership of
underperforming studios with a view to
improving the operating results of the
studio and ultimately re-licensing it to
a different franchisee.  There is no
guarantee we will be successful in
improving the operating results of such
a studio or refranchising it."

So that's one place we said it.  Another place we
said it in Exhibit 3, so this is our Form 10-K for fiscal
year 2022, at page 252.

"As of December 31, 2022, 2021 and 2020
we had 55, 25 and 40 company-owned
transition studios, representing 2.1,
1.2 and 2.2 percent of the global studio
base."

THE COURT:  Where are you on that -- where are you
on the highlighted portion of that page?

MR. CELIO:  Yes.  It's 112-4 at 252.

THE COURT:  I have it.

MR. CELIO:  You have it.  Okay.

*Deborah D. Parker, U.S. Court Reporter*

45

The third one -- there are many.  I'll just -- the last one is in this same Form 10-K on page 309.  Our increase in expenses was, quoting, primarily "attributable to" -- ellipsis -- "increase in salaries and wages... attributable to payroll tax expense in connection with restricted stock units, increase in company-owned studios and the acquisition of BFT in October 2021."

My point is, again and again and again, the company is making clear that it is buying the studios back. It's not this red herring idea that no studio has ever closed.  And I think the law requires the Court to take our statements as a whole and not to pull things out of context. They really went out of their way to try very hard to insert this language and make this clear.  And they did it again and again and again.

You know, I think we talked about the scheme claims.  You know, again, the *ZoomInfo* case says that there must be deceptive conduct which can include statements but must include additional conduct.  And the argument here for the scheme is a little bit circular.  You know, it's that your misstatement was that you didn't disclose that you had a scheme, right?  It's a little bit of a hamster wheel.  Of course, we didn't disclose that.  We're not required under the *Facebook* case to disclose unadjudicated wrongdoing, because we didn't believe it was true.  So we're not

required -- I kind of hate this word, but they call it "self-flagellation."  Some kind of medieval monk, I guess. You know, we're not supposed to do that.  We're not required to do that.  You're not required to say everything that someone says that's bad about you.

I think overall what I would say is that this complaint is kind of the equivalent of a trick shot.  You know, you take a little bit from some franchisee disclosure litigation and then take, you know, the California regulator and you take a short seller report and you kind of combine those two and maybe those things are somehow a little bit inconsistent with what we said to the market.  I think that's the allegation.  And I don't think I'm being unfair when I say, in the cases that have merit that I've litigated, you can usually explain the false statements on one side of one sheet of paper.  You know, sort of, in the criminal fraud context -- which obviously this is not -- the U.S. Attorney usually puts up as his or her first side, right, *Here's what you said and here's what the truth was.*

Frankly, I think the fact that it takes 300 pages to do this is a good indication that they're really reaching.  There's really not anything here that we said that was just untrue.  I think that they're taking some bumpiness with our franchisees, again, a small number.  If you count the number of people who are complaining, it's

one percent.  You know, something like this.

THE COURT:  Backing up a second --

MR. CELIO:  Yes.

THE COURT:  -- so "where there's smoke, there's fire" is not an apt metaphor adage saying for how to analyze a securities-type case like this one?  Is that your point in part?

MR. CELIO:  In part, yes.  Because in 1994, it might have been.  But after the passage of the Private Securities Litigation Reform Act, in 1995, over President Clinton's veto, the standards are made so high that -- that, no, you can't -- smoke isn't enough.  You've got to show the fire -- you got to show who started the fire, you know, who put logs on it.  I mean, you have to go pretty far here.  It's unusual.  You know, it's not what we think of in a 12(b)(6) motion normally.  We're in an unusual area of the law.

We talked about puzzle pleading, so I'll pass over that.  I guess I would just, sort of, on a broad level about the reliability point that we talked about a little bit, the law on anonymous sources is actually pretty well set in the Ninth Circuit and normally we talk about it when there are confidential witnesses per se, but I actually think it applies here, too, to newspaper articles and that sort of thing, short seller reports.  And I guess --

THE COURT:  Short seller reports.

MR. CELIO:  Short seller reports.  Yeah, I muffed that.

None of these people meet the standards that the Ninth Circuit sets out.  Because the Ninth Circuit test -- Judge McKeown writes about this in a bunch of her different cases, *Intuitive Surgical*, sort of my favorite.  They have to be in a position to know.  And I think when you're talking about a franchisee, that franchisee doesn't know what's going on inside Xponential.  It's not an inside source.  They know some things.  They know their experience, but they know their one slice, right?  Just like one associate at my law firm might have an opinion of my leadership; hopefully, positive; maybe not.  But they don't know everything, right?  And I think that's sort of similar here, is that the Ninth Circuit standard for what any witness must have to be reliable, I think, isn't met here.  And it's exacerbated here by the fact that -- and I don't -- let's be clear.  I'm not faulting counsel opposite [sic] for this, but they didn't speak to any of these people, so they really don't -- they can't add anything.  I'm not saying that that's always required.

But the point is that we don't know anything about these people.  We don't know who they talked to.  So the allegations are very imprecise, right?  You don't get in the

complaint the name of the person that they spoke to.  You don't get in the complaint the date that they spoke to them, or specifically what they said.  And I bring this up, because if you look at the case law, there are plenty of times when you do have that, you know, where you know -- you have a witness who says, *I worked for this CEO. I was the chief of staff,* for example.  *I heard him say X, Y Z.*  We have nothing like that.  We have people outside the company, exclusively.  I think that's a big problem for this complaint.

Okay.  We spoke about that.

The last thing I'll talk about is some of the control questions.  Well, first of all, on the memos that Mr. Geisler supposedly got.  One thing that we mentioned in our briefing and I just really wanted to highlight is that nothing in the memos contradicts anything Mr. Geisler said publicly.  I mean, again, we really are talking about apples and oranges or, actually, maybe apples and door knobs when we're talking about the SEC filings and the franchisee filings, because the Xponential SEC filings are company-wide, right?  They're consolidated.  And so you're talking about 10 different brands.

And so, you know, for example, there's some talk in the complaint about Average Unit Volume:  AUV.  That comes up a bunch.  Well, that's an average, by definition,

of all of the franchisees over all of the brands, right? Some are going to be above; some are going to be below. That's just what an average is. And so the fact that one or two or, in this case, four or five franchisees aren't meeting the average is a mathematical necessity. It's not even a surprise. I mean, that's what an average is. Someone is going to be lower. So I just don't think that there's anything in that memo that contradicts anything that Mr. Geisler said, so it really can't give rise to scienter.

That last thing I'll say -- and then I'll sit down -- is on the control points. First of all, the idea that one transaction that holding a secondary offering for the benefit of that, that would be a revolution in the law if that were enough by itself to establish control. There is no case so holding. In fact, to the contrary, the *Howard versus Everex* case, from the Ninth Circuit and I think it's *Welgus* in the Northern District of California -- these are cited on page 19 of our reply -- the standard for those types of allegations, these day-to-day involvement in the company, right? So "day to day" meaning payroll; meaning, contracts; meaning, research and development. There's nothing alleged like that in the complaint.

I think it was paragraphs 34 through 39 that talk about the entities through which they are controlled. I don't see anything about alter ego there. I think that's

important.  But I think that there's a little bit of legal confusion on the other side about this, because -- I mean, I think the entities clearly have to be out, because the idea that sort --

For their theory to work, the entities would have had to control Mr. Grabowski who would have had to control the company, right?  And that doesn't -- that's not pleaded.  That's not there, right?

And, frankly, anybody who knows anything about PE -- private equity -- that's really not -- that's not a very sensible allegation.  So to plead that you would have to have some facts to say that the entity controlled the person, because frequently these powerful individuals -- that's just commonsense.  Frequently, the powerful individuals control the entities.  So at a minimum, you know, the entities have to be out of this case.  There's only, I think, four or five paragraphs pleaded about them total.

I thank you for having us in, Your Honor.  I'm happy to answer any questions.

I yield the podium to anyone else who wants to speak.

THE COURT:  Anybody on the defendants' side wish to be heard?

MR. YOUNGWOOD:  I would, Your Honor.  I'm happy to

take my turn.

THE COURT:  Counsel, you're Mr. Youngwood?

MR. YOUNGWOOD:  I'm Youngwood, yes.  I'm Youngwood, and I represent H&W, H&W II and Snapdragon, the three entities that counsel just referred to.  And that's where I'm going to pick up, because I have a --

THE COURT:  Hold on.  One thing --

You filed a notice of supplemental authority yesterday?

MR. YOUNGWOOD:  We did, Your Honor.

THE COURT:  So I'll tell you that I'm obviously aware of that, but I haven't studied it.  So if you want to tell me more --

(Overtalking:  Unable to report.)

MR. YOUNGWOOD:  I will cover it.  I have it. They, too, may not have studied it.  If anyone has more to say on it, I recognize we only filed it yesterday afternoon. It's an October 28th, 2025 decision in the Western District of Washington, and I will get to that momentarily.  In some ways, Your Honor, it makes my points better than I can make them, because I think it's almost completely on point here. In fact, the facts alleged there are probably more sympathic for a plaintiff position than the ones here.

Your Honor, I want to start where counsel left off, which is the standard for 20A control person.  I think

that's quite clear in the Ninth Circuit and, frankly, perhaps in all circumstances. But in the Ninth Circuit there are a number of authorities one can look to. You can look to the 2014 *Nvidia* case which makes it clear you first have to have a primary violation. I won't repeat the primary violation arguments. We've incorporated them. But then you have to show the defendant exercised actual power over the primary violater. And in the *Howard* case, which was also just cited, it makes it very clear that the defendant's participation -- so what type of participation do you need? It needs to be in the day-to-day affairs of the corporation and that the defendant's power [sic] to control corporate actions.

There is also the -- just to keep on Ninth Circuit cases -- *the Paracor* case that talks about control over the management and policies of the corporation. There is the *Yanek* case that adds to its significant degree of control which there's a back and forth in the briefs and the footnotes as to whether *Yanek*, itself, had the right cite to get to significant degree. But whether it had the right cite or not, *Yanek*, itself, held that as have many District Courts in this circuit. Since then, I don't need the word "significant" to prevail here, but I do point out that there's a long line of cases here that use the word "significant" to layer on top.

*Deborah D. Parker, U.S. Court Reporter*

The reason I don't need the word "significant" is the focus on the day-to-day affairs. The day-to-day affairs. Not -- and I'm not here to stand up for Mr. Grabowski, but I don't think Mr. Grabowski is a control person for all the reasons that are in the company -- the joint brief. Yes, on the board. Yes, he had -- he was involved in entities that had investments. But you stumble, you stumble completely over day-to-day affairs for him.

When you get to the three entities -- H&W and H&W II and Snapdragon -- there's really -- and I'm not exaggerating. There's nothing in the complaint. You heard counsel mention "alter ego." Those words are not in the complaint. They're raised for the first time in the opposition brief and even there, because I don't -- just because they're on [sic] the complaint, they're not part of this. But even if they were -- because, Your Honor, I think this should be dismissed with prejudice -- it wouldn't make a difference, because they haven't pled the elements of alter ego. And, in fact, as counsel pointed out, they have sort of pled the opposite. Alter ego, piercing the corporate veil?

These are very detailed allegations. Lack of corporate formalities. Often cases of fraud. There's nothing approaching that with respect to these entities. And, Your Honor, what I found interesting is when you asked

for a paragraph that talked about this, I believe you were pointed to paragraph 344 of the complaint. The irony, Your Honor, is 344 appears on page 153 of the complaint, under Count 4 which of course is after Count 2. And Count 2 is the control person, which as all complaints repeats and re-alleges every allegation above, as if set forth fully herein, not below. And so the paragraph that you were just read is not even in a portion of the complaint that could logically support control person. But even if it was, Your Honor, I'll call that a technicality. I think it's a dispositive one. But a technicality, it shows that that wasn't what they had in mind when they pled these things in 344. But even if they did, there's really nothing said there. And so -- this is in our briefs, Your Honor, so I'll try to do it quick. There are only generously, generously six paragraphs in this entire 160-page complaint. Six paragraphs -- out of 356 paragraphs that even touch on my three clients. They are 34, 35, 36, 299, 344 and 345, both of the last two that I read, appearing after the control person allegation. What do they generously plead? And I say "generously" but completely conclusory. And even under *Iqbal* and even under *Twombley*, "conclusory" doesn't do it, certainly not with the requirement is to show day-to-day management.

So in paragraph 34, they identify H&W Investco as

a defendant and they say the shares that it held.

In Paragraph 35, they do the same for Investco II.

In Paragraph 36, they make the allegation without support, but they make the allegation that H&W Investco, H&W Investco II and Mr. Grabowski -- so they loop them together without separating -- held between 21 and 30 percent -- sorry, 21 and 31 percent of the class A stock. They say nothing about the class B.

In 36, they also point out that Snapdragon, which they don't allege currently has any shares in the stock, was an investment advisor. And they point out in both 35 and 36 that Snapdragon was an early owner in Xponential.

I've only a few more paragraphs, Your Honor.

In 299, they say collectively these three entities were the largest holders of the class A. Again, say nothing about the class B.

And in 34 through 36 and in 344, they say Mr. Grabowski is the managing partner of the H&W II entities, and they talk about the powers that he has over them, again, to the point that was just being made as to which way would the arrow flow about control.

And then they say in 345 that H&W entity signed the underwriting agreement for the April 2022 SPO.

That is an exhaustive description of what is said about these three entities and the things they did with

respect to this company at any time in the class period. And, again, Your Honor, given that they took 158 pages to plead, I don't think they were constrained in what they thought they could give in terms of space to things.

As counsel said, Your Honor, to accept their theory -- let me say it differently.  Your Honor, I think they've actually pled themself, even ignoring the conclusory nature, out of their theory.  Because to be successful, if you accept that Mr. Grabowski is control person -- which I urge you not to -- you then would have to have that these entities controlled Mr. Grabowski.  Their pleadings and their reply -- their opposition brief state the exact opposite.  They say that Mr. Grabowski controlled the entities.  Well, we have Mr. Grabowski accepting conclusory allegations at best controlling in two directions, not one thing controlling the other.  And so I don't think they can plead themselves out of that with an amendment, unless they say *We were wrong the first time.*

But putting all that aside, Your Honor, there is just no, no allegation on the day-to-day management. Whether it's the *Yanek*, significant or not, there is no allegation of day to day.

Your Honor, getting to the case we submitted yesterday and you asked earlier counsel what his best cases were, I think he was quite forthright that he doesn't even

have best cases for this, because I'm not aware of any case in this District, in this Circuit -- and I want to say "everywhere," but I can't tell you that I've looked everywhere -- that would hold that somebody who sits on a board and is affiliated with entities that have a clear minority stake that for those entities -- again, in Mr. Grabowski should be out -- but for those entities, that that's all you got, that that could be control person.

And, Your Honor, that's exactly what Judge~Cartwright found, in October, in this *ZoomInfo* case. And I won't go to it -- in too much detail. It's on page 26, is this discussion. And it was a very careful analysis, because some defendants were kept in on control and some weren't. But the closest equivalent -- he calls them the sponsor defendants in this case. They were taken out --

THE COURT: He?

MR. YOUNGWOOD: Sorry?

THE COURT: Who's the "he" that calls them?

MR. YOUNGWOOD: The judge, Judge Cartwright. The judge who authored the decision.

THE COURT: Judge Tiffany Cartwright?

MR. YOUNGWOOD: Yes. I'm sorry. Thank you, Your Honor. My mistake. She. Thank you.

Your Honor, she identifies them as the sponsor

defendants.  And she actually lists significant additional facts that, as I said, I think would have brought that case -- made it a case of plaintiff, in my view, should lose, but an easier case than this one.  And those facts included that the sponsor defendants actually had the right to put people on the board.  Mr. Grabowski is on the board. There is no allegation here that there is any contractual or other agreement that gave him the right to be on the board for the years that's he been on it.

And, in fact, in that -- the 10-K associated with that case -- *ZoomInfo* case -- their positions on the board would survive, as long as one of the appropriate sponsors associated with the board position kept five percent of the voting power.  So it was a tale that extended position well past anything like the percentage that's alleged here.  So even if you become not just a minority but a super-minority holder, your board position would retain.

And in the 10-K associated with that, it talks about the ability of the board of directors to significantly influence our management business plans and policies and it goes on to list things that are, again, nowhere alleged here and simply not true here.

So, Your Honor, that is a case that I think makes the points, as I said, better than I think I can, and we have in our briefs.  There are other cases equally

compelling that are in our briefs, the *American Apparel* case and the *Bao* case, just to give two examples.  There are many others listed.

I think Counsel didn't list this -- well, he did list, I believe, the *Funko* case, which I took another look at.  *Funko* is a case where -- effective majority control and that they had 46 percent of the company stocks and they had the right to put at least three and it looks like they put four directors on the board.  So a very different type of situation, similar to the *Baker SeaWorld* case from the Southern District of California where you had three board positions, you know, again, hardwired in, as opposed to what's here.  And you also had additional differences that I think we cover in our brief.

Your Honor, the final point I just want to touch on, because I don't think it gets fully articulated and it is alleged in one of those paragraphs that comes after the -- it comes after the section of the brief that talks about control person, and it's paragraph 345.  And this is the citations to the underwriting agreement, and there's talk about the road show.  The fact that these entities had to sign an underwriting agreement if they were going to sell shares through underwriters is completely unremarkable.  As Mr. Celio says, to hold that participating in a SPO, a secondary offering, means you control the whole company

would truly -- I don't think it's an understatement to be --

THE COURT:  Slow down just a bit, please.

MR. YOUNGWOOD:  Of course.

-- a revolution in the understanding of control person and clearly contrary to the day-to-day aspect of the standard.

But, Your Honor, I do want to -- if it is of use to you and your clerk, they only -- in the middle of paragraph 345, there is a quote from that underwriting agreement which counsel does attach, so you have the whole thing.  I believe, if I'm not mistaken, it's on page 15; is that right?

Ms. Strauss will correct me, if I got the page number.

THE COURT:  Page 15 of your brief?

MR. YOUNGWOOD:  No, no.  The attachment to Counsel's opposition to our motion to dismiss the three entities.

Your Honor, the paragraph -- the quote in the paragraph of 345 talks about the H&W entities, giving -- and now I'm quoting from the middle of 345 of the complaint: "Information relating to such selling stockholder furnished in writing" -- and it goes on, ending a few lines down with respect to "any other issuer on free writing prospectus or any amendment or supplement thereto."

What's not included in the quote -- in the complaint but is included -- do I have the right --

Page 15 of the exhibit attached to plaintiff's opposition to our motion is the words that come immediately before it and which come immediately after it. And the words before it make it very clear that this only relates to information provided by the selling stockholder. But the words after are even more important. And so after the word "thereto" that's in paragraph 345, what that actually says --

THE COURT: Hold on one second. I want to make sure that I'm in the right exhibit to plaintiff's opposition to your --

MR. YOUNGWOOD: Let me find it for you, Your Honor.

So it would be --

THE COURT: ECF 124-1.

And when you say page 15, are you referring to the page at the bottom, or --

MR. YOUNGWOOD: I'm referring, Your Honor -- let me get it right. Okay. Fair point, Your Honor. There are two pages at the bottom. It says 15 of 45. It also says Exhibit 1, page 18.

THE COURT: I'm with you now.

MR. YOUNGWOOD: Okay. And so if -- Your Honor,

for me the size of the print is hard, but if you blow it up on a screen, under "Accurate Disclosure," the very end of that paragraph makes clear that the only information the selling stockholders are providing, and now I quote:

"...which consists solely of the name and number of shares of such Selling Stockholder contained in the Selling Stockholders table," which cannot possibly be day-to-day control of Xponential.

THE COURT:  I understand your argument.

MR. YOUNGWOOD:  Sorry?

THE COURT:  I understand your argument. Thank you.

MR. YOUNGWOOD:  Thank you, Your Honor.

THE COURT:  Thank you.

Madam Court Reporter, do you need a break?

THE COURT REPORTER:  I would like one.

THE COURT:  I want to hear from Mr. Hein --Mr. Zaccaro.

Mr. Hein, are you also going to have an argument?

MR. HEIN:  No, Your Honor.

THE COURT:  And I want to give plaintiff full opportunity to respond.

Are we going to end up not having enough time by

noon?

MR. CELIO:  I can be quick.

THE COURT:  Okay.  Let's do this:  Let's take a break.  We can resume in the afternoon.  Literally, afternoon.  I have a hard stop at noon.

Let's take a 10-minute break, right now.  You confer.  And then when we come back, you can tell me how much time collectively you will need.  Then we'll talk about when we will do that.

Let's take a break.

THE CLERK:  All rise.  This court is in recess.

*(Recess taken from 11:37 a.m. to 11:46 a.m.)*

THE COURT:  All right.  Good morning, again.

Let's see.  Mr. Zaccaro, you had -- well, first, let me pick up where I left off.  How long collectively is this -- do you wish to argue?

MR. ZACCARO:  I think I'll be about five minutes.

MR. CELIO:  Same.

THE COURT:  Okay.  And Mr. Hein, you didn't have anything additional?

MR. HEIN:  Nothing in addition, Your Honor.

Just as Your Honor noted that we joined in the arguments presented by the Xponential defendants.

THE COURT:  Understood.  Thank you.

MR. HEIN:  Thank you, Your Honor.

THE COURT:  Okay.  Mr. Zaccaro, go ahead, please.

MR. ZACCARO:  Your Honor, we also join in Xponential's arguments and join in Mr. Celio's excellent presentation this morning.

I just wanted to make a few points unique to Mr. Geisler --

*(Court Reporter requests clarification for the record.)*

THE COURT:  -- on the scienter issue.

Please, go ahead.

MR. ZACCARO:  So, Your Honor, asked about the consent decree or the DFPI.  I wanted to point out, Mr. Geisler is not a party to that consent decree.  He's named only once in the entire consent decree and that's to indicate that the company failed to disclose that he was a member of management selling franchises.

There's nothing in that consent degree that goes to Mr. Geisler's state of mind in making any of the statements -- regarding any of the statements alleged in the complaint.  In fact, we don't know if the DFPI applied any state of mind standard but certainly didn't apply the scienter standard in the PSLRA.

My second point is -- goes to stock sales.  Mr. Geisler did sell a large quantity of stock, but he is the founder of the company.  And he sold only a fraction,

about 25 percent of his total holdings.  He also -- and just to correct one thing Mr. Celio said, he did have several purchases during the class period.

I have cites, but Your Honor is nodding your head, saying you're probably aware of that already.

THE COURT:  Yes.

MR. ZACCARO:  One of which was before the Fuzzy Panda report which tell the plaintiffs tried to disregard these sales -- these purchases.  These facts cut against any motion that Mr. Geisler knew that there was a fraud at Xponential or that the stock was inflated due to any fraudulent statements.

Next with respect to the memos Your Honor referred to where you're talking about two memos written by a handful of disgruntled franchisees in two of the companies' lesser brands more than a year before the class period, and they say nothing at all about Mr. Geisler's state of mind during the class period and aren't connected specifically to any particular statements that are attributed to Mr. Geisler.

And then, finally, with the other scienter allegations like corporations, the fact that Mr. Geisler was a CEO, these are in every single class action and standing alone they're not sufficient to show the compelling requirement for scienter under the PSLRA.

So that's all I have.

THE COURT:  Okay.  Thank you.

MR. ZACCARO:  Thank you, Your Honor.

THE COURT:  I appreciate it.

Yes, Mr. Ko.  Let me ask one quick question -- and don't read anything into this, because I haven't made any decision -- I haven't made up my mind on any aspect of these motions, yet.

But if I do grant the motions, if I do conclude that your pleading is somehow insufficient, should I grant leave to amend?

MR. KO:  It's hard for me to answer that without knowing the basis on which you would grant the motions, because I wouldn't know what you found deficient.

THE COURT:  Fair enough.

Let me set it up this way:  So ordinarily, my practice on a 12(b)(6) motion first time around is, even if I grant the defendant's motion to dismiss, I'll grant leave to amend unless plaintiff tells me, *I really can't do any better*, or unless it's a clear, perhaps, a statute of limitations problem where there's no way the pleading can be improved to correct it.

So the first time around, I always grant leave to amend.  Almost always.  Sometimes I'll get a 12(b)(6) motion and I'll get the opposition and plaintiff will say, *Deny the motion for all these reasons; but even if you don't deny, I*

*can do so much better.  Give me leave to amend.*

When I see that, I don't even adjudicate the motion.  I deny it without prejudice and I tell plaintiff, *Do better.  Do better.  Don't waste my time.  Give me your best pleading.*

Here defendant has -- defendants have made the argument, *Well, gee, we're on pleading No. 4.  We've been through that process.*  And to the parties' credit, you have done that without me intervening.  And I appreciate that.  So the context of my question is:  Defendant says, *This is got to be the highest and best that plaintiff can do.*  Is that the case?  Or if I conclude that -- I'm making this up -- scienter is not adequately pleaded and I grant the motion on that -- at least a piece of the motion -- I have to think about how that flows through.  But if I grant the motion on that point -- and I'm not saying that I've made that decision by any means, just as an example -- should I get leave to amend?  Or is this kind of the highest and best you can do?

MR. KO:  I'm going to hedge which I never like to do when I'm answering a judge's question.

I think it's the best that we can do, but I would like to see the order to know where the Court thought it was deficient or to have some indication where the Court thought it was deficient so I can answer that more specifically.

THE COURT:  And I'm nothing saying I'm there by any means.

MR. KO:  Understood.

THE COURT:  Sorry to take up time with that, but I'm eager to hear what you have to say.  And I'm not trying to crunch you.  If you need more time, we'll come back.

MR. KO:  I'm happy to answer any questions.  I just want to make a few quick points.

The through line, the major through line of Mr. Celio's argument is that these are misstatements to franchisees.  That is not this case.  It's paragraphs 169 through 248, excluding a few within there.  Those are the statements to the public that the defendants made touting their company and offering statistics about how their company was performing.  Those are the misstatements to the investors.  That is why this case is a securities fraud case.  The underlying evidence -- and those are pled very specifically.  It says on what date it happened.  It says who said it.  It says the context in which they said it.  It offers the entire context of the statement.

The evidence that the statements were misleading are the statements to the franchisees.  The evidence of the scheme -- the underlying scheme which is pled in paragraphs -- I believe it's -- 57 to 140, that's the scheme.  But the underlying evidence, those are the

statements to the franchisees and all the other evidence that we've provided in the complaint.

I agree 100 percent they're not required self-flagellate.  They don't have to disclose every crackpot allegation that comes down the road.  They do have an obligation at all times when they speak about something to provide information so that if it's a fact and the statement is material -- or the fact is material, what they disclose is not misleading.  And that is what we contend that they did.  They did not disclose how they got those numbers. They didn't tell the investing public that we mislead all these franchisees.  And at this point, we believe those facts were established.  It's on the basis of their reaction after the consent order.  It's on the basis of the consent order.  It's on the basis of all those media reports, you know, Bank of America's securities report, the short seller report, all the anecdotal stuff, the collective total.  And that is what the Court needs to look at.

One minor point.  I don't think it makes a difference in this case, but they say that the scheme must allege conduct apart from the misstatements and omissions. For a long time that was law in the Ninth Circuit.  The Ninth Circuit recognized in re Alphabet, at 1 F.4th, the pincite is at 709, Footnote 10.  That is no longer the law, after the Supreme Court's decision in *Lorenzo*, dissemination

of the misstatements and omissions by itself is enough to constitute a scheme.

You asked --

THE COURT:  That's 10b-5 (a) and (c)?

MR. KO:  The scheme charge, yes.

THE COURT:  Okay.

MR. KO:  You asked earlier about their proposed competing inference about the -- how to interpret the sequence of the events.  And in the midst of the pandemic, some of these franchisees had to close shop, essentially. The problem with that inference is that the allegations predated the pandemic and they postdated the pandemic.  They were getting these complaints before the pandemic ever happened.  So to blame it on the pandemic doesn't fit the evidence.

You also ask about the legal standard.  This is from *Telex*, the Supreme Court case.  The evidence -- the inference need not be irrefutable.  The inference of scienter need not be irrefutable, i.e., of the smoking gun genre or even the most plausible of competing inferences. Scienter is pled when the inference is, quote, "cogent and at least as compelling as any opposing inference one could draw."

In other words, tie favors us.  If it's just as compelling -- but I don't think it is just as compelling for

the reason I just explained.  Their inference doesn't fit the evidence.  They also --

You also had a question about loss causation and the Fuzzy Panda report.  One, the Fuzzy Panda report has nonpublic information in it.  If you read what we pled in paragraphs 143 -- somewhere in the area of 141 to 145, Fuzzy Panda indicates that they conduct their own interviews.  They also indicate that they actually went undercover to an Xponential franchisee's sales pitch and attended it and heard things themselves.  So they do state in their disclaimer, it's all based on public information.  And I don't know what they consider public information.  But they did their own investigation.  So in terms of the market knowing exactly what Fuzzy Panda knew, that's not accurate.  But even if that was the case, *Genius Brands*, which is a Ninth Circuit case that came out in 2024 involving a short seller report, made clear that even if all the information was public, if it's not readily available to the public, easily digestible to a layperson and the short seller comes in and, basically, synthesizes that down and says *This is what it means*, that can still be considered a corrective disclosure.

And in that case, what the short seller looked at was, apparently, 25 pages printed out from a website, consisting of 337 or so show listings that they then

analyzed.  And they said, *That's enough.  You know, the public wouldn't be able to readily synthesize that.*

We have financial disclosures documents exceeding 16,000 pages that Fuzzy Panda said they went through.  That's way beyond what the short seller in *Genius Brands* did.  So I think that's very clearly -- can be a corrective disclosure.

And the final thing I'll say is that the argument about, you know, they never meant the zero closures to mean that no closures by franchisees, I'd simply direct the Court to Mr. Meloun's statement, in paragraph 223, where he makes it very clear.  This is all about the franchisees never closing studios.

Happy to address any other questions; otherwise, I'll submit.

THE COURT:  On this public disclosure point, so I'm pretty familiar with the patent world and prior art.  I don't know if you've done any work there.

MR. KO:  None.

THE COURT:  You're familiar with the concept of prior art?

MR. KO:  A little bit.  I'm going back 20 years but okay.

THE COURT:  So in a patent case, the law presumes -- well, you got this concept of prior art.  Prior

art is articles, patents, anything in a printed publication that existed before a particular date, typically, referred to as a critical date. So when you're applying for a patent, your proposed invention, your alleged invention has to be novel and nonobvious. It has got to be new, or it can't be an obvious extension of what's already out there. And what's already out there is prior art. Where I'm going with this is prior art is defined as everything that's in a printed publication. If it's indexed anywhere, if it's potentially findable anywhere. And I'm aware of a case -- I can't remember if this was a case, CaliCAD, or if this was in a published opinion. But there was a piece of alleged prior art that was indexed in a library deep in Russia and somehow somebody found it.

Now, the patentee knew nothing about it. Didn't have actual knowledge, but the patentee is presumed to have constructive knowledge of all prior art. So the issue is, is this thing that was indexed in a library deep in Russia that was extraordinarily difficult to find but met the technical definition of prior art, was it prior art? And the answer was yes and the patentee is presumed to know about it, as a constructive knowledge thing.

What I'm hearing you say is everything that's public doesn't mean that it's really public for the purposes of this case and what one is presumed to know, what the

market is presumed to know.

Am I understanding your argument correctly?

MR. KO:  I think yes.  Essentially, that --

THE COURT:  What did you say the standard is?

MR. KO:  For -- my argument is that even if information is all public, I think *Genius Brands* makes clear that if it's not readily available to the public, easily digestible, understood by a layperson, it can still be -- synthesizing that information, summarizing it and saying *Here it is* can still be a corrective disclosure.

THE COURT:  Okay.  *Genius Brands* is your critical case for that point?

MR. KO:  Yes, sir.  It's a 2024 Ninth Circuit case, and it's cited in our pleadings.

THE COURT:  Got it.

MR. KO:  Thank you.

THE COURT:  Thank you.

Anything more on the motions.

MR. CELIO:  No, Your Honor.  Submitted.

Thank you.

MR. YOUNGWOOD:  No thank you, Your Honor.

THE COURT:  All right.  Counsel, thank you very much.  I appreciate the quality of the argument all round.  It was excellent.  Thank you for your briefing.

I really don't have -- I got to go back and think

*Deborah D. Parker, U.S. Court Reporter*

about all that you've told me and reread some things and look at a few cases.

So I will take the motion under submission. But, again, I deeply appreciate the hard work that you've all put into this. Excellent job. It makes it both easier and harder for me, so thank you.

Anything else we need to accomplish in this case?

MR. CELIO: No, Your Honor.

THE COURT: You're waiting for a decision on this before discovery starts, assuming that I -- that any piece of the complaint survives?

MR. CELIO: Correct, Your Honor.

THE COURT: Okay. So nothing else we need to accomplish?

MR. CELIO: No, sir.

MR. KO: No, sir.

THE COURT: All right. I'll wish you all happy holidays. I'll try to get you a decision on these motions, as quickly as I can.

Thank you very much.

THE CLERK: All rise. This Court is adjourned.

*(At 12:03 p.m., proceedings were adjourned.)*

-oOo-

77

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  December 17, 2025

_____/s/DEBORAH D. PARKER_____
DEBORAH D. PARKER, OFFICIAL REPORTER

| | | | | |
|---|---|---|---|---|
| MR. CELIO: [56] 4/14 6/16 6/18 6/25 7/9 7/19 8/3 8/22 9/3 9/10 9/15 10/20 10/23 11/6 11/22 12/10 13/4 13/9 14/6 15/12 16/17 17/14 17/17 17/23 18/1 18/16 18/18 18/24 19/22 20/1 21/17 22/13 23/16 23/22 24/21 25/8 26/24 27/9 27/17 28/4 28/7 29/10 41/18 41/24 44/3 44/23 44/25 47/3 47/8 48/2 64/2 64/18 75/19 76/8 76/12 76/15 | 10:09 [2] 1/14 4/2 10b-5 [2] 19/25 71/4 10b5-1 [1] 16/21 10b5-type [1] 31/14 10th [1] 3/17 11 [1] 9/8 112 [1] 6/20 112-4 [1] 44/23 11:37 [1] 64/12 11:46 [1] 64/12 12 [3] 47/16 67/16 67/23 12:03 [1] 76/22 140 [2] 3/16 69/24 141 [1] 72/6 143 [1] 72/6 145 [1] 72/6 15 [6] 29/4 61/11 61/15 62/3 62/18 62/22 153 [1] 55/3 158 [1] 57/2 16,000 [1] 73/4 160-page [1] 55/16 169 [1] 69/11 17 [1] 77/9 18 [1] 62/23 19 [1] 50/18 1900 [1] 2/6 1994 [1] 47/8 1995 [1] 47/10 | 31 [1] 44/16 31 percent [1] 56/7 31/4 337 [1] 72/25 339 [1] 3/12 34 [4] 50/23 55/18 55/25 56/17 344 [8] 37/4 37/8 37/18 55/2 55/3 55/13 55/18 56/17 345 [7] 55/18 56/22 60/19 61/9 61/20 61/21 62/9 35 [3] 55/18 56/2 56/11 356 [1] 55/17 36 [5] 55/18 56/3 56/9 56/11 56/17 39 [1] 50/23 | above [3] 50/2 55/6 77/5 above-entitled [1] 77/5 accelerator [1] 19/4 accept [3] 25/3 57/5 57/9 accepting [1] 57/14 accomplish [2] 76/7 76/14 accurate [3] 36/8 63/2 72/14 acknowledge [2] 16/24 20/20 acquisition [1] 45/7 across [1] 23/22 act [13] 7/24 8/6 10/1 30/18 31/6 31/16 31/19 32/8 32/20 40/20 41/1 41/3 47/10 Act's [1] 13/16 | agreement [5] 56/23 59/8 60/20 60/22 61/10 ahead [4] 17/10 19/22 65/1 65/10 aiding [2] 28/16 28/19 all [63] 4/12 4/18 5/20 6/2 6/19 9/23 10/11 10/13 14/7 14/12 15/20 16/2 17/13 17/15 17/23 20/12 21/17 23/10 24/4 25/12 26/4 30/17 37/17 37/18 39/18 39/19 40/25 41/6 42/1 42/5 43/1 43/21 49/13 50/1 50/1 50/11 53/2 54/5 55/5 57/19 58/8 64/11 |

MR. HEIN: [6]  5/15 5/19 30/9 63/22 64/21 64/25

MR. KO: [38]  4/9 30/14 30/16 31/3 31/22 32/14 32/18 33/2 33/17 33/24 34/9 34/13 35/13 37/3 37/9 37/11 37/14 37/23 37/25 39/22 40/4 40/17 40/24 41/10 41/12 67/11 68/20 69/3 69/7 71/5 71/7 73/19 73/22 75/3 75/5 75/13 75/16 76/16

MR. YOUNGWOOD: [22]  4/24 5/4 5/6 5/13 29/15 29/19 30/2 51/25 52/3 52/10 52/15 58/18 58/20 58/23 61/3 61/16 62/14 62/20 62/25 63/12 63/15 75/21

MR. ZACCARO: [8]  4/19 4/21 30/11 64/17 65/2 65/11 66/7 67/2

THE CLERK: [3]  4/4 64/11 76/21

THE COURT REPORTER: [1]  63/18

THE COURT: [126]

**-**

-o0o [1]  4/3
-oOo [1]  76/23

**.**

...which [1]  63/5

**/**

/s/DEBORAH [1]  77/12

**0**

00285 [1]  4/5
053 [1]  1/22

**1**

1-053 [1]  1/22
1.2 [1]  44/19
10 [5]  9/17 9/18 11/8 49/22 70/24
10-K [4]  44/14 45/2 59/10 59/18
10-minute [1]  64/6
100 percent [1]  70/3
10017 [1]  3/11
10342 [1]  1/20
104 [1]  5/25
1058 [1]  2/7

**2**

2.1 [1]  44/18
2.2 percent [1]  44/19
20 [1]  33/25
20 years [1]  73/22
2014 [1]  53/4
2020 [1]  44/16
2021 [3]  43/24 44/16 45/7
2022 [5]  35/5 35/13 44/15 44/16 56/23
2023 [3]  36/6 36/7 36/7
2024 [2]  72/16 75/13
2025 [4]  1/13 4/1 52/18 77/9
20A [4]  27/5 27/20 28/2 52/25
21 [2]  56/6 56/7
212 [1]  3/12
213 [1]  3/5
223 [1]  73/11
229-4305 [1]  1/23
22nd [1]  43/24
231-1058 [1]  2/7
248 [1]  69/12
25 [2]  44/17 72/24
25 percent [2]  16/19 66/1
252 [2]  44/15 44/23
256 [1]  34/1
26 [1]  58/12
27 [1]  36/7
27 years [1]  28/23
273 [1]  34/1
28 [1]  77/3
28th [1]  52/18
299 [2]  55/18 56/14

**3**

30 percent [1]  56/7
300 [1]  46/20
309 [1]  45/2

**4**

40 [1]  44/17
400 [1]  3/4
411 [1]  1/22
415 [1]  3/18
4160 [1]  3/18
425 [1]  3/11
4305 [1]  1/23
4340 [1]  3/5
438 [1]  34/1
45 [1]  62/22
455-339 [1]  3/12
46 percent [1]  60/7

**5**

523 [1]  3/4
5300 [1]  2/15
55 [1]  44/17
57 [1]  69/24
58 [1]  44/3

**6**

60 [3]  26/1 26/2 26/4
619 [1]  2/7
650 [1]  2/15
655 [1]  2/5
657 [1]  1/23

**7**

70 [3]  26/1 26/3 26/8
709 [1]  70/24
753 [1]  77/2
788-4340 [1]  3/5
796-4160 [1]  3/18

**8**

849-5300 [1]  2/15
8:24-cv-00285-JWH [1] 1/7

**9**

90014 [1]  3/5
92101 [1]  2/6
92701 [1]  1/23
94105 [1]  3/17
94301 [1]  2/15

**A**

a.m [4]  1/14 4/2 64/12 64/12
abetting [2]  28/16 28/19
ability [2]  39/5 59/19
able [1]  73/2
about [88]

action [3]  12/4 20/13 66/22
actions [2]  19/18 53/13
acts [1]  33/12
actual [2]  53/7 74/16
actually [15]  12/4 14/25 17/3 23/5 23/13 24/1 29/4 47/21 47/23 49/18 57/7 59/1 59/5 62/9 72/8
adage [1]  47/5
add [3]  30/11 32/21 48/21
addition [1]  64/21
additional [5]  38/7 45/19 59/1 60/13 64/20
address [2]  30/5 73/14
adds [1]  53/17
adequately [3]  34/6 39/19 68/13
adjourned [2]  76/21 76/22
adjudicate [1]  68/2
adjudicated [1]  13/18
admit [2]  11/19 11/22
adopted [1]  29/22
advisor [1]  56/11
advocate [1]  15/9
affairs [4]  53/11 54/2 54/3 54/8
affiliated [1]  58/5
afield [1]  13/2
after [14]  35/6 35/16 35/19 38/17 47/9 55/4 55/19 60/17 60/18 62/5 62/8 62/8 70/14 70/25
afternoon [3]  52/17 64/4 64/5
again [37]  9/20 10/24 11/14 12/1 13/13 14/11 14/14 14/14 15/12 16/13 16/20 20/8 20/23 21/22 28/4 28/7 33/20 35/11 39/20 41/19 45/8 45/8 45/8 45/14 45/15 45/15 45/17 46/24 49/17 56/15 56/20 57/2 58/6 59/21 60/12 64/13 76/4
against [1]  66/10
aggressive [1]  15/3
agree [1]  70/3
Agreed [1]  14/6

64/13 66/17 66/25 67/25 70/1 70/6 70/11 70/15 70/17 72/11 72/17 73/12 74/17 75/6 75/22 75/23 76/1 76/4 76/17 76/17 76/21
allegation [13]  14/13 15/2 29/5 46/13 51/11 55/6 55/20 56/3 56/4 57/20 57/22 59/7 70/5
allegations [23]  9/6 11/23 12/19 13/16 15/10 16/22 18/2 25/5 28/1 30/3 30/23 31/12 31/13 32/7 33/21 36/25 42/8 48/25 50/19 54/22 57/15 66/21 71/11
allege [7]  39/1 39/4 40/1 40/1 40/2 56/10 70/21
alleged [19]  7/3 7/16 15/17 19/18 20/18 22/10 30/21 32/2 34/10 37/20 39/19 50/22 52/22 59/15 59/21 60/17 65/19 74/4 74/12
allegedly [1]  39/17
alleges [1]  55/6
alleging [4]  31/7 32/5 32/12 32/16
ALLEN [1]  3/15
allows [1]  35/7
almost [5]  21/12 21/12 29/1 52/21 67/23
alone [1]  66/23
along [1]  40/10
Alphabet [1]  70/23
already [6]  23/6 25/10 26/8 66/5 74/6 74/7
also [19]  12/3 33/4 37/18 38/4 38/23 39/3 41/1 53/9 53/14 56/9 60/13 62/22 63/21 65/2 66/1 71/16 72/2 72/3 72/8
alter [7]  39/25 40/2 40/5 50/25 54/12 54/19 54/20
alternately [1]  39/16
although [3]  7/20 8/14 26/25
ALTO [1]  2/15
always [3]  48/22 67/22 67/23
am [3]  18/17 37/19 75/2
amend [5]  67/10 67/18 67/23 68/1 68/18

## A

amended [4] 5/23 5/25 7/2 37/1
amendment [2] 57/17 61/25
America [1] 14/4
America's [1] 70/16
American [1] 60/1
ANA [4] 1/3 1/12 1/23 4/1
analog [1] 9/9
analogous [1] 38/2
analysis [2] 17/19 58/13
analyst [1] 14/4
analyze [1] 47/5
analyzed [1] 73/1
anecdotal [1] 70/17
ANGELES [1] 3/5
Anna [1] 38/14
Anna Kaiser [1] 38/14
anniversary [1] 28/22
anonymous [1] 47/21
another [5] 11/10 36/3 38/4 44/13 60/5
answer [11] 15/1 15/13 22/14 27/25 29/21 40/14 51/20 67/11 68/25 69/7 74/21
answering [1] 68/21
answers [2] 6/7 6/24
ANTHONY [2] 3/2 4/22
any [49] 7/10 10/6 10/8 11/11 11/12 12/4 13/6 13/9 14/1 15/17 15/20 15/25 16/13 16/25 21/1 21/16 29/13 29/13 29/16 33/22 33/22 34/12 36/14 39/6 48/16 48/20 51/20 56/10 57/1 58/1 59/7 61/24 61/25 65/18 65/19 65/20 66/10 66/12 66/18 67/5 67/6 67/18 68/17 69/2 69/7 71/22 73/14 73/18 76/10
anybody [6] 22/1 22/2 30/7 35/6 51/9 51/23
anyone [2] 51/21 52/16
anything [20] 11/24 12/11 26/3 26/19 26/20 43/3 46/22 48/21 48/23 49/16 50/8 50/8 50/25 51/9 59/15 64/20 67/5 74/1 75/18 76/7
anywhere [3] 19/10 74/9 74/10
aoshearman.com [1] 3/18
apart [1] 70/21
apologies [2] 8/3 8/3
apologize [1] 8/6
Apparel [1] 60/1
apparently [2] 19/20 72/24
appearances [3] 1/25 2/17 4/7
appearing [1] 55/19
appears [2] 27/5 55/3
apples [2] 49/17 49/18
applied [1] 65/20
applies [2] 41/6 47/24
apply [7] 30/25 31/1

31/5 31/19 40/20 41/2 65/21
applying [1] 74/3
appreciate [4] 67/3 68/9 75/23 76/4
approaching [1] 54/24
appropriate [1] 59/12
April [1] 56/23
apt [1] 47/5
are [93]
area [3] 11/15 47/17 72/6
aren't [7] 14/10 24/4 25/18 38/5 42/5 50/4 66/18
argue [5] 6/9 6/10 22/5 30/13 64/16
argument [22] 7/2 7/6 13/3 14/9 15/5 16/24 18/10 18/17 20/9 22/14 23/5 41/15 45/19 63/11 63/13 63/21 68/7 69/10 73/8 75/2 75/5 75/23
arguments [6] 14/1 18/18 24/3 53/6 64/23 65/3
around [3] 41/5 67/16 67/22
arrow [1] 56/21
art [10] 73/17 73/21 73/25 74/1 74/7 74/8 74/13 74/17 74/20 74/20
article [2] 14/4 14/17
articles [6] 14/12 14/18 14/20 24/3 47/24 74/1
articulated [1] 60/16
as [63] 5/23 9/16 10/13 12/18 12/19 13/13 15/10 17/15 18/2 18/3 18/4 18/7 18/20 21/19 22/6 23/12 23/17 24/23 25/13 27/7 27/11 28/9 29/16 31/10 32/8 32/10 32/19 32/23 33/12 35/23 35/23 38/9 39/23 42/14 44/16 45/12 46/18 53/19 53/21 54/19 55/5 55/6 55/25 56/20 57/5 58/25 59/2 59/12 59/12 59/24 60/12 60/23 64/22 68/17 71/22 71/22 71/24 71/25 74/3 74/8 74/22 76/19 76/19
aside [3] 9/4 24/10 57/19
ask [4] 6/2 21/15 67/4 71/16
asked [8] 11/1 30/8 36/11 54/25 57/24 65/11 71/3 71/7
aspect [2] 61/5 67/6
assert [1] 30/24
assess [1] 7/20
assimilate [1] 6/2
associate [1] 48/13
associated [3] 59/10 59/13 59/18
assume [1] 21/18
assuming [3] 37/20 39/18 76/10
attach [1] 61/10

attached [1] 62/3
attachment [1] 61/16
attack [1] 13/21
attended [1] 72/9
attention [1] 15/14
Attorney [1] 46/18
attributable [2] 45/3 45/5
attributed [1] 66/19
authored [1] 58/21
authorities [1] 53/3
authority [4] 12/2 13/5 13/10 52/8
AUV [1] 49/24
available [2] 72/18 75/7
AVENUE [2] 2/14 3/11
average [5] 49/24 49/25 50/3 50/5 50/6
avoid [1] 27/22
aware [7] 32/10 34/19 36/14 52/12 58/1 66/5 74/10
awful [1] 41/20

## B

back [15] 8/7 8/7 11/1 25/22 31/21 36/19 40/13 41/14 42/22 45/9 53/18 64/7 69/6 73/22 75/25
backing [2] 33/20 47/2
bad [4] 21/6 31/14 31/15 46/5
Baker [1] 60/10
Bank [3] 14/4 28/16 70/16
Bank of [1] 70/16
Bao [1] 60/2
bark [1] 20/16
barre [2] 9/19 11/10
BARTLETT [1] 3/10
base [2] 36/21 44/20
based [2] 9/24 72/11
basic [4] 6/4 7/8 7/9 8/7
basically [3] 35/10 39/24 72/20
basis [10] 7/13 16/25 26/13 31/7 36/2 36/22 67/12 70/13 70/14 70/15
be [77] 5/24 7/11 7/13 13/11 15/23 15/24 16/9 17/4 17/11 19/7 19/11 21/7 21/9 22/20 23/3 23/4 24/17 24/17 25/2 25/14 26/11 26/24 28/13 28/14 28/19 28/20 28/21 29/1 30/3 30/7 30/14 30/18 31/17 31/18 32/3 36/16 39/12 39/15 39/18 39/21 41/4 42/13 44/10 45/18 48/8 48/17 48/19 50/2 50/2 50/7 50/13 51/3 51/16 51/24 53/11 54/17 57/8 58/7 58/8 59/8 61/1 62/16 63/9 64/2 64/17 67/20 68/11 71/18 71/19 72/21 73/2 73/6 74/5 74/5 74/6 75/8 75/10
bear [1] 34/13
bearing [2] 21/16 34/11

bears [1] 34/14
because [58] 6/10 7/3 7/14 7/22 8/8 8/17 8/20 10/2 11/12 11/13 15/2 21/19 23/7 24/13 24/22 25/8 25/19 25/23 26/7 26/13 27/20 27/21 30/3 30/20 34/21 38/5 38/6 39/1 39/22 40/25 41/8 42/3 42/6 42/8 42/13 42/19 42/20 43/20 45/25 47/8 48/5 49/4 49/20 51/2 51/3 51/13 52/6 52/21 54/14 54/15 54/16 54/18 57/8 58/1 58/13 60/16 67/5 67/13
become [2] 8/13 59/16
been [9] 23/1 24/13 24/18 25/6 28/21 38/19 47/9 59/9 68/7
before [13] 6/11 21/24 21/25 25/20 26/3 40/14 62/5 62/6 66/7 66/16 71/13 74/2 76/10
beginning [2] 4/8 40/6
behalf [1] 5/16
behind [1] 43/11
being [6] 14/14 19/1 26/11 28/22 46/13 56/20
belief [1] 42/17
believe [17] 17/14 19/9 21/7 21/21 27/11 31/4 35/6 40/5 40/7 43/18 43/19 45/25 55/1 60/5 61/11 69/24 70/12
believed [1] 42/21
below [3] 10/1 50/2 55/7
benefit [3] 37/12 37/17 50/13
benefited [1] 39/8
best [11] 6/2 9/11 13/5 13/10 57/15 57/24 58/1 68/5 68/11 68/18 68/22
better [6] 52/20 59/24 67/19 68/1 68/4 68/4
between [5] 22/20 26/15 32/6 33/22 56/6
beyond [1] 73/5
BFT [1] 45/7
big [1] 49/9
bit [11] 6/11 8/2 43/19 45/20 45/22 46/8 46/11 47/20 51/1 61/2 73/22
blame [1] 71/14
blindfolded [1] 19/4
block [2] 26/5 26/7
Bloomberg [1] 14/4
blow [1] 63/1
board [12] 38/8 54/6 58/5 59/6 59/6 59/8 59/11 59/13 59/17 59/19 60/9 60/11
both [4] 6/9 55/18 56/11 76/5
bottom [2] 62/19 62/22
boxing [1] 9/19
brand [2] 35/8 35/25
brand-specific [1] 35/8
Brandon [1] 4/17
brands [9] 35/18 35/22 49/22 50/1 66/16 72/15

73/5 75/6 75/11
break [4] 63/17 64/4 64/6 64/10
BRENDA [1] 2/12
brief [6] 54/6 54/14 57/12 60/14 60/18 61/15
briefed [1] 29/20
briefing [4] 16/17 29/17 49/15 75/24
briefs [6] 14/9 33/7 53/18 55/14 59/25 60/1
bring [3] 6/3 28/18 49/3
BRITTON [2] 2/4 4/10
broad [2] 10/8 47/19
broader [2] 20/10 25/24
BROADWAY [1] 2/5
Brody [1] 26/25
brought [3] 24/21 29/1 59/2
bumpiness [1] 46/24
bunch [4] 22/23 24/25 48/6 49/25
burden [2] 20/5 23/19
business [3] 23/20 42/20 59/20
buy [3] 18/7 23/17 42/21
buying [1] 45/9

## C

Calendar [1] 4/4
CaliCAD [1] 74/11
CALIFORNIA [13] 1/2 1/12 1/23 2/6 2/15 3/5 3/17 4/1 9/13 10/18 46/9 50/17 60/11
call [4] 16/5 25/6 46/1 55/10
called [5] 11/12 12/6 23/11 24/7 31/24
Calling [1] 4/4
calls [3] 38/22 58/14 58/19
came [2] 38/18 72/16
can [44] 5/4 6/3 6/12 9/22 10/10 10/11 13/12 13/17 25/9 25/18 26/12 26/24 28/17 33/19 34/6 35/24 36/22 37/1 40/11 40/13 41/21 42/13 43/7 45/18 46/15 52/20 53/3 53/3 57/16 59/24 64/2 64/4 64/7 67/20 68/1 68/11 68/19 68/22 68/25 72/21 73/6 75/8 75/10 76/19
can't [10] 7/2 25/14 40/12 47/12 48/21 50/9 58/3 67/18 74/6 74/11
cannot [4] 7/13 22/5 28/18 63/8
capital [5] 3/8 5/11 35/5 35/13 42/19
car [2] 19/3 19/3
care [2] 13/7 19/5
careful [1] 58/12
carefully [1] 12/3
Cartwright [3] 58/10 58/20 58/22
case [65] 1/7 4/5 11/25 13/8 13/10 20/9 20/11 22/9 22/22 26/13 26/20

**C**

case... [54] 26/25 28/16 28/24 30/3 31/24 33/7 34/2 37/24 42/1 42/3 42/11 45/17 45/24 47/6 49/4 50/4 50/15 50/16 51/16 53/4 53/8 53/15 53/17 57/23 58/1 58/10 58/15 59/3 59/3 59/4 59/11 59/11 59/23 60/1 60/2 60/5 60/6 60/10 68/12 69/11 69/16 69/17 70/20 71/17 72/15 72/16 72/23 73/24 74/10 74/11 74/25 75/12 75/14 76/7
Case No. 8:24-cv-00285 [1] 4/5
cases [14] 21/3 26/17 32/10 38/1 38/2 46/14 48/7 53/15 53/24 54/23 57/24 58/1 59/25 76/2
cast [1] 25/1
causation [4] 22/4 22/12 22/15 72/3
cause [1] 39/18
cave [1] 14/13
CELIO [10] 2/13 4/15 6/16 6/18 6/19 6/23 30/8 41/19 60/24 66/2
Celio's [2] 65/3 69/10
CENTRAL [2] 1/2 28/16
CEO [3] 38/10 49/6 66/22
certain [1] 41/1
certainly [7] 10/3 12/14 12/15 28/9 29/3 55/23 65/21
CERTIFICATE [1] 76/24
certification [1] 22/23
CERTIFIED [1] 1/5
certify [1] 77/2
CFO [5] 10/5 15/23 34/18 34/20 35/2
chairman [1] 38/8
change [1] 42/9
changing [1] 36/16
charge [1] 71/5
check [1] 40/4
CHELSEA [2] 2/11 4/17
Chelsea Grayson [1] 4/17
chief [1] 49/7
children [1] 17/23
circuit [21] 14/8 19/6 27/6 27/14 31/23 33/7 34/2 47/22 48/5 48/5 48/16 50/16 53/1 53/2 53/14 53/22 58/2 70/22 70/23 72/16 75/13
circular [1] 45/20
circumstances [1] 53/2
citations [2] 43/22 60/20
cite [3] 34/1 53/19 53/21
cited [5] 33/7 33/25 50/18 53/9 75/14
cites [2] 31/24 66/4
claim [16] 7/3 7/3 7/10 7/14 12/22 15/22 16/25 20/6 26/12 27/5 27/20

28/2 28/20 36/5 39/11 42/3
Claim 2 [1] 39/11
claimed [1] 38/21
claims [23] 19/17 19/23 20/3 20/7 20/7 27/20 27/21 28/9 28/18 29/1 30/18 30/25 31/6 31/20 32/12 32/15 33/12 35/14 40/20 41/7 41/7 41/9 45/17
Claims 1 [2] 32/12 41/7
Claims 3 [1] 32/15
clarification [8] 5/1 7/25 11/20 16/15 23/14 31/23 32/25 65/7
clarifications [1] 9/15
class [12] 20/22 22/22 38/9 56/7 56/8 56/15 56/16 57/1 66/3 66/16 66/18 66/22
clear [18] 13/11 16/4 19/12 25/2 42/25 45/9 45/14 48/19 53/1 53/4 53/9 58/5 62/6 63/3 67/19 72/17 73/12 75/6
clearest [1] 37/4
clearly [4] 40/7 51/3 61/5 73/6
clerk [1] 61/8
clerks [1] 26/1
client [1] 12/14
clients [4] 19/18 26/3 42/24 55/18
Clinton's [1] 47/11
close [4] 5/5 18/13 36/16 71/10
closed [8] 36/6 36/9 36/14 36/20 42/11 43/2 43/8 45/11
closest [2] 20/19 58/14
closing [1] 73/13
closure [1] 42/8
closures [2] 73/9 73/10
Cloudera [2] 31/24 31/24
Club [2] 11/11 35/18
co [1] 38/8
co-founded [1] 38/8
Code [1] 77/3
cogent [10] 17/4 17/5 18/24 18/25 19/7 19/8 19/11 20/8 28/8 71/21
colleagues [1] 29/9
collected [2] 37/17 37/18
collective [2] 21/19 70/17
collectively [5] 13/24 15/1 56/14 64/8 64/15
combine [1] 46/10
come [6] 20/20 40/13 62/4 62/5 64/7 69/6
comes [8] 22/8 36/7 42/25 49/25 60/17 60/18 70/5 72/19
Commission [1] 12/1
commonsense [1] 51/14
companies' [1] 66/15
company [38] 20/17 21/5 24/15 24/19 29/5 29/22 34/19 35/2 35/7 35/10 35/16 35/20

35/23 37/15 38/6 38/8 38/10 38/11 38/12 39/8 43/13 43/16 43/17 44/17 45/6 45/9 49/8 49/21 50/20 51/7 54/5 57/1 60/7 60/25 65/15 65/25 69/14 69/15
company-owned [4] 43/1 43/17 44/17 45/6
company-wide [1] 49/21
compelling [13] 17/4 17/8 18/24 18/25 19/9 19/13 20/8 28/8 60/1 66/23 71/22 71/25 71/25
compensations [1] 17/9
competing [2] 71/8 71/20
complaining [2] 11/13 46/25
complaint [32] 5/24 5/25 7/2 12/18 13/15 14/21 25/23 25/25 29/6 35/24 37/1 38/12 40/2 40/6 46/7 49/1 49/2 49/10 49/24 50/22 54/11 54/13 54/15 55/2 55/3 55/8 55/16 61/21 62/2 65/20 70/2 76/11
complaints [5] 9/11 14/19 42/2 55/5 71/13
completely [6] 13/14 31/15 52/21 54/8 55/21 60/23
complex [1] 19/18
conceal [1] 36/3
concept [2] 73/20 73/25
conceptually [2] 31/7 33/12
conclude [9] 17/20 22/7 27/13 27/15 34/6 40/19 41/6 67/8 68/12
conclusion [1] 26/6
conclusory [4] 55/21 55/22 57/7 57/14
condition [1] 34/19
conduct [15] 20/4 30/21 30/25 31/8 32/1 32/3 32/5 32/17 33/6 33/23 38/6 45/18 45/19 70/21 72/7
confer [1] 64/7
conference [2] 36/11 77/7
confidential [2] 21/4 47/23
confirm [2] 22/10 27/11
conformance [1] 77/6
confusion [1] 51/2
connected [1] 66/18
connection [4] 7/11 7/14 11/5 45/5
consent [10] 10/17 11/5 13/6 14/3 65/12 65/13 65/14 65/17 70/14 70/14
consider [3] 13/12 13/17 72/12
considered [2] 16/8 72/21
consisting [1] 72/25
consists [1] 63/5
consolidated [2] 5/25

49/21
constitute [2] 38/5 71/2
constrained [1] 57/3
constructive [2] 74/17 74/22
consumer [1] 12/23
contained [1] 63/7
contains [1] 16/3
contemporaneous [1] 20/18
contend [1] 70/9
contention [1] 39/24
contest [2] 10/24 30/22
contested [1] 13/18
context [7] 8/24 23/7 45/12 46/17 68/10 69/19 69/20
contracts [1] 50/21
contractual [1] 59/7
contradict [1] 26/18
contradicts [2] 49/16 50/8
contrary [2] 50/15 61/5
control [36] 28/13 29/3 29/25 30/4 36/24 36/25 37/5 37/15 37/21 39/5 39/5 39/12 39/17 49/13 50/11 50/14 51/6 51/6 51/15 52/25 53/13 53/15 53/17 54/4 55/5 55/9 55/19 56/21 57/9 58/8 58/13 60/6 60/19 60/25 61/4 63/9
controlled [4] 50/24 51/12 57/11 57/13
controlling [3] 40/8 57/15 57/16
conversations [1] 20/12
corporate [3] 53/13 54/21 54/23
corporation [2] 53/12 53/16
corporations [1] 66/21
correct [12] 7/19 9/2 17/17 27/8 27/9 27/12 31/22 61/13 66/2 67/21 76/12 77/4
corrected [1] 23/4
corrective [9] 22/6 22/10 22/18 22/19 25/14 43/5 72/21 73/6 75/10
correctly [3] 14/7 25/17 75/2
corroborate [2] 13/24 14/10
corroboration [1] 14/15
could [8] 41/7 42/23 43/3 43/14 55/8 57/4 58/8 71/22
counsel [19] 2/1 3/1 4/7 4/13 4/18 5/20 27/10 30/12 48/19 52/2 52/5 52/24 54/12 54/19 57/5 57/24 60/4 61/10 75/22
Counsel's [1] 61/17
count [9] 9/22 27/5 37/22 39/18 41/2 46/25 55/4 55/4 55/4
Count 1 [1] 41/2
Count 4 [1] 55/4
counts [7] 32/20 32/20 32/24 33/3 33/23 40/21

41/3
Counts 3 [1] 33/3
County [1] 24/2
couple [6] 9/15 20/21 20/22 24/13 24/13 38/2
course [10] 5/21 6/19 30/21 32/2 32/17 33/6 41/16 45/23 55/4 61/3
courses [3] 30/24 31/8 33/22
court [27] 1/1 1/21 1/21 5/1 7/20 7/25 9/9 9/10 11/20 16/15 22/23 23/14 25/25 32/25 33/6 38/2 43/22 45/11 63/17 64/11 65/7 68/23 68/24 70/18 71/17 73/10 76/21
Court's [2] 28/16 70/25
Courts [2] 27/18 53/22
cover [2] 52/15 60/14
covered [1] 41/4
crackpot [1] 70/4
crash [1] 19/3
creature [1] 24/8
credit [4] 24/24 24/25 25/12 68/8
criminal [1] 46/17
critical [4] 32/6 35/4 74/3 75/11
crunch [1] 69/6
CRUTCHER [1] 2/14
CSR [1] 1/20
currently [1] 56/10
cut [2] 41/21 66/9
cv [2] 1/7 4/5
CWs [1] 21/4

**D**

DANIELS [2] 2/4 4/10
date [5] 49/2 69/18 74/2 74/3 77/9
day [23] 36/10 50/19 50/19 50/20 50/20 53/11 53/11 54/2 54/2 54/2 54/2 54/8 54/8 55/23 55/23 57/20 57/20 57/22 57/22 61/5 61/5 63/9 63/9
ddparker.com [1] 1/24
deal [1] 27/24
DEBORAH [3] 1/20 77/12 77/12
deceive [3] 32/9 34/17 36/23
DECEMBER [4] 1/13 4/1 44/16 77/9
DECEMBER 3 [2] 1/13 4/1
December 31 [1] 44/16
deception [1] 7/4
deceptive [1] 45/18
decided [2] 27/6 35/3
decision [7] 52/18 58/21 67/6 68/17 70/25 76/9 76/18
declined [1] 12/4
decree [3] 65/12 65/13 65/14
deep [2] 74/13 74/18
deeply [1] 76/4
defective [1] 39/3
defendant [10] 3/2 3/14

**D**

defendant... [8] 4/22 10/3 21/2 28/24 53/7 56/1 68/6 68/10
defendant's [4] 30/22 53/10 53/12 67/17
defendants [31] 3/7 5/17 5/22 6/22 9/1 9/1 15/17 17/13 29/13 29/21 29/22 29/23 30/20 31/13 31/17 32/22 34/7 34/14 39/10 39/14 40/25 41/1 41/15 41/19 58/13 58/15 59/1 59/5 64/23 68/6 69/13
defendants' [4] 21/16 31/10 34/12 51/23
defended [1] 38/16
defensible [1] 18/7
deficient [3] 67/13 68/24 68/25
defined [1] 74/8
definitely [1] 39/7
definition [2] 49/25 74/20
defraud [4] 26/22 31/8 33/11 42/4
degree [3] 53/17 53/20 65/17
demonstrates [1] 37/21
demonstration [1] 37/5
deny [5] 11/19 11/22 67/24 67/25 68/3
Department [1] 10/18
description [2] 40/5 56/24
detail [2] 8/12 58/11
detailed [1] 54/22
development [1] 50/21
DFPI [2] 65/12 65/20
did [27] 5/20 12/5 21/18 21/18 21/21 24/24 25/11 26/20 31/13 31/15 35/24 36/6 36/14 39/1 39/16 45/14 52/10 55/13 56/25 60/4 65/24 66/2 70/10 70/10 72/13 73/6 75/4
didn't [19] 15/20 15/25 18/7 19/5 20/16 23/22 24/14 42/19 42/20 43/12 45/21 45/23 45/25 48/20 60/4 64/19 65/21 70/11 74/15
DIEGO [1] 2/6
difference [2] 54/18 70/20
differences [2] 33/22 60/13
different [24] 9/17 9/18 11/8 11/25 12/12 12/13 12/13 12/15 12/24 14/15 19/17 28/12 30/24 31/4 31/7 32/17 33/6 33/13 42/16 43/18 44/9 48/6 49/22 60/9
differently [1] 57/6
difficult [2] 20/6 74/19
digestible [2] 72/19 75/8
direct [1] 73/10
directions [1] 57/15
directly [2] 20/21 25/24

directors [2] 59/19 60/9
disclaimed [2] 31/5 33/11
disclaimer [2] 14/21 72/11
disclose [8] 39/2 45/21 45/23 45/24 65/15 70/4 70/8 70/10
disclosed [1] 24/11
disclosure [16] 22/6 22/19 23/4 25/14 34/20 35/8 35/9 35/17 35/21 43/1 46/8 63/2 72/22 73/7 73/16 75/10
disclosures [11] 12/13 12/16 16/4 16/21 22/10 24/18 24/19 25/6 25/7 43/5 73/3
discovery [1] 76/10
discussion [1] 58/12
disgruntled [1] 66/15
dismiss [5] 5/23 8/10 26/13 61/17 67/17
dismissed [1] 54/17
dispositive [2] 40/10 55/11
dispute [1] 11/18
disputes [2] 26/16 38/13
disregard [2] 13/13 66/9
dissemination [1] 70/25
distinction [1] 9/12
DISTRICT [11] 1/1 1/2 1/21 27/18 38/2 38/5 50/17 52/18 53/21 58/2 60/11
DIVISION [1] 1/3
do [56] 6/5 6/8 6/12 6/22 14/2 16/10 21/25 24/15 24/17 24/19 26/1 29/1 29/13 29/16 30/21 30/24 31/2 31/3 31/4 37/24 40/1 40/1 40/2 40/3 40/14 40/19 40/23 42/9 46/3 46/4 46/21 49/5 53/11 53/23 55/15 55/20 55/22 56/2 61/7 62/2 63/17 64/3 64/9 64/16 67/8 67/8 67/18 68/1 68/4 68/4 68/11 68/19 68/21 68/22 70/5 72/10
document [1] 35/22
documents [6] 11/2 34/20 35/8 35/17 35/21 73/3
does [10] 7/7 7/7 7/12 21/15 23/20 34/11 34/13 36/25 40/21 61/10
doesn't [10] 11/24 12/21 22/24 48/9 51/7 55/22 57/25 71/14 72/1 74/24
dog [1] 20/16
doing [7] 11/13 16/9 16/11 20/19 28/22 36/15 36/18
don't [71] 8/15 10/2 10/2 10/7 10/24 11/10 11/12 11/15 11/15 11/16 13/9 13/23 16/24 17/4 17/5 17/7 20/23

20/23 20/24 20/24 20/25 21/1 21/7 21/22 23/18 23/24 26/18 27/19 27/23 28/1 29/15 29/24 31/25 33/15 34/13 37/25 38/3 40/24 41/6 43/12 43/13 46/13 48/14 48/18 48/21 48/23 48/24 48/25 49/2 50/7 50/25 53/22 54/1 54/4 54/14 56/10 57/3 57/16 60/16 61/1 65/20 67/5 67/25 68/2 68/4 70/4 70/19 71/25 72/12 73/18 75/25
done [5] 6/1 31/18 42/15 68/9 73/18
door [1] 49/18
dougb [1] 2/8
DOUGLAS [2] 2/4 4/10
DOWD [2] 2/5 4/11
down [10] 6/4 8/2 9/14 41/21 42/14 50/11 61/2 61/23 70/5 72/20
draw [1] 71/23
drew [1] 41/20
drive [1] 42/14
driving [1] 19/16
due [2] 24/25 66/11
DUNN [2] 2/14 4/15
during [4] 16/12 38/22 66/3 66/17

**E**

e-mails [1] 20/12
each [6] 6/6 13/21 13/24 14/10 26/7 35/18
eager [1] 69/5
earlier [2] 57/24 71/7
early [1] 56/12
easier [3] 27/22 59/4 76/5
easily [2] 72/19 75/7
easy [1] 31/18
ECF [4] 5/25 6/20 44/3 62/17
ECF 104 [1] 5/25
ECF 112 [1] 6/20
ECF 112-2 [1] 44/3
ECF 124-1 [1] 62/17
echoing [1] 14/14
echos [1] 14/11
economic [2] 23/9 23/17
Economics [2] 23/13 23/16
editing [1] 38/14
effect [2] 24/20 25/7
effective [1] 60/6
efficiency [1] 23/9
efficient [2] 23/11 24/21
ego [7] 39/25 40/2 40/5 50/25 54/12 54/19 54/20
either [10] 6/14 16/19 17/5 17/6 19/2 19/2 27/10 30/22 34/23 42/22
element [5] 7/10 32/6 33/4 33/5 42/3
elements [5] 32/13 32/16 32/18 39/19 54/18

ellipsis [1] 45/4
else [7] 22/1 22/2 30/7 39/9 51/21 76/7 76/13
emphasis [1] 8/15
end [2] 63/2 63/25
ending [1] 61/23
enough [8] 15/9 28/13 47/12 50/14 63/25 67/14 71/1 73/1
entered [1] 16/23
entire [6] 35/10 35/23 36/18 55/16 65/14 69/20
entirely [3] 37/12 37/16 43/17
entities [26] 30/4 39/11 39/13 39/14 39/16 39/22 50/24 51/3 51/5 51/15 51/16 52/5 54/7 54/9 54/24 56/14 56/19 56/25 57/11 57/14 58/5 58/6 58/7 60/21 61/18 61/20
entitled [1] 77/5
entity [2] 51/12 56/22
equally [2] 17/23 59/25
equity [2] 16/7 51/10
equivalent [2] 46/7 58/14
essence [1] 18/10
essentially [6] 14/19 14/20 19/6 28/19 71/10 75/3
establish [3] 11/24 17/12 50/14
established [1] 70/13
establishes [2] 25/10 39/5
establishing [1] 33/3
evaluate [1] 18/20
evaluated [1] 21/20
evaluating [1] 13/15
even [25] 12/20 16/18 21/21 41/2 42/9 50/6 54/14 54/16 55/8 55/9 55/13 55/17 55/21 55/22 57/7 57/25 59/16 62/8 67/16 67/25 68/2 71/20 72/15 72/17 75/5
event [2] 10/6 17/7
events [2] 16/21 71/9
ever [6] 25/18 38/20 42/11 43/4 45/10 71/13
Everex [1] 50/16
every [7] 38/22 42/3 42/3 42/25 55/6 66/22 70/4
everybody [1] 6/23
everyone [2] 16/10 32/10
everything [6] 6/13 12/20 46/4 48/15 74/8 74/23
everywhere [2] 58/3 58/4
evidence [11] 20/8 20/17 24/16 69/17 69/21 69/22 69/25 70/1 71/15 71/17 72/2
exacerbated [1] 48/18
exact [3] 32/1 32/5 57/12
exactly [8] 20/1 20/2

32/7 33/9 40/9 41/24 58/9 72/14
exaggerating [1] 54/11
example [6] 18/8 34/17 34/18 49/7 49/23 68/17
examples [1] 60/2
exceeding [1] 73/3
excellent [5] 20/15 22/14 65/3 75/24 76/5
except [1] 9/20
exceptions [1] 21/13
excess [1] 20/5
Exchange [3] 12/1 32/20 41/1
excluding [1] 69/12
exclusively [1] 49/9
exercise [1] 39/17
exercised [2] 39/12 53/7
exhaustive [1] 56/24
exhibit [5] 43/24 44/14 62/3 62/12 62/23
Exhibit 1 [2] 43/24 62/23
Exhibit 3 [1] 44/14
existed [2] 20/13 74/2
exists [2] 10/23 10/24
expense [1] 45/5
expenses [1] 45/3
experience [2] 28/21 48/11
experienced [1] 18/13
explain [2] 6/3 46/15
explained [1] 72/1
extended [1] 59/14
extension [1] 74/6
extraordinarily [1] 74/19
extreme [2] 10/12 25/19
eyes [1] 39/23

**F**

F-U-N-K-O [1] 38/4
F.3d [1] 34/1
F.4th [1] 70/23
Facebook [1] 45/24
fact [18] 9/20 15/22 18/14 24/22 28/25 37/17 46/20 48/18 50/3 50/15 52/22 54/19 59/10 60/21 65/20 66/21 70/7 70/8
factors [2] 35/1 38/7
facts [17] 7/24 8/4 13/22 18/25 24/6 25/8 25/10 32/18 32/21 33/3 33/4 51/12 52/22 59/2 59/4 66/9 70/13
factual [3] 31/12 31/12 32/7
fail [3] 27/21 27/21 42/19
failed [1] 65/15
fair [4] 8/12 43/21 62/21 67/14
false [2] 26/7 46/15
familiar [2] 73/17 73/20
far [3] 13/2 41/21 47/15
faulting [1] 48/19
favorite [1] 48/7
favors [1] 71/24
few [6] 56/13 61/23 65/5 69/8 69/12 76/2
figuring [1] 26/12

**F**

filed [4] 5/22 12/23 52/8 52/17
filings [7] 24/1 24/1 24/12 24/19 49/19 49/20 49/20
final [2] 60/15 73/8
finally [1] 66/20
financial [9] 10/18 18/13 34/19 34/20 35/8 35/9 35/17 35/21 73/3
find [5] 18/21 33/19 40/11 62/14 74/19
findable [1] 74/10
finding [1] 18/22
fire [5] 16/17 43/6 47/5 47/13 47/14
FIREFIGHTERS' [1] 2/2
firm [2] 20/15 48/13
first [16] 7/9 11/1 14/7 21/17 32/16 37/3 40/22 46/18 49/13 50/11 53/4 54/13 57/18 64/14 67/16 67/22
fiscal [1] 44/14
fit [2] 71/14 72/1
Fitness [4] 1/7 2/11 4/5 4/16
five [7] 9/22 24/14 41/7 50/4 51/17 59/13 64/17
five minutes [1] 64/17
five percent [1] 59/13
fix [1] 12/7
flagellate [1] 70/4
flagellation [1] 46/2
FLOOR [1] 3/17
flow [1] 56/21
flows [2] 42/2 68/15
focus [3] 6/8 24/10 54/2
focused [1] 43/5
following [1] 35/12
footnote [3] 33/17 33/25 70/24
Footnote 10 [1] 70/24
Footnote 5 [1] 33/25
footnotes [2] 33/8 53/19
force [1] 19/13
foreclosure [1] 38/15
foregoing [1] 77/3
forest [1] 26/12
forget [2] 40/8 40/14
Forgive [2] 11/4 19/21
forgot [1] 9/9
Form [3] 43/25 44/14 45/2
Form S1 [1] 43/25
formalities [1] 54/23
format [1] 77/6
FORT [1] 2/2
forth [2] 53/18 55/6
forthright [1] 57/25
Fortunately [1] 41/20
Forum [2] 35/5 35/13
found [4] 54/25 58/10 67/13 74/14
founded [1] 38/8
founder [1] 65/25
four [7] 9/21 24/14 32/13 42/2 50/4 51/17 60/9
fourth [2] 1/22 5/24
fraction [1] 65/25

franchise [5] 9/17 12/6 36/15 36/21 42/21
franchisee [8] 7/13 11/10 42/19 44/9 46/8 48/9 48/9 49/19
franchisee's [1] 72/9
franchisees [30] 7/4 7/17 8/24 9/1 9/6 9/23 11/2 11/9 12/16 12/21 15/3 18/12 20/22 21/11 24/14 24/14 26/4 26/16 38/23 46/24 50/1 50/4 66/15 69/11 69/22 70/1 70/12 71/10 73/10 73/12
franchisees' [3] 7/18 8/25 14/2
franchises [3] 9/18 11/11 65/16
FRANCISCO [1] 3/17
frankly [5] 42/13 43/4 46/20 51/9 53/1
fraud [8] 7/3 31/5 39/2 42/1 46/17 54/23 66/11 69/16
fraudulent [6] 30/21 31/6 32/3 32/13 32/16 66/12
free [1] 61/24
frequently [2] 51/13 51/14
friendly [1] 24/8
full [2] 15/20 63/23
fully [2] 55/6 60/16
fund [1] 16/7
fundamentally [2] 26/14 26/19
funded [1] 28/2
funds [1] 27/10
Funko [3] 38/3 60/5 60/6
funny [1] 24/7
furnished [1] 61/22
further [1] 11/16
future [1] 36/17
Fuzzy [20] 22/5 22/11 23/1 23/6 24/3 24/5 24/6 24/7 24/18 24/24 25/5 36/7 38/17 43/6 66/8 72/4 72/4 72/6 72/14 73/4
Fuzzy Panda [1] 66/8

**G**

gave [1] 59/8
gee [1] 68/7
GEISLER [20] 3/2 4/22 6/22 15/18 16/18 16/18 21/6 34/15 38/9 38/16 38/21 49/14 49/16 50/9 65/6 65/13 65/24 66/10 66/19 66/21
Geisler's [8] 18/6 21/15 34/10 38/19 38/25 39/2 65/18 66/17
GELLER [2] 2/5 4/11
general [1] 41/15
generally [1] 7/5
generously [4] 55/15 55/15 55/20 55/21
Genius [4] 72/15 73/5 75/6 75/11
genre [1] 71/20

get [22] 4/20 5/20 11/16 13/10 22/11 23/22 26/3 37/6 39/5 43/12 43/13 44/1 48/25 49/2 52/19 53/20 54/9 62/21 67/23 67/24 68/18 76/18
gets [2] 15/14 60/16
getting [6] 13/2 20/15 35/4 35/20 57/23 71/13
GIBSON [2] 2/14 4/15
gibsondunn.com [2] 2/16 2/16
give [9] 15/10 24/24 43/22 50/9 57/4 60/2 63/23 68/1 68/4
given [5] 12/18 20/12 21/6 21/22 57/2
gives [1] 16/21
giving [4] 7/24 8/4 18/25 61/20
gladly [1] 29/10
global [2] 18/12 44/19
go [15] 6/7 11/15 19/22 22/22 23/22 25/25 26/2 42/24 42/24 43/7 47/14 58/11 65/1 65/10 75/25
goes [6] 25/23 26/14 59/21 61/23 65/17 65/23
going [23] 5/23 8/8 9/20 11/1 17/21 19/19 20/10 21/11 25/20 30/13 41/21 41/22 48/10 50/2 50/2 50/7 52/6 60/22 63/21 63/25 68/20 73/22 74/7
gold [2] 16/8 16/20
Goldman [1] 22/24
good [22] 4/9 4/12 4/14 4/18 4/19 4/21 4/23 4/24 5/6 5/8 5/14 5/15 5/18 5/19 5/21 8/19 14/1 15/9 17/22 20/14 46/21 64/13
got [30] 6/11 7/22 10/17 11/9 11/10 14/2 16/22 19/7 19/11 19/19 21/14 26/2 30/17 34/3 34/21 34/22 37/12 37/16 40/16 47/13 47/13 49/14 58/8 61/13 68/11 70/10 73/25 74/5 75/15 75/25
GRABOWSKI [27] 2/11 4/16 10/4 15/19 16/1 16/11 16/12 18/4 22/1 27/7 28/2 28/24 39/12 39/15 39/21 39/25 51/6 54/4 54/4 56/5 56/18 57/9 57/11 57/13 57/14 58/7 59/6
Grabowski's [1] 37/5
grain [1] 22/8
grant [9] 27/22 67/8 67/9 67/12 67/17 67/17 67/22 68/13 68/15
GRAYSON [3] 2/11 4/17 22/2
great [4] 11/13 26/5 36/15 38/3
gross [1] 19/2
ground [1] 38/11
grounds [1] 27/23

groups [1] 5/22
guarantee [1] 44/10
guess [7] 20/3 39/16 40/22 41/5 46/2 47/19 47/25
gun [1] 71/19
guy [1] 21/6

**H**

ha [3] 21/10 21/10 21/10
had [39] 16/23 18/13 23/1 24/6 24/6 24/11 24/12 24/18 24/20 25/6 25/7 26/16 29/1 29/12 31/18 34/17 34/20 35/17 36/19 37/11 38/6 44/17 45/21 51/6 51/6 53/19 53/20 54/6 54/7 55/12 59/5 60/7 60/7 60/11 60/13 60/21 64/14 71/10 72/3
hamster [1] 45/22
hand [1] 9/22
handful [1] 66/14
hands [2] 21/10 40/13
happened [4] 19/5 19/14 69/18 71/14
happy [7] 29/20 30/5 51/20 51/25 69/7 73/14 76/17
harbor [1] 16/22
hard [6] 18/1 45/13 63/1 64/5 67/11 76/4
harder [1] 76/6
hardships [1] 18/13
hardwired [1] 60/12
Harvard [1] 23/20
has [20] 7/20 9/17 12/2 12/15 15/8 15/14 26/25 27/2 27/6 28/13 28/20 40/8 45/10 52/16 56/10 56/19 68/6 72/4 74/4 74/5
hasn't [1] 27/14
hate [1] 46/1
have [123]
haven't [4] 52/12 54/18 67/5 67/6
having [3] 27/19 51/19 63/25
he [58] 16/6 16/23 16/23 18/7 21/10 21/18 21/18 21/21 28/13 28/20 34/18 34/21 34/22 34/23 34/23 35/2 36/5 36/6 36/10 36/11 36/17 36/18 37/11 37/17 37/18 38/6 38/8 38/8 38/9 38/10 38/11 38/12 38/14 38/16 38/17 38/21 38/23 38/24 39/2 39/7 40/7 40/8 54/6 54/6 56/19 57/25 57/25 58/14 58/17 58/19 59/9 60/4 65/15 65/24 65/25 66/1 66/2 73/11
he's [6] 27/25 29/3 34/18 34/19 38/19 65/13
head [1] 66/4
health [1] 36/20

hear [10] 6/10 6/12 6/22 7/13 8/11 13/3 13/3 41/16 63/19 69/5
heard [5] 30/7 49/7 51/24 54/11 72/10
hearing [1] 74/23
hearsay [3] 7/22 7/22 7/23
heart [1] 22/13
heck [1] 42/14
hedge [2] 36/13 68/20
heightened [1] 41/8
HEIN [6] 3/15 5/16 5/18 63/20 63/21 64/19
held [4] 53/21 56/1 56/6 77/5
help [3] 6/4 6/17 18/23
helpful [2] 15/6 34/3
HENNIGAN [1] 3/3
her [4] 38/14 38/15 46/18 48/6
here [39] 5/21 6/1 12/7 12/9 12/10 13/7 14/18 14/22 19/1 20/11 21/12 21/14 23/25 27/11 28/5 28/8 30/4 30/21 37/20 38/7 45/19 46/22 47/15 47/24 48/16 48/17 48/18 52/21 52/23 53/23 53/24 54/3 59/7 59/15 59/21 59/22 60/13 68/6 75/10
here's [3] 9/15 46/19 46/19
hereby [1] 77/2
herein [1] 55/7
herring [2] 43/19 45/10
Hey [1] 33/10
high [5] 8/12 9/2 13/16 20/5 47/11
higher [1] 8/8
highest [3] 19/9 68/11 68/18
highlight [1] 49/15
highlighted [1] 44/22
him [9] 16/21 21/6 21/10 29/3 38/20 39/8 49/7 54/8 59/8
his [16] 16/1 16/2 16/19 16/19 18/5 18/5 36/11 36/13 37/12 37/15 37/16 39/5 39/24 46/18 57/24 66/1
history [1] 39/2
HOLCOMB [1] 1/4
hold [10] 5/3 24/10 37/6 37/11 39/8 44/1 52/7 58/4 60/24 62/11
holder [1] 59/17
holders [1] 56/15
holding [2] 50/12 50/15
holdings [2] 16/19 66/1
holidays [1] 76/18
holistically [1] 14/8
honestly [2] 43/18 43/19
Honor [59] 4/14 4/19 4/21 4/24 5/8 5/15 5/19 6/25 14/6 17/18 17/24 18/19 20/1 25/17 29/15 30/9 30/11 41/18 51/19 51/25 52/10 52/20 52/24 54/16 54/25 55/3 55/10 55/14 56/13 57/2

## H

Honor... [29] 57/5 57/6 57/19 57/23 58/9 58/24 58/25 59/23 60/15 61/7 61/19 62/15 62/20 62/21 62/25 63/15 63/22 64/21 64/22 64/25 65/2 65/11 66/4 66/13 67/2 75/19 75/21 76/8 76/12
HONORABLE [1] 1/4
hope [2] 6/25 22/24
hopefully [1] 48/14
hoping [1] 41/23
how [13] 20/25 21/20 21/23 24/17 24/19 43/11 47/5 64/7 64/15 68/15 69/14 70/10 71/8
Howard [2] 50/15 53/8
however [1] 31/23
HUESTON [1] 3/3
hueston.com [1] 3/6
huge [2] 26/2 32/10
humor [1] 6/3
hunting [2] 26/10 26/10
HW [3] 39/11 39/14 39/16
HyreCar [1] 38/4

## I

I'd [1] 73/10
I'll [22] 6/8 6/9 6/21 8/17 13/10 41/16 45/1 47/18 49/12 50/10 50/10 52/11 55/10 55/14 64/17 67/17 67/23 67/24 73/8 73/15 76/17 76/18
I'm [53] 5/23 8/7 10/11 10/13 13/12 18/11 19/24 21/17 22/19 29/20 30/4 31/25 32/12 34/22 35/11 35/11 36/14 37/10 40/4 41/14 41/21 46/13 48/19 48/21 51/19 51/25 52/3 52/3 52/6 52/11 54/3 54/10 58/1 58/23 61/11 61/21 62/12 62/20 62/24 68/12 68/16 68/20 68/21 69/1 69/1 69/5 69/5 69/7 73/17 73/22 74/7 74/10 74/23
I've [10] 6/1 6/11 22/3 28/21 28/23 38/20 46/14 56/13 58/3 68/16
i.e [1] 71/19
idea [5] 42/7 43/2 45/10 50/11 51/3
ideas [2] 14/15 26/15
identifies [1] 58/25
identify [1] 55/25
ignoring [1] 57/7
II [8] 3/8 5/11 29/19 52/4 54/10 56/2 56/5 56/18
immediately [4] 23/10 38/17 62/4 62/5
impact [2] 24/12 40/21
important [4] 9/12 12/12 51/1 62/8
importantly [1] 21/1

imprecise [1] 48/25
improved [1] 67/21
improving [2] 44/7 44/11
inaccurate [1] 34/21
INC [1] 3/14
include [3] 39/11 45/18 45/19
included [3] 59/5 62/1 62/2
including [3] 8/25 32/13 43/22
inconsistent [1] 46/12
incorporated [3] 23/10 24/23 53/6
incorrect [2] 34/24 36/12
increase [3] 45/3 45/4 45/6
incredibly [1] 8/11
independent [2] 14/10 14/16
indexed [3] 74/9 74/13 74/18
indicate [2] 65/15 72/8
indicates [1] 72/7
indication [2] 46/21 68/24
individual [8] 13/21 14/2 17/18 17/18 21/2 32/22 35/25 42/18
individually [2] 15/1 35/18
individuals [4] 36/5 39/23 51/13 51/15
individuals' [1] 29/23
infer [2] 36/2 36/22
inference [16] 8/5 15/10 15/21 16/13 17/3 18/14 18/25 34/24 37/19 71/8 71/11 71/18 71/18 71/21 71/22 72/1
inferences [2] 18/22 71/20
inflated [1] 66/11
influence [1] 59/20
information [17] 14/23 16/6 16/10 16/23 22/7 23/10 25/13 61/22 62/7 63/3 70/7 72/5 72/11 72/12 72/17 75/6 75/9
Innovation [1] 10/19
insert [1] 45/13
inside [7] 14/23 16/6 16/23 20/11 20/17 48/10 48/10
installed [1] 38/9
instance [1] 10/4
instant [1] 40/13
instead [3] 16/9 35/22 36/13
insufficient [1] 67/9
intent [9] 19/2 19/6 31/6 31/8 32/9 32/9 33/11 34/17 36/23
interesting [1] 54/25
internal [1] 44/4
interpret [1] 71/8
interrupting [1] 19/21
intervening [1] 68/9
interviews [1] 72/7
Intuitive [1] 48/7
invention [2] 74/4 74/4

INVESTCO [8] 3/7 3/8 3/10 5/11 55/25 56/2 56/4 56/5
investigation [1] 72/13
investing [1] 70/11
investment [1] 56/11
investments [1] 54/7
investors [3] 12/25 42/5 69/16
investors' [1] 36/10
involved [6] 7/4 28/14 35/2 38/11 38/13 54/7
involvement [1] 50/19
involves [2] 31/8 31/9
involving [2] 38/13 72/16
IPO [2] 16/20 18/5
IPO/SPO [1] 16/20
Iqbal [4] 8/9 8/9 28/9 55/22
Iqbal/Twombly [1] 8/9
irony [1] 55/2
irrefutable [2] 71/18 71/19
is [257]
isn't [8] 9/5 25/4 28/4 28/6 28/7 42/1 47/12 48/17
issue [9] 10/16 13/23 27/14 30/17 32/10 34/5 36/24 65/9 74/17
issued [1] 35/17
issuer [1] 61/24
issuing [1] 35/21
it [199]
it's [116]
Item [1] 4/4
iteration [1] 5/24
its [7] 12/15 12/16 21/23 37/14 43/16 43/16 53/17
itself [8] 7/13 22/6 25/4 27/3 50/14 53/19 53/21 71/1

## J

January [2] 36/6 36/19
jdaniels [1] 2/8
Jeff [1] 4/15
JEFFREY [1] 2/13
JEREMY [2] 2/4 4/10
jlombard [1] 2/16
job [1] 76/5
JOHN [3] 1/4 2/11 4/16
JOHN MELOUN [1] 2/11
join [2] 65/2 65/3
joined [3] 6/22 6/22 64/22
joint [1] 54/6
JONATHAN [2] 3/9 5/9
journalist [1] 14/16
judge [7] 1/4 48/6 58/10 58/20 58/20 58/21 58/22
Judge Cartwright [1] 58/20
Judge McKeown [1] 48/6
Judge Tiffany [1] 58/22
judge's [1] 68/21
judges [1] 26/11
Judicial [1] 77/7

July [1] 43/24
July 22nd [1] 48/24
jump [1] 17/10
jumps [1] 17/10
June [1] 36/7
June 27 [1] 36/7
just [49] 6/8 8/2 10/13 13/13 19/23 21/15 24/10 25/3 25/22 25/22 26/13 27/1 29/2 32/18 33/4 34/23 35/9 39/21 41/15 41/25 43/17 43/20 45/1 46/23 47/19 48/12 49/15 50/3 50/7 51/14 52/5 53/9 53/14 54/14 55/7 56/20 57/20 59/16 60/2 60/15 61/2 64/22 65/5 66/1 68/17 69/8 71/24 71/25 72/1
JWH [1] 1/7
jyoungwood [1] 3/12

## K

Kaiser [1] 38/14
keep [4] 6/7 8/17 41/22 53/14
kept [2] 58/13 59/13
kind [9] 13/20 15/7 15/22 22/3 46/1 46/2 46/7 46/10 68/18
kinds [1] 12/12
knew [4] 36/17 66/10 72/14 74/15
knobs [1] 49/18
knock [1] 14/1
know [93]
knowing [2] 67/12 72/14
knowledge [4] 9/11 74/16 74/17 74/22
known [2] 12/3 38/20
knows [1] 51/9
KO [7] 2/3 4/10 30/15 41/17 42/7 43/23 67/4

## L

Lack [1] 54/22
lacking [2] 20/9 20/11
language [1] 45/14
large [1] 65/24
largest [2] 38/10 56/15
last [4] 45/2 49/12 50/10 55/19
later [4] 8/13 13/3 17/11 30/5
LAUDERDALE [1] 2/2
Laughter [1] 17/25
law [33] 9/12 11/15 13/13 14/7 17/18 19/10 20/15 22/23 23/8 23/17 23/23 24/23 25/13 25/17 26/1 28/11 28/17 30/23 31/11 31/17 31/20 31/22 37/24 39/23 45/11 47/17 47/21 48/13 49/4 50/13 70/22 70/24 73/24
laws [1] 12/23
lawsuits [6] 7/18 8/25 9/7 12/23 14/3 24/22
lawyers [1] 20/14
lay [1] 40/12
layer [1] 53/25
layperson [2] 72/19

75/8
lead [1] 4/11
leadership [1] 48/14
least [8] 12/11 14/17 17/22 28/9 34/25 60/8 68/14 71/22
leave [5] 67/10 67/17 67/22 68/1 68/18
left [3] 23/23 52/24 64/15
legal [3] 23/7 51/1 71/16
length [1] 26/5
less [2] 16/18 18/15
lesser [2] 33/13 66/15
let [23] 6/6 6/9 6/14 7/1 13/3 15/13 21/15 22/4 25/22 28/15 29/9 30/12 37/6 41/14 42/6 42/7 44/1 57/6 62/14 62/20 64/15 67/4 67/15
let's [9] 6/5 21/18 25/2 48/19 64/3 64/3 64/6 64/10 64/14
level [7] 6/4 7/8 7/9 8/12 9/2 38/11 47/19
LEXINGTON [1] 3/11
liability [5] 28/17 29/2 31/9 31/14 31/16
liable [3] 28/20 39/18 43/14
library [2] 74/13 74/18
licensing [1] 44/8
like [25] 7/21 14/16 19/14 21/12 24/7 25/20 28/18 28/24 28/24 29/2 29/3 31/13 33/9 36/13 47/1 47/6 48/12 49/8 50/22 59/15 60/8 63/18 66/21 68/20 68/23
likely [4] 18/11 18/15 18/22 19/8
limitations [1] 67/20
line [3] 53/24 69/9 69/9
lines [2] 40/10 61/23
list [3] 59/21 60/4 60/5
listed [1] 60/3
listings [1] 72/25
lists [1] 59/1
Literally [1] 64/4
litigated [1] 46/15
litigation [6] 1/8 4/6 20/13 39/2 46/9 47/10
little [12] 6/11 13/2 19/17 20/10 25/24 45/20 45/22 46/8 46/11 47/20 51/1 73/22
LLP [5] 2/5 2/14 3/3 3/10 3/16
logically [2] 34/6 55/9
logs [1] 47/14
LOMBARD [3] 2/13 4/15 6/15
London [2] 23/13 23/16
London School [1] 23/13
long [4] 53/24 59/12 64/15 70/22
longer [1] 70/24
look [16] 14/8 22/17 25/18 27/19 31/11 36/2 36/13 37/3 43/7 43/24 49/4 53/3 53/4 60/5

**L**

look... [2] 70/18 76/2
looked [3] 12/3 58/3 72/23
looking [1] 7/23
looks [1] 60/8
loop [1] 56/5
Lorenzo [1] 70/25
LOS [1] 3/5
lose [4] 40/23 40/24 41/7 59/4
loss [4] 22/4 22/11 22/15 72/3
lot [5] 6/1 8/15 19/12 28/10 41/20
louder [1] 5/7
love [1] 17/23
lower [1] 50/7
LP [4] 3/7 3/8 5/10 5/11

**M**

macro [1] 25/23
mad [1] 24/15
Madam [1] 63/17
made [30] 7/11 7/17 7/20 8/24 9/6 9/7 9/7 10/8 11/23 12/2 13/17 16/12 23/2 25/12 26/17 33/9 34/23 35/15 36/5 38/23 38/24 47/11 56/20 59/3 67/5 67/6 68/6 68/16 69/13 72/17
mails [1] 20/12
major [1] 69/9
majority [2] 16/1 60/6
make [22] 7/6 13/24 18/10 19/24 21/6 25/22 27/1 27/2 27/10 37/19 42/25 43/3 43/4 45/14 52/20 54/17 56/3 56/4 62/6 62/11 65/5 69/8
makes [11] 18/14 19/12 52/20 53/4 53/9 59/23 63/3 70/19 73/11 75/6 76/5
making [7] 32/12 36/18 42/12 43/17 45/9 65/18 68/12
managed [1] 39/7
management [6] 38/11 53/16 55/24 57/20 59/20 65/16
managing [1] 56/18
manipulate [1] 32/9
many [7] 12/23 20/25 21/23 26/17 45/1 53/21 60/2
March [2] 36/7 36/19
MARK [2] 2/11 4/16
market [22] 7/5 7/12 12/3 13/1 16/4 16/9 16/12 18/5 18/8 22/8 23/12 24/12 24/20 24/22 25/2 25/13 26/6 26/17 26/21 46/12 72/13 75/1
markets [1] 43/11
massive [1] 16/3
match [2] 22/16 22/20
material [8] 6/1 14/23 16/5 26/23 26/24 26/25 70/8 70/8

mathematical [1] 50/5
matter [7] 7/7 11/23 13/13 23/17 24/23 25/13 77/5
mattered [1] 23/3
matters [1] 9/19
may [7] 14/1 24/17 24/17 36/16 42/9 42/19 52/16
maybe [8] 6/11 9/21 9/22 12/7 16/22 46/11 48/14 49/18
mcelio [1] 2/16
McKeown [1] 48/6
me [55] 6/3 6/4 6/7 6/11 6/13 6/14 6/17 7/1 7/7 8/7 8/17 11/1 11/4 13/3 13/20 15/7 15/13 17/10 17/20 18/23 19/21 21/15 22/4 25/22 28/15 29/8 29/9 30/12 30/14 33/19 35/11 37/1 37/6 41/14 42/6 42/7 42/7 44/1 52/13 57/6 61/13 62/14 62/21 63/1 64/7 64/15 67/4 67/11 67/15 67/18 68/1 68/4 68/9 76/1 76/6
mean [19] 9/7 19/24 21/3 24/9 27/19 28/7 28/13 38/7 38/12 39/25 40/23 43/6 43/6 47/14 49/17 50/6 51/2 73/9 74/24
meaning [3] 50/20 50/20 50/21
meaningful [1] 17/1
means [5] 19/11 60/25 68/17 69/2 72/21
meant [3] 19/3 26/11 73/9
media [1] 70/15
medieval [1] 46/2
meet [2] 23/19 48/4
meeting [1] 50/5
MELOUN [16] 2/11 4/16 10/5 15/18 15/20 15/25 17/22 18/3 22/1 34/16 34/18 35/2 36/4 36/5 36/11 43/23
Meloun's [2] 36/23 73/11
member [1] 65/16
memo [4] 21/15 21/23 34/11 50/8
memos [8] 20/21 20/24 21/16 34/11 49/13 49/16 66/13 66/14
mention [1] 54/12
mentioned [2] 21/13 49/14
merely [1] 39/6
merit [1] 46/14
met [2] 48/17 74/19
metaphor [1] 47/5
MICHAEL [3] 2/13 4/15 41/19
microphone [1] 4/20
middle [2] 61/8 61/21
midst [2] 18/12 71/9
might [4] 5/24 16/9 47/9 48/13
mind [6] 19/1 55/12

65/18 65/21 66/17 67/6 minimum [1] 51/15
minor [1] 70/19
minority [3] 58/6 59/16 59/16
minute [1] 64/6
minutes [1] 64/17
mislead [1] 70/11
misleading [7] 26/21 27/2 34/21 38/23 39/1 69/21 70/9
mismatch [1] 26/15
misses [1] 7/14
misstatement [3] 7/10 20/4 45/21
misstatements [5] 42/5 69/10 69/15 70/21 71/1
mistake [1] 58/24
mistaken [1] 61/11
misunderstood [2] 43/13 43/14
MNPI [1] 16/5
modest [1] 10/25
momentarily [1] 52/19
monk [1] 46/2
MONTGOMERY [1] 3/16
moral [1] 19/13
more [19] 6/4 7/5 18/11 18/21 19/8 20/4 26/14 28/10 29/8 41/14 52/13 52/16 52/22 56/13 62/8 66/16 68/25 69/6 75/18
morning [16] 4/9 4/12 4/14 4/18 4/19 4/21 4/23 4/24 5/6 5/8 5/14 5/15 5/18 5/19 64/13 65/4
MORRIS [2] 2/12 4/17
most [11] 6/23 11/11 15/14 15/14 16/14 16/17 18/4 20/6 21/1 34/14 71/20
motion [17] 6/21 8/10 27/23 40/22 47/16 61/17 62/4 66/10 67/16 67/17 67/23 67/25 68/3 68/14 68/14 68/16 76/3
motions [7] 5/22 40/22 67/7 67/8 67/12 75/18 76/18
motivated [1] 14/21
MOVANT [1] 2/2
moving [1] 6/20
Mr [1] 6/15
Mr. [92]
Mr. Celio [5] 6/19 6/23 30/8 60/24 66/2
Mr. Celio's [2] 65/3 69/10
Mr. Geisler [18] 6/22 15/18 16/18 16/18 21/6 34/15 38/9 38/16 38/21 49/14 49/16 50/9 65/6 65/13 65/24 66/10 66/19 66/21
Mr. Geisler's [8] 18/6 21/15 34/10 38/19 38/25 39/2 65/18 66/17
Mr. Grabowski [24] 10/4 15/19 16/1 16/11 16/12 18/4 22/1 27/7 28/2 28/24 39/12 39/15

39/21 51/6 54/4 54/4 56/5 36/18 57/9 57/11 57/13 57/14 58/7 59/6
Mr. Grabowski's [1] 37/5
Mr. Hein [3] 5/18 63/21 64/19
Mr. Hein --Mr. Zaccaro [1] 63/20
Mr. Ko [5] 30/15 41/17 42/7 43/23 67/4
Mr. Lombard [1] 6/15
Mr. Meloun [14] 10/5 15/18 15/20 15/25 17/22 18/3 22/1 34/16 34/18 35/2 36/4 36/5 36/11 43/23
Mr. Meloun's [2] 36/23 73/11
Mr. Youngwood [3] 5/12 5/14 52/2
Mr. Zaccaro [4] 4/23 30/10 64/14 65/1
Ms. [2] 22/2 61/13
Ms. Grayson [1] 22/2
Ms. Strauss [1] 61/13
much [12] 5/6 8/16 10/15 20/23 20/25 21/22 23/23 58/11 64/8 68/1 75/23 76/20
muffed [1] 48/2
must [6] 7/11 17/4 45/18 45/19 48/17 70/20
my [41] 6/2 8/3 8/3 8/20 9/11 11/16 12/14 13/10 13/11 13/14 13/20 14/8 15/7 17/23 19/3 20/3 21/10 26/3 28/21 28/22 31/2 31/21 39/20 40/13 41/13 42/24 45/8 48/7 48/13 48/13 52/1 52/20 55/17 58/24 59/3 65/23 67/6 67/15 68/4 68/10 75/5
myself [1] 19/4

**N**

name [2] 49/1 63/5
named [2] 15/16 65/14
nature [2] 29/23 57/8
necessarily [3] 38/5 40/23 40/24
necessity [1] 50/5
need [18] 10/12 12/7 22/16 27/20 29/15 29/24 36/12 40/3 53/11 53/22 54/1 63/17 64/8 69/6 71/18 71/19 76/7 76/13
needs [3] 22/20 53/11 70/18
negligence [1] 31/9
Nektar [2] 22/9 25/15
never [8] 25/18 28/23 42/10 43/2 43/8 68/20 73/9 73/12
new [10] 3/11 3/16 14/22 22/7 24/1 24/4 24/5 25/11 25/15 74/5
news [3] 14/12 14/18 14/20
newspaper [2] 24/3

47/24
next [6] 4/20 8/20 13/20 15/7 18/4 66/13
Ninth [17] 14/8 19/6 27/6 27/14 31/23 47/22 48/5 48/5 48/16 50/16 53/1 53/2 53/14 70/22 70/23 72/16 75/13
Ninth Circuit [9] 27/6 27/14 48/16 53/1 53/2 53/14 70/22 70/23 72/16
no [48] 1/7 9/16 16/5 19/22 19/22 20/17 21/18 21/19 21/25 24/12 24/20 25/7 25/8 27/25 28/14 28/16 29/5 30/3 30/9 32/7 33/24 36/12 37/14 38/18 39/9 39/22 40/24 43/3 43/4 44/9 45/10 47/12 50/15 57/20 57/20 57/21 59/7 61/16 61/16 63/22 67/20 70/24 73/10 75/19 75/21 76/8 76/15 76/16
No. [3] 4/4 4/5 68/7
No. 1 [1] 4/4
No. 4 [1] 68/7
nobody [2] 35/24 42/11
nodding [1] 66/4
non [1] 9/11
non-verified [1] 9/11
None [3] 9/19 48/4 73/19
nonobvious [1] 74/5
nonpublic [3] 14/23 16/6 72/5
nonspeaking [1] 28/24
noon [3] 6/11 64/1 64/5
normal [2] 17/8 24/11
normally [4] 10/6 21/3 47/16 47/22
Northern [1] 50/17
not [117]
note [1] 6/21
noted [2] 22/3 64/22
nothing [32] 12/9 12/10 14/22 14/22 14/23 21/12 21/25 23/5 23/25 24/5 25/11 29/1 30/11 37/12 37/13 37/14 37/16 42/4 49/8 49/16 50/22 54/11 54/24 55/13 56/8 56/15 64/21 65/17 66/17 69/1 74/15 76/13
notice [1] 52/8
novel [1] 74/5
November [2] 35/5 35/13
November 2022 [1] 35/13
now [12] 10/16 22/22 28/12 28/23 35/9 35/22 39/24 61/21 62/24 63/4 64/6 74/15
nowhere [1] 59/21
number [6] 36/9 46/24 46/25 53/3 61/14 63/6
numbers [2] 34/22 70/10
Nvidia [1] 53/4

**N**

NY [1] 3/11

**O**

o0o [1] 4/3
obligation [1] 70/6
obscure [1] 35/25
obvious [1] 74/6
obviously [5] 17/14 32/19 34/18 46/17 52/11
October [3] 45/7 52/18 58/10
October 28th [1] 52/18
odd [1] 15/23
off [3] 14/14 52/25 64/15
offering [7] 16/3 37/12 38/7 39/8 50/12 60/25 69/14
offers [1] 69/20
officers [1] 17/9
OFFICIAL [2] 1/21 77/12
Often [1] 54/23
Oh [1] 43/7
okay [28] 4/12 5/20 7/1 8/22 9/5 13/4 15/5 15/25 23/17 27/4 29/7 36/24 37/10 41/13 41/13 44/2 44/25 49/11 62/21 62/25 64/3 64/19 65/1 67/1 71/6 73/23 75/11 76/13
omission [3] 26/23 26/24 26/25
omissions [3] 27/3 70/21 71/1
once [1] 65/14
one [59] 9/22 11/9 11/10 14/1 15/2 18/18 19/9 20/6 26/9 27/15 27/15 31/8 31/8 33/8 35/9 35/19 35/19 35/22 36/4 36/5 37/6 38/3 38/4 38/23 38/25 39/6 39/9 42/8 43/3 43/4 44/1 44/13 45/1 45/2 46/16 46/16 47/1 47/6 48/12 48/12 49/14 50/3 50/12 52/7 53/3 55/11 57/15 59/4 59/12 60/17 62/11 63/18 66/2 66/7 67/4 70/19 71/22 72/4 74/25
one percent [1] 47/1
ones [3] 8/10 34/24 52/23
only [15] 7/4 15/16 15/16 30/25 39/15 43/21 51/17 52/17 55/15 56/13 61/8 62/6 63/3 65/14 65/25
oOo [1] 76/23
open [4] 16/9 16/12 18/5 18/8
operating [3] 23/7 44/7 44/11
operations [1] 18/14
opinion [2] 48/13 74/12
opportunity [1] 63/24
opposed [1] 60/12

opposing [1] 71/22
opposite [3] 48/19 54/20 57/13
opposition [8] 33/16 33/25 54/14 57/12 61/17 62/4 62/12 67/24
optimistic [1] 15/4
Orange [1] 24/1
oranges [1] 49/18
order [10] 10/17 10/17 10/21 11/5 13/6 14/3 22/19 68/23 70/14 70/15
ordinarily [1] 67/15
original [1] 23/2
other [37] 7/17 8/10 13/24 14/10 16/10 19/3 20/14 21/16 22/9 23/3 23/24 24/19 27/15 27/16 27/23 29/23 31/15 33/20 33/22 34/12 34/14 34/16 35/25 36/17 36/24 39/19 39/19 41/5 51/2 57/16 59/8 59/25 61/24 66/20 70/1 71/24 73/14
others [2] 34/8 60/3
otherwise [1] 73/14
our [35] 8/15 11/11 12/11 12/20 12/21 14/12 18/18 19/18 22/17 22/18 23/5 24/11 24/13 24/14 33/8 33/25 36/16 36/20 39/24 42/21 43/24 44/14 45/2 45/11 46/24 49/15 50/18 55/14 59/20 59/25 60/1 60/14 61/17 62/4 75/14
ourselves [1] 42/22
out [43] 9/23 10/13 11/16 14/1 21/7 23/6 24/23 25/10 26/12 27/19 30/3 32/6 33/20 36/7 38/3 38/5 38/18 40/25 41/20 42/18 42/24 42/24 43/2 43/16 45/12 45/13 48/5 51/3 51/16 53/23 54/19 55/17 56/9 56/11 57/8 57/17 58/7 58/16 65/12 72/16 72/24 74/6 74/7
outlined [1] 40/7
outside [1] 49/8
over [13] 11/16 14/11 14/11 37/5 37/15 39/12 47/10 47/18 50/1 53/8 53/15 54/8 56/19
overall [1] 46/6
Overtalking [2] 29/11 52/14
OVERY [1] 3/15
own [3] 37/15 72/7 72/13
owned [4] 43/1 43/17 44/17 45/6
owner [1] 56/12
ownership [2] 36/25 44/5

**P**

p.m [1] 76/22
page [17] 33/25 34/1

44/15 44/22 45/2 50/18 55/3 55/16 58/12 61/11 61/11 62/3 62/18 62/19 62/23 77/6
page 15 [4] 61/11 61/15 62/3 62/18
page 153 [1] 55/3
page 18 [1] 62/23
page 19 [1] 50/18
page 20 [1] 33/25
page 252 [1] 44/15
page 26 [1] 58/12
page 273 [1] 34/1
page 309 [1] 45/2
pages [9] 26/1 26/3 26/4 26/8 46/20 57/2 62/22 72/24 73/4
pagination [1] 44/4
PALO [1] 2/15
Panda [20] 22/5 22/11 23/1 23/6 24/3 24/5 24/6 24/7 24/18 24/24 25/5 36/7 38/17 43/6 66/8 72/4 72/4 72/7 72/14 73/4
pandemic [7] 18/12 38/22 71/9 71/12 71/12 71/13 71/14
paper [2] 13/19 46/16
papers [1] 19/15
Paracor [1] 53/15
paragraph [16] 37/2 37/4 37/18 55/1 55/2 55/7 55/25 56/2 56/3 60/19 61/9 61/19 61/20 62/9 63/3 73/11
paragraph 344 [3] 37/4 37/18 55/2
paragraph 345 [2] 61/9 62/9
Paragraph 35 [1] 56/2
Paragraph 36 [1] 56/3
paragraphs [11] 37/2 50/23 51/17 55/16 55/17 55/17 56/13 60/17 69/11 69/24 72/6
PARKER [3] 1/20 77/12 77/12
part [6] 17/9 26/21 36/23 47/7 47/8 54/15
participating [1] 60/24
participation [2] 53/10 53/10
particular [6] 11/3 11/17 11/18 13/9 66/19 74/2
particularity [1] 9/20
particularized [3] 7/24 8/4 18/24
parties [1] 40/6
parties' [1] 68/8
partner [1] 56/18
PARTNERS [2] 3/8 5/11
party [2] 6/20 65/13
pass [1] 47/18
passage [1] 47/9
past [1] 59/15
patent [3] 73/17 73/24 74/4
patentee [3] 74/15 74/16 74/21
patents [1] 74/1
PATRICK [2] 3/15 5/16

patrick.hein [1] 3/18
pause [4] 33/18 34/4 34/21 37/7
payroll [2] 45/5 50/20
PE [1] 51/10
penalty [1] 9/8
people [15] 10/9 11/12 12/13 12/24 14/13 20/25 21/23 28/25 29/25 46/25 48/4 48/20 48/24 49/8 59/6
per [1] 47/23
per se [1] 47/23
percent [9] 16/19 44/19 47/1 56/7 56/7 59/13 60/7 66/1 70/3
percentage [2] 10/9 59/15
perfectly [1] 18/6
performance [1] 36/1
performing [1] 69/15
perhaps [4] 7/17 36/4 53/2 67/19
period [8] 16/12 20/22 38/9 42/12 57/1 66/3 66/16 66/18
perjury [1] 9/8
person [14] 28/13 29/3 40/8 49/1 51/13 52/25 54/5 55/5 55/9 55/20 57/9 58/8 60/19 61/5
personally [2] 21/7 28/20
PETER [2] 2/3 4/10
phone [1] 38/21
phrase [1] 40/9
pick [2] 52/6 64/15
piece [7] 15/13 30/13 32/13 32/17 68/14 74/12 76/10
piercing [1] 54/20
pigs [1] 26/11
Pilates [2] 11/11 35/18
piled [2] 7/22 7/22
pincite [1] 70/24
pitch [1] 72/9
pko [1] 2/7
place [2] 44/13 44/13
places [1] 7/17
plaintiff [11] 2/11 4/8 15/8 42/8 52/23 59/3 63/23 67/18 67/24 68/3 68/11
plaintiff's [5] 15/9 28/1 30/12 62/3 62/12
plaintiffs [9] 4/11 8/11 8/23 9/5 13/22 17/12 23/18 28/18 66/8
plan [2] 16/21 16/23
plans [1] 59/20
plausibility [2] 28/4 28/11
plausible [3] 28/3 28/10 71/20
plausibly [1] 22/11
plead [13] 8/11 17/12 20/7 22/11 32/23 33/2 33/21 34/7 37/1 51/11 55/20 57/3 57/17
pleaded [12] 10/7 12/19 16/25 17/15 21/8 21/18 25/3 26/8 42/4 51/7 51/17 68/13

pleading [19] 12/17 17/21 18/21 20/6 26/10 30/19 31/1 31/5 31/19 32/3 33/13 40/20 41/8 42/9 47/18 67/9 67/20 68/5 68/7
pleadings [3] 22/17 57/11 75/14
please [11] 4/7 4/20 6/3 6/7 8/2 8/7 19/22 35/12 61/2 65/1 65/10
pled [14] 26/14 32/8 34/17 35/24 38/12 41/1 54/18 54/20 55/12 57/7 69/17 69/23 71/21 72/5
plenty [1] 49/4
podium [1] 51/21
point [41] 8/12 8/20 9/21 9/25 13/14 14/12 16/6 19/5 20/3 23/25 24/17 25/23 26/15 30/23 33/6 37/1 38/1 38/14 39/10 42/12 42/16 42/17 43/18 45/8 47/6 47/20 48/23 52/21 53/23 56/9 56/11 56/20 60/15 62/21 65/12 65/23 68/16 70/12 70/19 73/16 75/12
pointed [2] 54/19 55/2
points [5] 50/11 52/20 59/24 65/5 69/8
POLICE [1] 2/2
policies [2] 53/16 59/20
portion [2] 44/22 55/8
position [15] 10/12 13/6 13/11 14/24 18/1 25/19 27/18 27/19 32/11 41/11 48/8 52/23 59/13 59/14 59/17
positions [3] 6/5 59/11 60/12
positive [1] 48/14
possible [2] 17/11 41/7
possibly [1] 63/9
postdated [1] 71/12
potentially [1] 74/10
power [4] 40/10 53/7 53/12 59/14
powerful [2] 51/13 51/14
powers [1] 56/19
practice [3] 9/12 11/15 67/16
practices [1] 35/15
precise [1] 18/23
predated [1] 71/12
prejudice [2] 54/17 68/3
presentation [2] 25/9 65/4
presented [1] 64/23
President [1] 47/11
President Clinton's [1] 47/11
PRESIDING [1] 1/4
press [2] 38/16 38/24
Press Release [1] 38/16
pressed [1] 19/4
presumably [1] 10/5
presumed [4] 74/16 74/21 74/25 75/1
presumes [1] 73/25
presumption [2] 23/9

**P**

presumption... [1]  23/10
pretty [5]  15/12 41/21 47/15 47/21 73/17
prevail [1]  53/23
previous [1]  40/15
price [2]  23/11 24/23
primarily [2]  28/20 45/3
primary [4]  29/23 53/5 53/6 53/8
print [1]  63/1
printed [3]  72/24 74/1 74/9
prior [12]  20/22 35/16 73/17 73/21 73/25 73/25 74/7 74/8 74/13 74/17 74/20 74/20
private [6]  7/12 16/7 28/17 28/18 47/9 51/10
probably [6]  6/14 6/23 29/8 35/1 52/22 66/5
problem [3]  49/9 67/20 71/11
problems [1]  26/9
proceeding [4]  11/3 11/4 11/7 12/17
proceedings [3]  1/11 76/22 77/5
proceeds [3]  22/22 37/17 37/18
process [1]  68/8
professional [1]  38/20
professionalism [2]  38/19 38/25
pronunciation [1]  6/17
proof [1]  25/4
proper [1]  39/14
properly [2]  17/12 33/21
proposed [5]  22/18 22/19 38/14 71/7 74/4
proposition [2]  25/5 25/16
prospectus [1]  61/24
protected [1]  12/24
protection [2]  10/18 12/23
prove [5]  32/9 32/19 32/21 32/23 33/2
provide [1]  70/7
provided [3]  22/7 62/7 70/2
providing [1]  63/4
PSLRA [3]  30/19 65/22 66/24
public [24]  7/17 7/20 8/14 14/23 16/2 24/1 24/2 26/17 37/11 38/7 39/8 43/8 69/13 70/11 72/11 72/12 72/18 72/18 73/2 73/16 74/24 74/24 75/6 75/7
publication [2]  74/1 74/9
publicly [2]  12/3 49/17
publish [1]  14/17
published [2]  38/17 74/12
pull [2]  5/5 45/12
purchase [1]  7/11
purchases [4]  16/12 18/5 66/3 66/9
purpose [2]  12/20 22/15
purposes [4]  12/13

12/16 13/7 74/24
pursuant [1]  77/2
push [3]  8/7 8/7 28/2
put [9]  12/5 24/6 24/25 27/18 47/14 59/6 60/8 60/8 76/4
puts [2]  24/4 46/18
putting [4]  8/15 9/4 42/18 57/19
puzzle [2]  26/10 47/18

**Q**

qualifies [1]  27/7
quality [4]  12/15 17/21 18/21 75/23
quantity [1]  65/24
question [23]  6/3 6/8 7/1 10/10 11/1 13/21 15/7 15/8 17/11 18/9 20/10 21/14 22/4 22/14 31/2 31/21 34/5 39/20 40/15 67/4 68/10 68/21 72/3
questions [18]  6/6 6/7 8/20 29/12 29/14 29/16 29/20 30/7 35/5 35/14 35/20 38/18 41/13 41/20 49/13 51/20 69/7 73/14
quick [4]  55/15 64/2 67/4 69/8
quicker [1]  6/12
quickly [1]  76/19
quite [3]  28/25 53/1 57/25
quote [8]  19/15 26/7 44/4 61/9 61/19 62/1 63/4 71/21
quotes [1]  26/5
quoting [3]  18/11 45/3 61/21

**R**

R-U-B-K-E [1]  31/25
raised [1]  54/13
rambling [1]  22/3
range [1]  10/8
rank [1]  17/21
re [7]  1/7 4/5 33/8 36/15 44/8 55/6 70/23
re-alleges [1]  55/6
re-franchise [1]  36/15
re-licensing [1]  44/8
reach [1]  27/20
reaching [1]  46/22
reaction [2]  25/2 70/13
read [6]  6/1 19/15 55/8 55/19 67/5 72/5
readily [3]  72/18 73/2 75/7
realize [1]  25/24
really [21]  20/25 21/1 24/5 25/12 28/25 29/5 34/13 43/4 45/13 46/21 46/22 48/21 49/15 49/17 50/9 51/10 54/10 55/13 67/18 74/24 75/25
realm [1]  28/3
reason [3]  21/7 54/1 72/1
reasoning [1]  14/21
reasons [3]  34/16 54/5

67/25
receipt [3]  21/15 34/10 34/14
receive [2]  35/19 35/19
recess [2]  64/11 64/12
recklessness [3]  19/2 19/5 34/25
recognition [1]  33/10
recognize [1]  52/17
recognized [1]  70/23
record [10]  4/8 5/2 8/1 11/21 16/16 21/12 23/15 25/10 33/1 65/8
red [2]  43/19 45/10
refer [1]  5/23
referred [3]  52/5 66/13 74/2
referring [2]  62/18 62/20
Reform [5]  7/24 8/6 10/1 13/15 47/10
refranchising [1]  44/12
regarding [1]  65/19
registration [2]  27/7 39/3
regulate [1]  12/2
regulations [1]  77/7
regulator [2]  12/6 46/9
related [1]  29/17
relates [1]  62/6
relating [1]  61/22
release [2]  38/16 38/24
relevant [1]  20/11
reliability [5]  7/21 8/21 10/16 13/23 47/20
reliable [5]  10/22 10/23 13/7 13/25 48/17
reliance [1]  23/8
relies [1]  24/4
rely [5]  8/23 9/5 10/10 12/25 13/22
relying [2]  23/18 23/18
remedy [1]  12/22
remember [7]  9/16 11/9 17/3 19/16 23/6 40/12 74/11
remove [1]  35/8
repeat [2]  14/19 53/5
repeated [1]  14/14
repeats [2]  14/20 55/5
Repetition [1]  14/15
reply [2]  50/18 57/12
report [19]  14/4 14/20 22/5 22/7 22/11 23/25 24/2 25/19 29/11 36/8 38/17 46/10 52/14 66/8 70/16 70/17 72/4 72/4 72/17
reported [2]  26/18 77/4
REPORTER [10]  1/21 5/1 7/25 11/20 16/15 23/14 32/25 63/17 65/7 77/12
REPORTER'S [1]  1/11
reports [4]  47/25 48/1 48/2 70/15
represent [3]  6/20 29/21 52/4
representations [3]  7/4 30/22 31/11
representing [1]  44/18
requests [7]  5/1 7/25 11/20 16/15 23/14

32/25 65/7
require [3]  20/9 20/7 28/10
required [10]  8/11 19/1 32/23 33/2 45/23 46/1 46/3 46/4 48/22 70/3
requirement [5]  7/15 23/1 32/8 55/23 66/24
requirements [1]  11/8
requires [4]  10/1 14/8 20/4 45/11
reread [1]  76/1
research [1]  50/21
respect [8]  17/13 17/22 30/4 34/7 54/24 57/1 61/24 66/13
respective [1]  6/5
respond [1]  63/24
response [2]  36/12 36/13
responsible [1]  43/10
restricted [1]  45/6
restructure [2]  35/3 35/20
restructured [1]  35/7
restructures [1]  35/16
result [2]  31/14 31/15
results [2]  44/7 44/11
resume [1]  64/4
retain [1]  59/17
retained [1]  16/1
RETIREMENT [1]  2/2
revolution [2]  50/13 61/4
rgrdlaw.com [3]  2/7 2/8 2/8
rhetoric [2]  24/7 24/10
right [65]  4/18 6/19 10/4 10/7 12/25 15/15 15/18 15/21 15/24 16/4 16/5 16/8 16/20 19/5 19/17 20/4 21/2 21/20 22/13 22/16 22/20 23/3 24/2 24/4 24/8 24/14 24/17 25/1 25/9 26/2 26/3 26/23 28/20 29/24 30/2 30/17 32/1 32/14 35/19 37/22 43/6 43/8 45/22 46/19 48/12 48/15 48/25 49/21 50/1 50/20 51/7 51/8 53/19 53/20 59/5 59/8 60/8 61/12 62/2 62/12 62/21 64/6 64/13 75/22 76/17
rise [7]  7/24 8/4 15/10 18/25 50/9 64/11 76/21
river [1]  23/23
road [3]  28/2 60/21 70/5
ROBBINS [2]  2/5 4/11
rooting [1]  26/11
round [1]  75/23
Rub [1]  21/10
Rubke [1]  31/25
RUDMAN [2]  2/5 4/11
rule [11]  9/8 10/13 27/15 30/19 31/1 31/19 32/3 40/19 40/19 41/2 41/6
Rule 11 [1]  9/8
Rule 8 [2]  31/1 31/19
Rule 9 [6]  30/19 32/3 40/19 40/19 41/2 41/6
ruled [1]  27/14

run [1]  42/22
running [4]  29/5
runs [1]  16/6
Russia [2]  74/13 74/18

**S**

S1 [1]  43/25
safe [1]  16/22
said [40]  9/1 9/24 11/18 19/19 21/10 23/1 24/6 24/11 25/20 26/3 26/6 26/19 27/2 31/23 33/10 38/18 40/5 42/10 42/11 43/9 43/10 43/20 44/13 44/14 46/12 46/19 46/22 49/3 49/16 50/9 55/13 56/24 57/5 59/2 59/24 66/2 69/19 69/19 73/1 73/4
salaries [1]  45/4
sale [2]  7/11 38/6
sales [11]  15/15 15/17 16/2 16/19 17/2 17/8 18/5 18/6 65/23 66/9 72/9
salt [1]  22/8
same [16]  14/11 14/13 14/13 15/1 15/8 23/4 31/12 31/21 32/1 32/5 32/7 34/5 36/10 45/2 56/2 64/18
SAN [2]  2/6 3/17
SANTA [4]  1/3 1/12 1/23 3/19
saw [1]  21/2
say [51]  9/1 10/6 11/8 11/17 12/25 13/11 17/22 18/2 18/10 18/14 19/23 21/5 21/10 24/8 24/11 26/20 30/20 33/5 33/21 33/24 41/14 41/21 42/13 43/12 43/13 46/4 46/6 46/14 49/7 50/10 51/12 52/17 55/21 56/1 56/8 56/14 56/15 56/17 56/22 57/6 57/13 57/18 58/2 62/18 66/17 67/24 69/5 70/20 73/8 74/23 75/4
saying [19]  10/13 12/20 13/12 14/18 21/23 25/18 31/13 31/17 31/25 36/8 36/19 42/15 43/2 47/5 48/21 66/5 68/16 69/1 75/9
says [19]  12/6 12/8 14/22 20/24 25/14 26/7 43/7 45/17 46/5 49/6 60/24 62/10 62/22 62/22 68/10 69/18 69/18 69/19 72/20
SBO [1]  27/6
scenario [1]  8/10
scheme [18]  15/22 15/23 19/16 19/23 20/3 20/6 20/18 26/21 42/4 45/16 45/20 45/22 69/23 69/23 69/25 70/20 71/2 71/5
school [4]  23/13 23/16 23/20 28/11
scienter [31]  8/5 15/8 15/11 15/21 16/13 17/4

**S**

scienter... [25] 17/12 17/13 17/21 18/15 18/20 18/23 19/1 21/16 21/20 32/19 32/21 33/3 33/11 33/21 34/6 34/7 34/12 50/9 65/9 65/22 66/20 66/24 68/13 71/19 71/21
screen [1] 63/2
se [1] 47/23
SeaWorld [1] 60/10
SEC [10] 12/8 20/13 22/18 24/12 24/19 25/6 28/17 42/14 49/19 49/20
second [6] 13/10 37/6 44/1 47/2 62/11 65/23
secondary [6] 16/2 29/2 37/11 38/6 50/12 60/25
section [3] 29/4 60/18 77/2
Section 15 [1] 29/4
securities [24] 1/8 3/14 4/6 7/3 7/5 7/10 7/14 12/1 12/22 28/17 30/18 30/25 31/6 31/16 31/19 32/8 40/20 41/3 42/1 43/11 47/6 47/10 69/16 70/16
securities-type [1] 47/6
security [2] 7/12 33/11
see [11] 12/9 12/10 18/3 21/3 33/15 42/14 43/7 50/25 64/14 68/2 68/23
seeing [1] 40/12
seek [2] 8/23 13/22
seem [1] 22/10
seems [2] 19/14 39/12
seen [1] 28/23
self [2] 46/2 70/4
self-flagellate [1] 70/4
self-flagellation [1] 46/2
sell [6] 15/20 15/25 16/7 42/22 60/22 65/24
seller [14] 14/19 25/19 27/8 27/25 36/8 46/10 47/25 48/1 48/2 70/16 72/17 72/19 72/23 73/5
selling [8] 17/7 17/7 61/22 62/7 63/4 63/6 63/7 65/16
sending [1] 35/14
sense [2] 19/12 42/20
sensible [1] 51/11
separate [2] 29/17 31/7
separating [1] 56/6
sequence [2] 35/4 71/9
seriously [1] 15/24
seriousness [1] 7/21
serve [1] 22/5
set [9] 11/3 12/24 13/16 13/21 14/13 19/18 47/21 55/6 67/15
sets [3] 11/9 16/3 48/5
settled [1] 11/23
settlement [2] 10/25 11/22
several [1] 66/2
shareholder [1] 38/10
shares [8] 15/20 15/25

16/2 16/8 56/1 56/10 60/23 63/6
she [3] 58/24 58/25 59/1
SHEARMAN [1] 3/15
sheet [1] 46/16
Sherman [1] 5/16
shop [1] 71/10
short [16] 6/8 8/18 14/19 14/24 25/18 36/8 41/22 46/10 47/25 48/1 48/2 70/16 72/16 72/19 72/23 73/5
shortly [2] 35/6 35/15
shot [1] 46/7
should [15] 10/24 27/11 27/13 27/15 30/2 30/18 30/20 31/11 32/3 39/15 54/17 58/7 59/3 67/9 68/17
Shouldn't [1] 39/21
show [8] 25/9 47/13 47/13 53/7 55/23 60/21 66/23 72/25
showing [1] 42/4
shows [2] 28/2 55/11
sic [3] 48/19 53/12 54/15
side [10] 6/6 12/5 12/5 20/14 23/24 29/9 46/16 46/18 51/2 51/23
sides [1] 6/9
sign [4] 36/20 37/15 39/7 60/22
signed [3] 20/25 39/3 56/22
significant [7] 53/17 53/20 53/23 53/25 54/1 57/21 59/1
significantly [1] 59/19
signing [1] 27/6
silent [1] 21/13
silly [1] 42/13
similar [3] 15/13 48/15 60/10
SIMONA [2] 3/10 5/10
Simona Strauss [1] 5/10
simply [4] 42/4 42/11 59/22 73/10
SIMPSON [3] 3/10 5/9 5/10
since [3] 27/14 38/20 53/22
single [2] 30/21 66/22
sinister [1] 25/1
sir [10] 4/9 11/6 11/6 30/14 30/16 33/17 37/9 75/13 76/15 76/16
sit [1] 50/10
sits [1] 58/4
situation [1] 60/10
six [2] 55/16 55/16
SIXTH [1] 3/4
size [1] 63/1
skis [1] 11/16
slice [1] 48/12
Slow [3] 8/2 9/14 61/2
slowly [1] 8/8
small [2] 26/16 46/24
smoke [2] 47/4 47/12
smoking [1] 71/19
SNAPDRAGON [10]

3/8 5/11 29/19 39/11 39/14 39/17 52/4 54/10 56/5 56/12
so [122]
sold [2] 16/18 65/25
sole [2] 40/8 40/9
solely [1] 63/5
some [30] 6/6 9/18 9/19 9/25 16/22 17/13 18/12 28/9 34/7 34/25 35/14 35/15 36/14 43/22 43/23 46/2 46/8 46/23 48/11 49/12 49/23 50/2 50/2 51/12 52/19 58/13 58/14 68/24 71/10 76/1
somebody [4] 9/24 21/9 58/4 74/14
somehow [4] 39/7 46/11 67/9 74/14
someone [11] 9/25 17/6 23/12 27/1 29/3 29/4 42/23 43/2 43/13 46/5 50/7
something [12] 9/24 12/7 25/15 25/20 27/1 27/2 27/24 33/8 40/10 42/15 47/1 70/6
sometimes [2] 27/17 67/23
somewhat [2] 23/4 38/2
somewhere [2] 34/22 72/6
sorry [7] 22/19 43/18 56/7 58/18 58/23 63/12 69/4
sort [19] 15/8 16/8 19/13 23/7 24/25 25/1 25/22 26/18 28/14 39/10 43/6 43/22 46/16 47/19 47/24 48/7 48/15 51/4 54/20
sound [2] 25/12 25/20
sounds [2] 5/6 24/7
source [1] 48/11
sources [5] 13/24 14/5 14/17 20/12 47/21
SOUTHERN [2] 1/3 60/11
space [1] 57/4
speak [3] 48/20 51/22 70/6
specific [8] 6/6 6/7 9/5 18/10 35/8 35/22 37/1 43/22
specifically [8] 33/10 34/1 34/14 38/13 49/3 66/18 68/25 69/18
SPO [7] 16/3 16/3 16/20 17/7 27/6 56/23 60/24
spoke [4] 15/18 49/1 49/2 49/11
sponsor [3] 58/15 58/25 59/5
sponsors [1] 59/12
squarely [1] 38/1
staff [1] 49/7
stage [1] 22/25
stake [2] 27/19 58/6
stand [2] 43/11 54/3
standard [22] 7/23 8/8 12/17 13/16 16/7 16/8 16/20 28/5 28/12 31/1

33/14 41/3 41/8 42/9 48/18 50/18 52/25 61/8 65/21 65/22 71/16 75/4
standards [9] 8/9 19/9 30/19 31/5 31/19 32/4 40/20 47/11 48/4
standing [1] 66/22
stands [1] 25/15
start [5] 6/14 7/1 35/4 35/20 52/24
started [3] 41/24 41/25 47/13
starts [2] 35/13 76/10
state [13] 4/7 7/2 9/9 9/10 12/21 19/1 28/15 36/17 57/12 65/18 65/21 66/17 72/10
stated [6] 14/7 25/17 30/23 31/11 34/23 39/16
statement [15] 9/5 14/11 17/17 22/17 26/23 27/7 31/22 38/15 38/24 39/3 42/10 43/3 69/20 70/7 73/11
statements [30] 7/12 7/16 7/21 8/13 8/16 8/24 9/24 10/7 12/2 12/21 13/21 14/3 14/10 22/18 23/2 36/19 38/23 39/1 43/21 45/12 45/18 46/15 65/19 65/19 66/12 66/19 69/13 69/21 69/22 70/1
STATES [4] 1/1 1/21 77/3 77/7
statistics [1] 69/14
statute [1] 67/19
statutory [2] 27/8 27/25
stblaw.com [1] 3/12
stenographically [1] 77/4
STERLING [1] 3/15
still [6] 30/3 41/4 42/2 72/21 75/8 75/10
stock [13] 14/24 15/15 15/17 17/2 23/11 24/24 36/25 45/6 56/7 56/10 65/23 65/24 66/11
stockholder [3] 61/22 62/7 63/7
stockholders [2] 63/4 63/8
stocks [1] 60/7
stop [4] 8/17 15/21 35/21 64/5
stopping [1] 8/20
story [1] 12/12
strategy [1] 36/16
STRAUSS [3] 3/10 5/10 61/13
street [3] 1/22 3/4 42/14
strict [1] 31/9
strong [7] 7/24 8/4 15/10 15/21 20/7 20/7 36/3
strongest [3] 35/1 36/4 39/6
structured [1] 23/8
students [1] 23/23
studied [2] 52/12 52/16
studio [7] 38/15 42/8 42/12 44/8 44/12 44/19

45/10
studios [14] 9/18 36/6 36/9 36/14 36/15 36/16 36/20 43/1 43/17 44/6 44/18 45/6 45/9 73/13
stuff [3] 20/16 24/25 70/17
stumble [2] 54/7 54/8
stupid [1] 6/2
subject [3] 9/8 30/18 33/13
submission [1] 76/3
submit [1] 73/15
submitted [2] 57/23 75/19
subset [1] 15/3
succeed [1] 42/23
successful [3] 11/11 44/10 57/8
such [8] 9/16 21/19 24/8 30/25 42/21 44/11 61/22 63/6
sue [1] 43/12
sufficient [5] 28/6 28/7 37/21 39/17 66/23
suggests [1] 20/18
SUITE [3] 1/22 2/6 3/4
summarizing [1] 75/9
super [1] 59/16
super-minority [1] 59/16
supplement [1] 61/25
supplemental [1] 52/8
support [4] 18/22 37/24 55/9 56/4
supporting [2] 32/19 33/5
supports [1] 13/6
suppose [1] 18/7
supposed [1] 46/3
supposedly [1] 49/14
Suprema [4] 33/8 33/15 33/24 40/17
Supreme [4] 22/23 28/15 70/25 71/17
Supreme Court [2] 22/23 71/17
Supreme Court's [1] 70/25
sure [12] 7/6 10/11 18/3 19/24 21/17 27/10 34/22 35/11 37/3 41/14 42/14 62/12
Surgical [1] 48/7
surprise [1] 50/6
surprising [1] 42/1
survive [2] 41/9 59/12
survives [1] 76/11
sworn [1] 28/22
sympathic [1] 52/22
synthesize [1] 73/2
synthesizes [1] 72/20
synthesizing [1] 75/9
system [3] 2/2 42/17 42/21

**T**

table [1] 63/8
take [27] 10/11 10/14 10/24 12/4 12/17 12/18 13/14 14/25 15/13 15/24 17/2 20/20 25/21 42/6 42/7 43/21 44/5 45/11 46/8 46/9 46/10

## T

take... [6] 52/1 64/3 64/6 64/10 69/4 76/3
taken [4] 13/23 15/10 58/15 64/12
takes [3] 13/20 15/7 46/20
taking [3] 10/12 20/5 46/23
tale [1] 59/14
talk [9] 22/24 43/16 47/22 49/12 49/23 50/23 56/19 60/21 64/8
talked [6] 21/5 45/16 47/18 47/20 48/24 55/1
talking [15] 9/21 11/2 11/25 19/25 22/16 22/25 28/8 37/21 42/6 43/23 48/9 49/17 49/19 49/22 66/14
talks [4] 53/15 59/18 60/18 61/20
tax [1] 45/5
teach [1] 23/21
technical [3] 11/7 11/14 74/20
technicality [2] 55/10 55/11
Telex [1] 71/17
tell [15] 6/11 6/13 7/7 16/10 23/24 29/8 33/19 35/11 52/11 52/13 58/3 64/7 66/8 68/3 70/11
telling [1] 35/6
tells [2] 12/11 67/18
terms [2] 57/4 72/13
terrible [1] 25/12
test [3] 18/23 19/6 48/5
THACHER [3] 3/10 5/9 5/10
than [17] 6/12 8/8 11/25 16/18 18/22 19/8 20/4 20/10 28/10 33/20 35/25 36/25 52/20 52/23 59/4 59/24 66/16
thank [21] 29/7 30/6 41/18 51/19 58/23 58/24 63/14 63/15 63/16 64/24 64/25 67/1 67/2 75/16 75/17 75/20 75/21 75/22 75/24 76/6 76/20
Thank you [1] 63/14
that [460]
that's [72] 7/19 8/19 9/2 10/1 11/12 14/18 15/6 15/21 15/25 16/11 16/24 16/25 16/25 17/8 18/18 19/6 21/8 21/20 21/20 22/8 22/17 23/25 25/3 25/19 26/10 26/19 27/9 29/2 31/16 33/24 34/3 36/3 36/12 36/20 39/13 42/10 42/15 43/3 43/4 43/11 44/13 46/5 46/13 48/15 48/22 49/9 49/25 50/3 50/6 50/25 51/7 51/8 51/10 51/10 51/14 52/5 53/1 58/8 58/9 59/9 59/15 62/9 65/14 66/25 69/24 71/4 72/14 73/1 73/5 73/6

their [31] 9/6 12/17 16/24 18/13 23/19 24/10 25/11 35/15 36/8 38/17 42/24 42/25 43/5 45/13 48/11 48/12 51/5 57/5 57/8 57/11 57/12 57/12 59/11 69/14 69/14 70/13 71/7 72/1 72/7 72/10 72/13
them [26] 9/22 10/10 10/11 10/13 10/14 13/17 13/24 14/25 15/15 20/25 25/6 29/21 32/19 34/23 34/23 35/7 39/18 49/2 51/17 52/21 53/6 56/5 56/20 58/15 58/19 58/25
themself [1] 57/7
themselves [2] 57/17 72/10
then [23] 6/9 18/4 22/18 25/7 26/4 26/6 27/23 31/14 31/18 32/2 36/7 41/7 41/16 46/9 50/10 53/7 53/22 56/22 57/10 64/7 64/8 66/20 72/25
theoretically [1] 17/11
theory [7] 23/12 24/22 39/11 40/2 51/5 57/6 57/8
Therapeutics [1] 22/9
there [64] 5/4 8/17 11/17 12/22 13/5 15/16 16/9 19/16 20/21 21/9 22/20 23/6 24/23 25/2 25/10 25/11 26/2 28/14 30/24 31/4 33/21 33/22 34/16 34/24 36/2 37/6 37/10 38/1 40/25 42/2 42/5 42/18 43/2 44/1 44/9 45/1 45/17 47/22 49/4 50/14 50/25 51/8 52/22 53/3 53/14 53/16 54/14 55/14 55/15 57/19 57/21 59/7 59/7 59/25 60/2 61/9 62/21 66/10 69/1 69/12 73/18 74/6 74/7 74/12
there's [47] 9/16 12/7 13/9 16/5 16/25 20/16 20/17 21/11 21/19 22/16 22/23 23/5 23/8 23/9 24/5 26/9 26/15 27/22 28/16 29/5 30/3 32/7 33/7 34/25 36/2 37/13 37/14 38/7 42/3 43/1 46/22 47/4 47/4 49/23 50/8 50/21 51/1 51/16 53/18 53/24 54/10 54/11 54/23 55/13 60/20 65/17 67/20
therefore [2] 32/17 43/14
thereto [2] 61/25 62/9
these [57] 5/21 7/16 8/13 9/10 10/7 11/8 12/12 12/23 13/23 14/2 14/9 14/11 16/20 19/16 21/3 21/4 21/4 21/11 21/24 24/2 24/3 26/15 26/16 28/9 28/18 29/1

31/14 31/15 32/10 32/21 36/16 36/18 40/2 48/24 48/20 48/24 50/17 50/19 51/13 54/22 54/24 55/12 56/14 56/25 57/10 60/21 66/9 66/9 66/9 66/22 67/6 67/25 69/10 70/12 71/10 71/13 76/18
they [130]
they're [30] 8/13 8/14 9/7 9/9 10/14 10/14 11/2 11/13 11/13 12/20 12/22 13/18 13/19 20/5 20/14 23/18 27/10 29/24 30/2 35/9 38/3 39/24 46/21 46/23 49/21 54/13 54/15 54/15 66/23 70/3
they've [4] 16/22 21/8 25/3 57/7
thing [18] 9/16 21/19 36/4 39/6 39/7 42/8 42/13 47/25 49/12 49/14 50/10 52/7 57/16 61/11 66/2 73/8 74/18 74/22
things [17] 12/5 22/21 24/8 26/5 31/14 31/15 36/3 43/12 45/12 46/11 48/11 55/12 56/25 57/4 59/21 72/10 76/1
think [119]
thinking [1] 15/22
third [3] 33/7 34/2 45/1
this [139]
THOMAS [2] 3/3 4/22
those [49] 8/15 9/7 9/12 9/24 11/12 12/5 14/3 14/12 20/11 20/13 20/23 22/20 24/22 28/18 29/12 29/14 29/16 29/21 29/22 32/6 33/3 33/11 33/12 33/13 33/20 34/22 35/20 35/22 38/5 39/13 39/22 40/8 40/10 41/13 46/11 46/11 50/18 54/12 58/6 58/7 59/4 60/17 69/12 69/15 69/17 69/25 70/10 70/12 70/15
thought [3] 57/4 68/23 68/24
thoughtful [1] 19/12
thousands [1] 9/23
three [16] 9/21 15/16 15/16 17/6 29/21 29/22 30/4 32/16 52/5 54/9 55/18 56/14 56/25 60/8 60/11 61/17
through [19] 6/7 7/18 16/2 16/19 16/21 17/7 26/12 39/13 42/2 50/23 50/24 56/17 60/23 68/8 68/15 69/9 69/9 69/12 73/4
throughout [1] 38/9
throw [1] 10/13
tie [1] 71/24
Tiffany [1] 58/22
time [19] 12/11 23/2 28/11 35/3 36/18 42/25

44/5 44/5 54/13 57/1 57/18 63/25 64/8 67/16 67/22 68/4 69/4 69/6 70/22
times [3] 43/23 49/5 70/6
timing [2] 21/23 35/3
tiny [1] 10/8
Title [1] 77/3
together [7] 13/23 17/2 19/19 21/11 24/4 24/25 56/6
told [2] 8/17 76/1
tone [1] 25/1
too [8] 8/7 8/8 25/19 28/10 41/16 47/24 52/16 58/11
took [3] 32/6 57/2 60/5
top [1] 53/25
total [4] 43/21 51/18 66/1 70/17
totality [1] 39/4
totally [1] 21/13
touch [2] 55/17 60/15
touting [2] 38/24 69/13
towards [1] 40/6
trained [1] 16/18
transaction [1] 50/12
transcript [4] 1/5 1/11 77/4 77/6
transcripts [1] 1/24
transition [1] 44/18
transitions [1] 26/5
treating [1] 33/12
trick [1] 46/7
tried [1] 66/8
true [7] 12/19 12/21 36/17 39/13 45/25 59/22 77/3
truffle [2] 26/10 26/10
truly [1] 61/1
truth [2] 37/20 46/19
try [8] 21/6 22/4 25/22 41/22 43/6 45/13 55/15 76/18
trying [2] 36/3 69/5
turn [4] 29/9 30/12 41/14 52/1
two [21] 5/21 9/22 12/5 14/16 17/6 19/11 22/20 23/3 26/9 27/5 31/7 32/6 35/1 46/11 50/4 55/19 57/15 60/2 62/22 66/14 66/15
Twombley [2] 28/10 55/22
Twombly [1] 8/9
type [5] 31/14 34/25 47/6 53/10 60/9
types [1] 50/19
typically [1] 74/2
tzaccaro [1] 3/6

## U

U.S [1] 46/18
ultimate [1] 38/19
ultimately [1] 44/8
Unable [2] 29/11 52/14
unadjudicated [1] 45/24
under [20] 7/23 8/6 9/7 9/8 22/24 26/25 28/15 28/17 29/3 32/2 35/9 39/18 42/9 45/23 55/3

55/21 55/22 63/2 66/24 76/3
undercover [1] 72/8
underlying [4] 27/21 69/17 69/23 69/25
undermining [1] 16/13
underperforming [1] 44/6
understand [11] 6/4 7/6 15/5 17/16 31/2 31/10 31/16 35/24 39/20 63/11 63/13
understanding [4] 18/17 19/24 61/4 75/2
understatement [1] 61/1
understood [4] 30/1 64/24 69/3 75/8
underwriter [2] 5/17 6/21
underwriters [1] 60/23
underwriting [4] 56/23 60/20 60/22 61/9
unfair [1] 46/13
unfortunate [1] 27/18
unfortunately [1] 27/17
unified [1] 32/2
unique [1] 65/5
Unit [1] 49/24
UNITED [4] 1/1 1/21 77/3 77/7
United States [1] 77/7
units [1] 45/6
UNIVERSITY [1] 2/14
unless [4] 25/14 57/17 67/18 67/19
unproven [1] 13/16
unremarkable [1] 60/23
until [1] 6/11
untrue [1] 46/23
unusual [5] 8/10 28/21 28/25 47/15 47/16
up [21] 5/4 6/12 24/21 25/22 32/12 32/21 34/23 42/25 46/18 47/2 49/3 49/25 52/6 54/3 63/1 63/25 64/15 67/6 67/15 68/13 69/4
urge [2] 25/25 57/10
us [5] 3/15 9/12 43/12 51/19 71/24
use [2] 53/24 61/7
used [2] 14/17 40/9
usually [2] 46/15 46/18
utterly [1] 20/9

## V

various [6] 5/22 8/25 9/1 24/19 32/21 38/22
vast [1] 16/1
veil [1] 54/21
veracity [1] 22/11
verified [1] 9/11
versus [3] 13/15 25/8 50/16
very [48] 7/8 7/9 8/16 9/2 10/25 11/3 11/14 11/24 12/3 12/11 12/15 13/11 13/16 16/7 18/1 18/2 18/9 19/18 20/5 20/14 20/23 20/25 21/22 23/23 24/9 24/15 25/1 28/21 29/20 34/25 35/6 36/10 40/7 43/8

**V**

very... [14]  45/13 48/25 51/11 53/9 54/22 58/12 60/9 62/6 63/2 69/17 73/6 73/12 75/22 76/20
veto [1]  47/11
view [3]  12/15 44/6 59/3
violater [1]  53/8
violation [2]  53/5 53/6
Volume [1]  49/24
voting [1]  59/14

**W**

W II [3]  52/4 54/10 56/18
W Investco [2]  5/11 56/5
W INVESTCO II [1]  3/8
wages [1]  45/4
waiting [1]  76/9
wake [1]  18/12
walk [1]  5/4
walls [1]  14/14
want [25]  6/10 6/12 6/22 7/5 11/15 11/16 13/3 13/11 13/11 19/24 20/20 27/10 29/8 29/13 30/7 43/21 52/12 52/24 58/2 60/15 61/7 62/11 63/19 63/23 69/8
wanted [4]  27/1 49/15 65/5 65/12
wants [1]  51/21
was [70]  5/12 11/17 11/18 11/23 15/3 15/8 17/21 25/2 25/11 26/7 26/21 26/21 28/11 28/22 36/18 37/16 38/8 38/10 38/11 38/13 38/14 38/18 39/1 40/9 41/21 41/23 42/10 42/10 42/18 43/2 43/17 43/20 43/23 45/3 45/21 45/25 46/19 46/23 49/6 50/23 53/9 54/6 55/9 56/10 56/12 56/20 57/25 58/12 59/14 65/15 66/7 66/10 66/11 66/21 68/23 68/25 69/15 70/22 72/15 72/18 72/24 74/11 74/11 74/12 74/13 74/18 74/19 74/20 74/21 75/24
Washington [1]  52/19
wasn't [3]  23/6 42/12 55/12
waste [1]  68/4
way [23]  6/5 11/17 11/19 14/22 14/24 16/7 16/11 23/8 27/15 27/15 27/22 28/15 29/4 35/7 41/5 42/24 42/25 43/16 45/13 56/21 67/15 67/20 73/5
ways [4]  20/14 20/15 24/9 52/20
we [116]
we'll [3]  22/24 64/8 69/6
we're [30]  7/23 8/9 8/14 9/21 11/25 12/8 14/18 19/16 21/11 22/15

22/25 23/7 28/8 28/12 29/25 32/5 32/23 33/7 33/12 36/3 37/21 42/2 43/10 45/23 45/25 46/3 46/3 47/16 49/19 68/7
we've [12]  10/17 11/9 11/10 30/17 32/8 34/17 35/23 36/19 38/12 53/6 68/7 70/2
weak [2]  18/2 18/4
weakest [1]  18/3
website [2]  43/8 72/24
WEDNESDAY [2]  1/13 4/1
week [1]  38/22
weigh [3]  19/11 29/13 29/15
weight [1]  15/14
Welgus [1]  50/17
well [24]  9/3 9/4 12/19 17/23 18/7 21/18 24/15 24/17 26/13 27/11 27/17 28/4 29/20 32/19 39/23 47/21 49/13 49/25 57/14 59/14 60/4 64/14 68/7 73/25
well-pleaded [1]  12/19
went [7]  15/3 23/12 28/10 43/16 45/13 72/8 73/4
were [39]  7/17 7/18 7/19 9/6 10/7 11/23 15/16 16/2 16/19 19/19 20/19 21/21 21/23 23/2 24/22 25/10 26/17 29/12 34/21 36/18 41/13 42/6 42/12 42/15 50/14 54/16 55/1 55/7 56/15 57/3 57/18 57/25 58/13 58/15 60/22 69/21 70/13 71/13 76/22
weren't [4]  13/17 13/18 36/15 58/14
WEST [3]  1/22 2/5 3/4
Western [1]  52/18
what [96]
what's [9]  13/5 19/17 21/22 24/16 48/10 60/13 62/1 74/6 74/7
whatever [7]  6/9 6/10 8/13 8/14 12/6 13/22 25/6
wheel [1]  45/22
when [29]  7/23 10/7 12/5 13/15 15/2 16/9 16/23 17/5 17/6 19/23 28/11 33/19 36/18 46/14 47/22 48/8 49/5 49/18 54/9 54/25 55/12 62/18 64/7 64/9 68/2 68/21 70/6 71/21 74/3
where [23]  8/14 15/23 24/24 33/10 34/22 41/24 41/25 43/5 44/21 44/21 47/4 49/5 52/6 52/24 60/6 60/11 64/15 66/14 67/20 68/23 68/24 73/11 74/7
whether [9]  11/18 14/25 22/16 27/6 29/24 30/18 53/19 53/20 57/21
which [39]  9/11 10/3

10/25 12/12 15/2 15/15 16/21 17/9 19/17 21/24 26/20 32/22 32/9 33/9 41/25 43/24 45/18 46/17 50/24 52/25 53/4 53/8 53/18 55/4 55/5 56/9 56/21 57/9 60/5 61/10 62/5 63/8 66/7 66/8 67/12 68/20 69/19 69/23 72/15
while [2]  42/18 42/22
who [24]  9/12 10/2 12/1 12/24 15/17 15/23 21/5 23/12 28/25 36/5 38/18 41/1 42/23 46/25 47/13 47/14 48/24 49/6 51/6 51/9 51/21 58/4 58/21 69/19
who'd [1]  21/9
who's [3]  29/4 30/13 58/19
whoever [1]  13/17
whole [5]  15/10 41/6 45/12 60/25 61/10
why [14]  7/7 7/7 9/5 10/21 10/21 13/23 15/9 22/9 24/21 27/13 27/14 28/1 35/24 69/16
wide [1]  49/21
will [11]  12/19 23/24 29/10 44/10 52/15 52/19 61/13 64/8 64/9 67/24 76/3
wipe [1]  40/25
wish [7]  6/9 6/10 6/13 25/6 51/23 64/16 76/17
within [1]  69/12
without [7]  12/22 35/6 56/3 56/6 67/11 68/3 68/9
witness [2]  48/17 49/6
witnessed [1]  38/21
witnesses [2]  21/4 47/23
won't [2]  53/5 58/11
word [5]  46/1 53/22 53/24 54/1 62/8
words [8]  23/3 36/17 40/5 54/12 62/4 62/6 62/8 71/24
work [4]  43/12 51/5 73/18 76/4
worked [2]  21/5 49/6
world [2]  28/12 73/17
worry [1]  29/24
worth [11]  8/13 8/14 8/16 10/11 10/14 10/14 10/25 12/11 13/14 13/18 25/21
would [58]  15/23 15/24 17/11 17/20 17/22 18/2 18/3 21/9 21/9 21/25 23/2 24/12 24/13 24/20 25/7 25/25 27/1 27/10 27/24 28/19 28/21 30/14 31/1 31/18 31/19 33/5 33/24 35/18 35/19 37/3 40/4 40/25 41/3 41/9 41/23 41/25 42/13 42/15 42/21 43/4 46/6 47/19 50/13 51/5 51/6 51/11 51/25 56/21 57/10 58/4 59/2 59/12

59/17 61/1 62/16 63/18 67/12 68/22
wouldn't [6]  10/6 21/19 22/9 54/17 67/13 73/2
wrap [1]  6/12
write [1]  20/22
writes [1]  48/6
writing [2]  61/23 61/24
written [2]  13/19 66/14
wrong [4]  31/20 37/13 37/14 57/18
wrongdoing [1]  45/24
wrote [1]  21/14

**X**

Xponential [27]  1/7 2/11 4/5 4/16 9/17 9/17 12/14 15/2 35/10 35/14 35/16 35/23 37/5 37/11 37/12 37/16 39/5 39/13 42/11 42/18 48/10 49/20 56/12 63/10 64/23 66/11 72/9
Xponential's [3]  40/22 42/10 65/3

**Y**

Yanek [4]  53/17 53/19 53/21 57/21
yeah [4]  12/10 26/2 41/24 48/2
year [3]  21/24 44/15 66/16
years [3]  28/23 59/9 73/22
Yelp [2]  43/7 43/8
yes [31]  8/19 10/20 11/6 11/6 17/17 18/16 18/18 20/1 29/18 30/16 32/2 33/17 34/9 37/9 37/23 40/18 41/10 41/12 44/23 47/3 47/8 52/3 54/6 54/6 58/23 66/6 67/4 71/5 74/21 75/3 75/13
yesterday [4]  28/23 52/9 52/17 57/24
yet [1]  67/7
yield [1]  51/21
YogaSix [1]  35/19
YORK [1]  3/11
you [273]
you'll [1]  6/23
you're [18]  13/2 15/22 16/10 19/25 31/13 32/2 32/12 32/15 43/14 46/4 48/8 49/21 52/2 66/5 66/14 73/20 74/3 76/9
you've [10]  7/22 14/7 32/1 33/10 36/8 37/20 47/12 73/18 76/1 76/4
YOUNGWOOD [8]  3/9 5/9 5/12 5/13 5/14 52/2 52/3 52/4
your [97]
Your Honor [6]  4/21 18/19 55/10 58/24 62/15 63/22

**Z**

ZACCARO [7]  3/3 4/22 4/23 30/10 63/20 64/14 65/1

zero [3]  36/6 36/20 73/9
ZoomInfo [3]  45/17 58/10 59/11