ROBBINS GELLER RUDMAN
  & DOWD LLP
PETER KO (191994)
JEREMY W. DANIELS (351347)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
pko@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re XPONENTIAL FITNESS SECURITIES LITIGATION | Case No. 8:24-cv-00285-JWH (KESx) |
| | CLASS ACTION |
| | LEAD PLAINTIFFS' SUPPLEMENTAL MEMORANDUM PER COURT ORDER, DATED MARCH 27, 2026 (ECF 142) |

4898-5163-6894.v1

## I.   ARGUMENT

### A.   *Funko* Reinforces that Scienter and Falsity Are Appropriately Pled

#### 1.   *Funko* Illustrates Scienter Is Amply Pled

The strongest form of the core operations doctrine holds that knowledge of or deliberate reckless disregard for a statement's deceptiveness may be inferred when it concerned matters "so critical to [a company's] business operations" that "it would be absurd to suggest that management" did not know the truth. *Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc.*, 166 F.4th 805, 831 (9th Cir. 2026) (cleaned up).[1]  *Funko* found scienter sufficiently alleged for that reason alone (*id.* at 831-33); and also because the court thought the non-defendant Chief Operating Officer "would have seen first-hand" the problems with Funko Inc.'s ("Funko") IT systems and "likely . . . would have shared" his observations with the defendants at regular meetings to discuss the systems.  *Id.* at 833-34.

That is less than the scienter allegations in this case.  The core operations inference applies just as much here.  Xponential Fitness, Inc.'s ("Xponential" or the "Company") business is selling and opening fitness franchises.  Most of the false or misleading statements in the Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 104) (the "Complaint") sold investors on the Company's success in that area by citing metrics like licenses sold, studios opened, or studio earnings; or by claiming no studio had permanently closed and no franchisee had defaulted on a loan.  ¶¶169, 171-172, 174, 177-178, 181, 185, 189-190, 193-195, 198-200, 204-207, 216-226.[2]  The closure and loan statements were untrue.  The metrics statements were misleading because Xponential did not say it pumped up the metrics by luring franchisees through false claims about costs, revenue, time to open, time to profitability, and the like; or that its earnings metrics were skewed and

---

[1]   Unless otherwise noted, all citations are omitted.

[2]   All "¶_" or "¶¶_" references are to the Complaint.

- 1 -

4898-5163-6894.v1

propped up by its minority of profitable brands.  Either way, no less than the inventory management and IT problems at the core of Funko's toy business, "it would be absurd to suggest" (*Funko*, 166 F.4th at 831 (cleaned up)) that Xponential's Chief Executive Officer, Chief Financial Officer, and Chairman did not know the real financials for the Company's only revenue source.

But that is just one scienter piece in this case.  Take defendant Anthony Geisler ("Geisler") and the Complaint's other allegations indicating he sought to manipulate and deceive investors: (i) his record of fraud (¶¶76-80, 92-100, 142); (ii) his open thirst for "massive" wealth (greed begets fraud) (¶¶52, 58); (iii) his sudden stock sales at peak prices when the media questioned the Company's claims (¶¶139-140, 268-269); (iv) his in-the-weeds involvement in and knowledge of Xponential's operations (¶¶71, 123, 125, 253-257) (unlike *Funko*, 166 F.4th at 833-34, no need for double suppositions about what a non-defendant "would have seen firsthand" and "would have shared" with defendants who then made misleading statements); (v) his disregard for and efforts to hide and suppress, instead of fix, issues at odds with his public statements (¶¶126, 132-134, 263; *compare* ¶162 (received notice of California Department of Financial Protection and Innovation investigation in April 2023), *with* ¶¶205, 207 (continued to make misleading statements in May 2023)); (vi) his repeated public messaging of uniform success despite receiving contrary information (¶¶63-64, 69, 106, 213); and (vii) his quick suspension and termination when the Company learned of multiple investigations (¶154).  The response to the dismissal motion fleshes out these points more as well as the signs that defendants John Meloun and Mark Grabowski intended to manipulate and deceive.  Lead Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Amended Complaint (ECF 122) at 36-50.  The short of it is the bar set by *Funko* makes clear the more extensive allegations in this case amply plead scienter.

- 2 -

4898-5163-6894.v1

### 2.    *Funko* Confirms Principles Establishing the Playbook Statements Were Deceptive

*Funko* also reinforces that the statements tying Xponential's success to its "playbook" were deceptive.  *See* ¶173 (Geisler: "the power of our Xponential playbook sets us apart from our peers and [combined with the management team] are the keys to our successful business model"; it "ensures that our franchisees can maximize their studio performance and enhance their return on investment"); ¶183 (2021 Form 10-K: "The Xponential Playbook is designed to help franchisees achieve compelling AUVs, strong operating margins and an attractive return on their invested capital."); ¶202 (same).

Defendants argued their playbook statements were puffery.  Defendants' Motion to Dismiss Amended Complaint (ECF 112) ("MTD") at 26.  *Funko* reiterates that puffery means vaguely expressed optimism.  166 F.4th at 822-23.  But statements that concretely describe the past and present and create an impression materially different from reality are not puffery.  *Id*. at 822.  The playbook statements connoted the Company's and franchisees' "success" came from following the playbook.  The different reality alleged by the Complaint is Xponential's apparent success depended at least as much on deceiving franchisees and pushing false or misleading statistics. (*Funko* says "the Exchange Act imposes no 'affirmative duty' to disclose information" (*id.* at 824), which is true but qualified: "once defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016) (cleaned up).)

Defendants alternatively claimed the statements were forward-looking.  MTD at 26.  *Funko* repeats settled law teaching that a forward-looking statement announces "the plans and objectives of management for future operations."  166 F.4th at 824 (cleaned up).  But *Funko* and other decisions also recognize that a statement may be

- 3 -

4898-5163-6894.v1

simultaneously forward-looking and describe current or past state of events. The statement's latter aspect is actionable when deceptive. *See id.* at 824-25 ("endors[ing]" view that "the relevant aspect of the risk disclosures here is not their future prognoses, but rather their tendency to mislead investors into thinking that, at the time a statement is made, the risks identified had not yet occurred"). The playbook statements are in this category. The forward-looking attributes implied that adhering to the playbook would produce success. But the rear-facing aspects, which made the statements misleading, left the impression that the playbook had been behind the Company's apparent success while omitting the critical role played by Xponential's deceptions.

**II.    CONCLUSION**

*Funko* is another reason the dismissal motions should be denied.

DATED:  April 10, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PETER KO
JEREMY W. DANIELS

s/ Peter Ko
PETER KO

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
pko@rgrdlaw.com
idaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

- 4 -

4898-5163-6894.v1

KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON
ROBERT D. KLAUSNER
BONNI S. JENSEN
7080 NW 4th Street
Plantation, FL  33317
Telephone:  954/916-1202
954/916-1232 (fax)
bob@robertdklausner.com
bonni@robertdklausner.com

Additional Counsel

- 5 -

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Lead Plaintiffs, certifies that this brief contains four pages, which complies with the page limit set by the Court's Scheduling Notice and Order (ECF 142).

DATED:  April 10, 2026

s/ Peter Ko
PETER KO

4898-5163-6894.v1